**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

HUMAN RIGHTS DEFENSE CENTER,

*Plaintiff-Appellant,*

v.

UNITED STATES PARK POLICE,

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Columbia
(No. 19-cv-1502, Hon. Tanya S. Chutkan)

**BRIEF OF AMICUS CURIAE
AMERICANS FOR PROSPERITY FOUNDATION
IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL**

Ryan P. Mulvey
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203
Telephone: (571) 444-2841
rmulvey@afphq.org

Dated: March 6, 2024          *Counsel for Amicus curiae AFPF*

## CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Under Circuit Rule 28(a)(1), the counsel below certifies the following:

### A.  Parties and Amici

Plaintiff-Appellant is the Human Rights Defense Center.  Defendant-Appellee is the United States Park Police.

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a nonprofit corporation.  It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.  Other *amici* known to AFPF are the Reporters Committee for Freedom of the Press and the National Police Accountability Project.

### B.  Rulings Under Review

The ruling under review is the district court's memorandum opinion and order on the parties' cross-motions for summary judgment in *Human Rights Defense Center v. U.S. Park Police*, No. 19-cv-1502 (TSC), ECF Nos. 31–32 (Aug. 29, 2023).  The case is electronically reported at 2023 WL 5561602.

### C.  Related Cases

This case has not previously been before this Court, and *amicus curiae* is unaware of any related cases pending in this or any other court.

> */s/ Ryan P. Mulvey*
> Ryan P. Mulvey
> Counsel for *Amicus curiae* AFPF

## CERTIFICATE UNDER CIRCUIT RULE 29(D)

Under Circuit Rule 29(d), counsel for Americans for Prosperity Foundation ("AFPF") represents that, so far as AFPF is aware, the only other *amici curiae* supporting Plaintiff-Appellant are the Reporters Committee for Freedom of the Press and the National Police Accountability Project.

Among the *amici* supporting Plaintiff-Appellant, AFPF's brief focuses on whether a federal court enjoys inherent authority to order the return or destruction of records released under the Freedom of Information Act, even when such disclosure was allegedly inadvertent, or whether a court can alternatively prohibit further use or dissemination of such records by their recipient.

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus curiae* AFPF

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

AFPF further states, in compliance with Circuit Rule 26.1(b), that it is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. One of those ideas is open and accountable government. To that end, AFPF considers the Freedom of Information Act ("FOIA"), which is implicated by the instant appeal, to be integral to ensuring openness and accountability in the federal government. As part of its mission, AFPF often requests records under the FOIA, and prosecutes those requests before agencies and federal courts. APFP also appears as *amicus curiae* before federal and state courts.

/s/ *Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus curiae* AFPF

# TABLE OF CONTENTS

Certificate of Parties, Rulings Under Review, and Related Cases ............................ ii

Certificate Under Circuit Rule 29(d) ....................................................... iii

Rule 26.1 Corporate Disclosure Statement.............................................. iv

Table of Contents ..................................................................................v

Table of Authorities................................................................................ vi

Glossary.................................................................................................. xii

Interest of *Amicus Curiae* ......................................................................1

Summary of Argument.............................................................................2

Argument..................................................................................................3

I.      No binding precedent has ever established the inherent authority of a court to order the return or destruction of records released under the FOIA, let alone prohibit their further use or dissemination by a requester.....3

    A.    The cases about inherent court authority that tend to be cited in support of clawback are inapt..............................................................5

    B.    The court's inherent authority to manage discovery is distinct from its possible oversight of the production of records under the FOIA.....9

    C.    The Tenth Circuit's recent decision on clawback is unpersuasive......13

II.     The Court should reject any invitation to recognize an inherent clawback authority in the FOIA context. ...................................................................15

    A.    The disclosure of a record, even if inadvertent, moots any further controversy over its withholding........................................................16

    B.    Clawback deviates from the expected use of a court's inherent equitable power to enforce the terms of the FOIA..............................19

    C.    Clawback orders infringe on a requester's First Amendment rights...21

III.    Clarification as to the status of inherent clawback authority is needed. .......24

Conclusion ................................................................................................26

Certificate of Compliance .........................................................................27

Certificate of Service ................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100Reporters v. Department of State*,
 602 F. Supp. 3d 41 (D.D.C. 2022)..........................................................4, 6, 16, 18

*Alvarez v. Smith*,
 558 U.S. 87 (2009)........................................................................................17

*Alyeska Pipeline Service Co. v. Wilderness Society*,
 421 U.S. 240 (1975).......................................................................................7

*American Civil Liberties Union v. Department of Defense*,
 No. 09-8071, 2012 WL 13075284 (S.D.N.Y. Mar. 20, 2012) ...........................9

*Americans for Prosperity Foundation v. Bonta*,
 141 S. Ct. 2373 (2021)...................................................................................21

*Appleton Papers, Inc. v. Environmental Protection Agency*,
 702 F.3d 1018 (7th Cir. 2012) .........................................................................9

*Better Government Association v. Department of State*,
 780 F.2d 86 (D.C. Cir. 1986).........................................................................19

*Ex parte Burr*,
 22 U.S. (9 Wheat.) 529 (1824) .........................................................................7

*Butterworth v. Smith*,
 494 U.S. 624 (1990).......................................................................................21

*Cause of Action Institute v. Department of Veterans Affairs*,
 No. 20-997, 2021 WL 1549668 (D.D.C. Apr. 20, 2021) ..................................19

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991).........................................................................6, 7, 15, 16

*Chesapeake Bay Foundation, Inc. v. U.S. Army Corp of Engineers*,
 722 F. Supp. 2d 66 (D.D.C. 2010)..................................................................18

*Chiquita Brands International Inc. v.*
   *Securities & Exchange Commission,*
   805 F.3d 289 (D.C. Cir. 2015)..............................................................22

*Chrysler Corp. v. Brown,*
   441 U.S. 281 (1979)................................................................12, 14

*Cobell v. Norton,*
   334 F.3d 1128 (D.C. Cir. 2003)............................................................4, 5

*In re Columbia University Patent Litigation,*
   330 F. Supp. 2d 18 (D. Mass. 2004)......................................................22

*Cottone v. Reno,*
   193 F.3d 550 (D.C. Cir. 1999)..............................................................17

*Crooker v. U.S. State Deparment,*
   628 F.2d 9 (D.C. Cir. 1980).................................................................17

*Degen v. United States,*
   517 U.S. 820 (1996)..................................................................9, 16

*Dietz v. Bouldin,*
   579 U.S. 40 (2016).....................................................................7, 16

*Ecological Rights Foundation v.*
   *Federal Emergency Management Agency,*
   No. 15-4068, 2017 WL 24859 (N.D. Cal. Jan. 3, 2017) ..................................9

*Environmental Protection Agency v. Mink,*
   410 U.S. 74 (1973)..........................................................................12

*Equal Employment Opportunity Commission v.*
   *Whiting-Turner Contracting Co.,*
   No. 21-0753, 2022 WL 3221825 (M.D. Tenn. Aug. 9, 2022) ...........................9

*Federal Trade Commission v. Grolier, Inc.,*
   462 U.S. 19 (1983)..........................................................................12

*Gagnon v. United States,*
   193 U.S. 451 (1904)..........................................................................8

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)..................................................................................7

*Hazel-Atlas Glass Co. v. Harford-Empire Co.*,
    322 U.S. 238 (1944)..................................................................................7

*Hersh & Hersh v. Department of Health & Human Services*,
    No. 06-4234, 2008 WL 901539 (N.D. Cal. Mar. 31, 2008) ................................6

*Human Rights Defense Center v. U.S. Park Police*,
    No. 19-1502, 2023 WL 5561602 (D.D.C. Aug. 29, 2023)............................3, 4

*Illinois v. Allen*,
    397 U.S. 337 (1970)..................................................................................7

*Judicial Watch, Inc. v. U.S. Secret Service*,
    726 F.3d 208 (D.C. Cir. 2013)................................................................15

*Kissinger v. Reporters Committee for Freedom of the Press*,
    445 U.S. 136 (1980)..................................................................................8

*Kokkonen v. Guardian Life Insurance Co. of America*,
    511 U.S. 375 (1994)................................................................................16

*Landis v. North American Co.*,
    299 U.S. 248 (1936)..................................................................................8

*Link v. Wabash Railroad Co.*,
    370 U.S. 626 (1962)..................................................................................7

*Long v. Internal Revenue Service*,
    693 F.2d 907 (9th Cir. 1982) ..................................................................20

*Luce v. United States*,
    469 U.S. 38 (1984)....................................................................................7

*McNutt v. General Motors Acceptance Corporation of Indiana*,
    298 U.S. 178 (1936)................................................................................15

*National Archives & Records Administration v. Favish*,
    541 U.S. 157 (2004)........................................................................11, 17

*National Press Club Journalism Institute v.*
  *Immigration & Customs Enforcement*,
  No. 18-2932, 2023 WL 9001337 (D.D.C. Dec. 28, 2023) ........................4, 6, 19

*New York Times Co. v. United States*,
  403 U.S. 713 (1971).............................................................................21, 23

*North Carolina v. Rice*,
  404 U.S. 244 (1971).....................................................................................17

*North v. Walsh*,
  881 F.2d 1088 (D.C. Cir. 1989)...............................................................11, 12

*Payne Enterprises, Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988)......................................................................20

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982)................................................................17, 19

*Piper v. Department of Justice*,
  294 F. Supp. 2d 16 (D.D.C. 2003)...................................................................6

*In re Providence Journal Co.*,
  820 F.2d 1342 (1st Cir. 1986).......................................................................22

*Public Citizen Health Research Group v.*
  *Food & Drug Administration*,
  953 F. Supp. 400 (D.D.C. 1996)...........................................................5, 9, 18

*In re Rafferty*,
  864 F.2d 151 (D.C. Cir. 1988).......................................................................22

*Renegotiation Board v. Bannercraft Clothing Co., Inc.*,
  415 U.S. 1 (1974)..........................................................................................19

*Rocky Mountain Wild, Inc. v. U.S. Forest Service*,
  56 F.4th 913 (10th Cir. 2022) ..................................................................13, 15

*Rocky Mountain Wild, Inc. v. U.S. Forest Service*,
  No. 18-3065, 2019 WL 3067319 (D. Colo. July 12, 2019)..............................15

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
  563 U.S. 401 (2011)......................................................................................17

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)............................................................................22

*Sierra Club v. Environmental Protection Agency*,
505 F. Supp. 3d 982 (N.D. Cal. 2020)....................6, 14, 16, 19, 22

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)...........................................................................21

*Stonehill v. Internal Revenue Service*,
558 F.3d 534 (D.C. Cir. 2009)..............................................10, 11, 17

*Students Against Genocide v. Deparment of State*,
257 F.3d 828 (D.C. Cir. 2001)....................................................14, 17

*The Florida Star v. B.J.F.*,
491 U.S. 524 (1989)...........................................................................23

*United States v. Weber Aircraft Corp.*,
465 U.S. 792 (1985)...........................................................................12

*Universal Oil Products Co. v. Root Refining Co.*,
328 U.S. 575 (1946)..............................................................................7

*Webb v. District of Columbia*,
146 F.3d 964 (D.C. Cir. 1998)..............................................................9

*Wilson v. Federal Communications Commission*,
No. 21-0895, 2022 WL 4245485 (D.D.C. Sept. 15, 2022) ..........6, 9, 10, 18

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
481 U.S. 787 (1987)..............................................................................7

**Statutes**

5 U.S.C. § 552(a)(3)(A) .....................................................................10

5 U.S.C. § 552(a)(4)(A)(ii) ................................................................23

5 U.S.C. § 552(a)(4)(B) .....................................................................16

5 U.S.C. § 552(a)(6)(C) .....................................................................20

5 U.S.C. § 552(a)(8)(A)(i) .................................................................11

5 U.S.C. § 552(b) ...................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 26(b)(1) ..............................................10

Memorandum from Attorney General Merrick Garland to Heads of
    Executive Departments & Agencies Regarding Freedom of
    Information Act Guidelines (Mar. 15, 2022).......................................12

# GLOSSARY

FOIA        Freedom of Information Act

# INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society.[1]  One of those ideas is open and accountable government.  To that end, AFPF considers the Freedom of Information Act ("FOIA") to be an integral tool for ensuring openness and accountability in the federal government.  AFPF often requests records under the FOIA and prosecutes those requests before agencies and federal courts.  APFP also appears as *amicus curiae* before federal and state courts.

AFPF is familiar with clawback in the FOIA context and is even now engaged in a clawback dispute with the Federal Trade Commission.  As a frequent requester, AFPF has a strong interest in this Court clarifying that clawback is not an appropriate exercise of a federal court's inherent authority because it conflicts with the mandate of the FOIA and raises important First Amendment concerns.

---

[1] All parties have consented to the filing of this brief.  Under Federal Rule of Appellate Practice 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF has authored this brief, in whole or in part.  No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief.  And no person other than *amicus curiae* or its counsel made a monetary contribution intended to fund the preparation or submission of this brief.

1

## SUMMARY OF ARGUMENT

This case rests on an unfounded presumption. Although agencies rarely seek to clawback records disclosed under the FOIA, when they do so successfully it is because a court has presumed it possesses an *inherent authority* to order such relief. The small number of courts that have ordered clawback, however, usually do so without any serious discussion of the legal basis for their supposed inherent authority. Some rely on a superficial, but inapt, comparison between the production of records under the FOIA and civil discovery. In nearly all cases, scant attention is given to serious First Amendment concerns. This is an untenable situation.

There is no precedent in the U.S. Supreme Court or this Circuit recognizing an inherent authority to order the return or destruction of records released under the FOIA. Nor is there precedent authorizing a court to restrict the use or dissemination of a FOIA record, either temporarily or permanently. Clawback in a FOIA case is hardly a widespread or long-standing practice. It is not mentioned in the statute. And it bears no relation to a court's management of its docket, maintenance of decorum, or exercise of other undisputed powers.

There also is no reason, in the absence of precedent, for this Court to set about creating it. That is why this appeal is so important: it presents the Court with an opportunity to confirm that there is *no* inherent authority for clawback. At least three reasons warrant that outcome. *First*, the release of a record under the FOIA typically

moots any further dispute over its withholding, even if the agency claims disclosure was inadvertent. Clawback violates that principle. *Second*, the equitable power of a court to enforce the terms of the FOIA should always be exercised in favor of disclosure. Clawback offends the very purpose of the FOIA and is not an appropriate remedial power. *Third*, clawback amounts to a prior restraint and infringes on First Amendment protections. Because records disclosed under the FOIA are obtained outside of civil discovery, their further use or dissemination cannot normally be restrained. Whether their disclosure was inadvertent does not change this calculus.

For these reasons, the Court should reverse the district court.

## ARGUMENT

**I. No binding precedent has ever established the inherent authority of a court to order the return or destruction of records released under the FOIA, let alone prohibit their further use or dissemination by a requester.**

The fundamental error of the district court below was its conclusory determination that it enjoyed inherent authority to prohibit the plaintiff-requester from "disclos[ing], disseminat[ing], or mak[ing] use of" records released under the FOIA simply because the defendant-agency claimed—after the fact—that certain information in those records had been inadvertently disclosed. *Human Rights Def. Ctr. v. U.S. Park Police*, No. 19-1502, 2023 WL 5561602, at *6 (D.D.C. Aug. 29, 2023). Neither this Circuit nor the Supreme Court has established such authority. Nor has either court recognized the related authority to order a requester to return or

destroy a record produced under the FOIA. The district court's holding to the contrary, and its appeal to "implied power," *id.*, "can hardly be self-supporting." *Cobell v. Norton*, 334 F.3d 1128, 1141 (D.C. Cir. 2003).

The few cases that agencies and judges tend to cite in support of "clawback" authority are inapt,[2] and at least a couple of judges have acknowledged there is no controlling precedent in this Circuit. *See Nat'l Press Club Journalism Inst. v. Immigration & Customs Enf't*, No. 18-2932, 2023 WL 9001337, at *19 n.7 (D.D.C. Dec. 28, 2023) ("It is not immediately clear whether the Court has the authority to take either of these steps [to compel the return or destruction of records].*"); *100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022) (noting dearth of "authority indicating that the Court has the authority to order that a FOIA recipient return records that were inadvertently released[.]"). So far as any analogy might be drawn between clawback and a court's inherent authority to manage discovery, that analogy fails. And while the Tenth Circuit recently acknowledged clawback authority in the FOIA context—and it is the only Court of Appeals to have done so— its reasoning is flawed and should not be considered instructive here.

---

[2] "Clawback" can refer both to (1) an order that a requester return or destroy agency records, or (2) an order that a requester refrain from using or disseminating records. The latter type of clawback is sometimes temporary, in which case it has been misleadingly called a "protective order."

**A.    The cases about inherent court authority that tend to be cited in support of clawback are inapt.**

As this Court explained in *Cobell v. Norton*, a "judicial claim to an 'inherent power' is not to be indulged lightly, lest it excuse overreaching 'the judicial power' actually granted to the federal courts by Article III of the Constitution."  334 F.3d at 1141.  An inherent power "must either be documented by historical practice"—to say nothing of being consistent with the original public meaning of Article III—or "supported by an irrefutable showing that the exercise of an undoubted authority would otherwise be set to naught."  *Id.* (cleaned up and citations omitted).  "Often the two go hand in hand."  *Id.* (citation omitted).  Under the FOIA—a statute that is completely silent on the matter—clawback is neither supported by widespread and long-standing practice,[3] nor is there serious reason to suspect it is necessary to preserve other "undoubted authority" of the court.

Unfortunately, the lack of precedent has not stopped a handful of district courts (here and in sister circuits) from presuming they do possess the power to order the return or destruction of agency records lawfully produced to a requester, let alone to bar their continued dissemination.  Although a couple recent decisions reflect

---

[3] The earliest use of clawback in this jurisdiction seems to have been twenty-seven years ago in *Public Citizen Health Research Group v. Food & Drug Administration*. 953 F. Supp. 400, 404–06 (D.D.C. 1996).  Given that clawback appeared a full three decades after initial passage of the FOIA, and only sporadically thereafter, it strains credulity to consider it an historical or commonplace device.

prudent skepticism, *see, e.g.*, *Nat'l Press Club Journalist Inst.*, 2023 WL 9001337, at *19 n.7, other courts have skipped over the necessary consideration of the limits of their inherent authority either to order the return or destruction of records without *any* analysis, *e.g.*, *Hersh & Hersh v. Dep't of Health & Human Servs.*, No. 06-4234, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008), or without due consideration to whether clawback is even warranted on the merits. *See, e.g.*, *Piper v. Dep't of Justice*, 294 F. Supp. 2d 16, 27 & n.5 (D.D.C. 2003) ("[T]he Court expects plaintiff to deliver [a "photocopy of a photograph" that "may have been inadvertently released" back] to defendants if they so request."). These approaches have been rightly criticized. *E.g.*, *100Reporters*, 602 F. Supp. 3d at 84.

In lieu of directly relevant authority, agencies and courts have relied instead on *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), and similar cases. *See, e.g.*, *Wilson v. Fed. Commc'ns Comm'n*, No. 21-0895, 2022 WL 4245485, at *15 (D.D.C. Sept. 15, 2022); *Sierra Club v. Envtl. Prot. Agency*, 505 F. Supp. 3d 982, 989 (N.D. Cal. 2020). But *Chambers* was not a FOIA case. It concerned the inherent authority of a court to sanction a litigant for bad-faith conduct. The Supreme Court determined such a power adhered to Article III because it was incidental to the judicial act. As a court is vested with the authority to adjudicate cases, it follows it can "manage [its] own affairs" to "achieve the orderly and expeditious disposition of cases," such as by "impos[ing] silence, respect[,] . . . decorum," and "submission to [its] lawful

6

mandates." *Chambers*, 501 U.S. at 43 (cleaned up and citations omitted). The *Chambers* court thus emphasized that inherent authority must be grounded in safeguarding the judicial process itself. A list of some of the powers recognized by the Supreme Court illustrates this point well:

- Power to control admission to the court's bar and discipline attorneys. *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531 (1824).

- Power to punish contempt both inside and outside the courtroom. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798–800 (1987).

- Power to vacate judgment upon proof of a fraud upon the court. *Hazel-Atlas Glass Co. v. Harford-Empire Co.*, 322 U.S. 238, 248–50 (1944).

- Power to investigate if there has been a fraud upon the court. *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946).

- Power to remove a disruptive criminal defendant from the courtroom. *Illinois v. Allen*, 397 U.S. 337, 342–43 (1970).

- Power to dismiss an action for *forum non conveniens*. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08 (1947).

- Power to dismiss an action for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–31 (1962).

- Power to awards attorney's fees in some cases. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–59 (1975).

- Power to rescind an order to discharge a jury and recall it in a civil case. *Dietz v. Bouldin*, 579 U.S. 40, 45–48 (2016).

- Power to entertain a motion *in limine*. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

- Power to stay a case during parallel court proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

- Power to amend a judicial record. *Gagnon v. United States*, 193 U.S. 451, 456–57 (1904).

These powers are intimately related to the administrative aspects of a court's dispensing of justice, its preservation of institutional values and the integrity of its proceedings, and its governance of how attorneys and clients demean themselves. None of them, however, directly touches on a substantive, merits-based question of law at the heart of a case. Yet that is exactly what clawback under the FOIA does: Does disclosure—inadvertent or not—of a record that could have been redacted moot any further dispute over its withholding? *See infra* at pp. 16–19. That question, in turn, is a restatement of the basic claim presented in *any* FOIA action, *viz.*, whether an agency is (1) "improperly" (2) "withholding" (3) "agency records." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

The authority to compel a requester to return or destroy a record produced by an agency under an independent statutory obligation—and not, as a matter of law or rule, under a judicial process—cannot be understood to serve judicial economy, implicate concerns over institutional integrity, or be necessary to ensure submission to other lawful orders. The same goes for the supposed authority to prohibit a FOIA requester from using or disseminating a record post-disclosure.

**B.    The court's inherent authority to manage discovery is distinct from its possible oversight of the production of records under the FOIA.**

The most analogous inherent authority to clawback is a court's power to oversee discovery, which complements its enforcement of the rules of procedure and evidence. *See Degen v. United States*, 517 U.S. 820, 826 (1996); *Webb v. Dist. of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998). Reliance on this analogy to support FOIA clawback is evident in the caselaw. In *American Civil Liberties Union v. Department of Defense*, for example, the court reasoned it could order clawback because disclosure of an agency record had been "in accordance with a court-ordered stipulation and as part of a court-supervised process." No. 09-8071, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012). Federal Rule of Civil Procedure 26 is often mentioned. *See, e.g.*, *Pub. Citizen Health Research Grp.*, 953 F. Supp. at 404. Some courts describe clawback in terms of a "protective order." *See id.*; *see also Wilson*, 2022 WL 4245485, at *14–15. And others still have looked to Federal Rule of Evidence 502.[4] *See, e.g.*, *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, No. 15-4068, 2017 WL 24859, at *6–7 (N.D. Cal. Jan. 3, 2017).

---

[4] Other courts have been reluctant to rely on FRE 502 while still finding the analogy to discovery conceptually useful. *See Equal Emp't Opportunity Comm'n v. Whiting-Turner Contracting Co.*, No. 21-0753, 2022 WL 3221825, at *6–7 (M.D. Tenn. Aug. 9, 2022). FRE 502, of course, is completely unrelated to the FOIA. *Cf. Appleton Papers, Inc. v. Envtl. Prot. Agency*, 702 F.3d 1018, 1026–27 (7th Cir. 2012) ("These considerations [under FRE 502] go beyond the purview of FOIA requests[.]").

These decisions are misguided because they depend on a superficial similarity between the disclosure of records under the FOIA—which proceeds under a statutory obligation that operates independently of litigation or court intervention—and the production of documents responsive to a discovery request. Whereas a court's authority to enter protective orders in discovery is uncontroversial, the same cannot be said for its management of production under the FOIA, at least beyond setting a timeline for providing a requester with records. *See Stonehill v. Internal Revenue Serv.*, 558 F.3d 534, 538 (D.C. Cir. 2009) ("The FOIA disclosure regime . . . is distinct from civil discovery."). Indeed, courts that have ordered clawback often admit, as they must, that the "FOIA [itself] does not provide for protective orders or the compelled return or destruction of inadvertently produced documents." *Wilson*, 2022 WL 4245485, at *5.

The most important difference between the FOIA process and discovery concerns the standard for keeping material out of the hands of another party. In civil discovery, a propounding party can obtain information about "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The basic standard for withholding responsive information is the technical application of a privilege. The FOIA, on the other hand, affords *any* person with access to *any* records, so long as the records are reasonably described and the request conforms with applicable regulations. *See* 5

U.S.C. § 552(a)(3)(A). The sole basis for withholding is one of nine statutory exemptions, 5 U.S.C. § 552(b), and the government must also satisfy the foreseeable-harm standard. *Id.* § 552(a)(8)(A)(i). It is beyond cavil that, in a FOIA case, the mere claim of privilege—which, in practice, often serves as grounds for a clawback motion, at least when Exemption 5 is in play—will be insufficient to prevail at summary judgment.[5] The burden for securing a protective order and blocking discovery is altogether distinct. *See Stonehill*, 558 F.3d at 538 ("[T]hat a document is exempt from discovery does not necessarily mean it will be exempt from disclosure under FOIA.").

The FOIA also does not limit a requester's right of access based on relevance or proportionality. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("[W]hen documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information."). Simply put, "[d]iscovery limitations, civil or criminal, . . . do not apply when FOIA requests are presented in a discrete civil action." *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989); *see Stonehill*, 558 F.3d at 538 ("[W]hile information disclosed during discovery is limited to the parties and can be subject to protective orders against

---

[5] The distinction between FOIA production and discovery is even clearer in a case such as this one, where the records at issue are not even privileged but contain information ostensibly protected by Exemption 6.

further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public[.]").

If any doubt remained, other aspects of the FOIA cut against the possibility of grounding clawback in a court's inherent authority to manage discovery. To begin with, the FOIA's exemptions are discretionary, not mandatory. *Chrysler Corp. v. Brown*, 441 U.S. 281, 293–94 (1979). And the Department of Justice has long encouraged agencies to release records that could be technically withheld. The FOIA's spirit of disclosure and "presumption of openness" are foreign to the adversarial discovery process. *Cf.* Mem. from Att'y General Merrick Garland to Heads of Exec. Dep'ts & Agencies Regarding Freedom of Info. Act Guidelines (Mar. 15, 2022), *available at* https://www.justice.gov/ag/file/1208711-0/dl?inline. Moreover, while not directly relevant here, the Supreme Court has described the "privileges" used alongside Exemption 5 as only "rough analogies" to the privileges as applied in discovery. *Envtl. Prot. Agency v. Mink*, 410 U.S. 74, 86 (1973); *cf. North*, 881 F.2d at 1099 ("[A]n individual may . . . obtain under FOIA information . . . even when the documents could not be obtained through discovery."). This observation is especially apropos given that *any* distinction between absolute and qualified privilege is inapplicable under the FOIA. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1985); *Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 20 (1983).

Discovery and the FOIA-production process are distinct. The inherent authority of a court to manage the former (and to enter protective orders) cannot, by analogy, extend to supervision of the latter, at least when it entails a power to order the return or destruction of records, or to bar their further use or dissemination.

## C. The Tenth Circuit's recent decision on clawback is unpersuasive.

The only Court of Appeals to address clawback is the Tenth Circuit in *Rocky Mountain Wild, Inc. v. U.S. Forest Service*, 56 F.4th 913 (10th Cir. 2022). But that decision is deeply misguided and should not be considered instructive here.

The *Rocky Mountain Wild* court framed the clawback issue in a curious way. Starting with the appellant's argument that the records at issue were already publicly available on the internet, the Tenth Circuit insisted the relevant question was "not one of who received [the records], but whether any member of the public had a *right to receive them*." *Id.* at 930 (emphasis added). Because the court reasoned a requester did not enjoy a "right" to receive mistakenly disclosed records, the agency could not have "waiv[ed] the ability to exempt" them, even retroactively. *Id.* ("Defendant accidentally turned over two documents without proper redactions that Plaintiff never had a right to possess[.]"). The court also thought there could be no reasonable basis to challenge the clawback order because the requester presented no "authority barring courts from ordering the return or destruction of inadvertently disclosed records subject to FOIA exemptions." *Id.* at 931.

There are two major problems with the Tenth Circuit's decision. *First*, it is deeply confusing to characterize a person's right of access under the FOIA in terms of whether disclosure will be (or was) authorized. When a requester receives a determination letter and records, the reasonable conclusion is that the release is authorized and the records intentionally processed. That some records could have been withheld, in theory, under an exemption is largely irrelevant because the FOIA's exemptions are not "mandatory bars to disclosure." *Chrysler Corp.*, 441 U.S. at 293. The mere fact an agency failed (knowingly or otherwise) to redact a record says nothing about whether the requester had a "right" to obtain it in the first place. The same logic applies to situations when an agency tries to reverse course on whether it made an appropriate control determination; a requester has no reason to doubt a produced record is under agency control.

Once a record goes out the doors, an agency has "effectively [made] a disclosure to the world," and "courts lack authority to limit [its] dissemination[.]" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001). To hold otherwise would create an incentive for agencies to game the system. They will inevitably claim that some "mistake" occurred and that they deserve a second chance to redact a record. Of course, mistakes happen. But "mistakes by litigants have consequences." *Sierra Club*, 505 F. Supp. 3d at 991. Any claim of inadvertent disclosure should be suspect and—like with a control dispute—any "uncertainty" or

doubt should "redound to the benefit" of the requester. *Cf. Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 220 (D.C. Cir. 2013). That approach is most consistent with the letter and purpose of the FOIA.

*Second*, the *Rocky Mountain Wild* court erred by presuming a requester bears the burden of disproving the existence of an inherent clawback power. 56 F.4th at 931. The Tenth Circuit "has the presumption backwards." *Chambers*, 501 U.S. at 64 (Kennedy, J., dissenting). "Inherent powers are the exception, not the rule, and their assertion requires special justification in each case." *Id.* That is a well-settled principle. *Cf. McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936). The Tenth Circuit acted rashly in finding an inherent clawback authority, and its reasons for doing so were lacking. The district court's reasoning below was hardly better. *See Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, No. 18-3065, 2019 WL 3067319 (D. Colo. July 12, 2019).

## II. The Court should reject any invitation to recognize an inherent clawback authority in the FOIA context.

Even if the Court agrees that no precedent confirms the authority to order clawback in a FOIA case, it may consider deciding, for the first time, that such a power should be recognized. That would be unfortunate. There are compelling reasons grounded in FOIA jurisprudence and the First Amendment that counsel against giving imprimatur to clawback, which is a "power . . . quite remote from

15

what courts require in order to perform their functions." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994).

A court's inherent powers "must be exercised with restraint and discretion," and within constitutional limits. *Chambers*, 501 U.S. at 44. The outer bounds of "these powers must be delimited with care." *Degen*, 517 U.S. at 823–24. "[T]here is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority." *Id.* Any inherent or implied power must reflect "a reasonable response to the problems and needs that provoke it," *id.*, especially vis-à-vis the "fair administration of justice." *Dietz*, 579 U.S. at 45. Under the FOIA, mere claim of mistaken disclosure, let alone foregone application of an exemption, should not be enough to defeat the underlying principle that forcing a requester "to return materials . . . obtained through no unlawful or improper action" is an "extraordinary step" that the FOIA itself does not anticipate. *100Reporters*, 602 F. Supp. 3d at 84.

**A.    The disclosure of a record, even if inadvertent, moots any further controversy over its withholding.**

The FOIA empowers a court "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld[.]" 5 U.S.C. § 552(a)(4)(B). The role of the court is therefore limited to determining "what documents the [agency] *must* produce." *Sierra Club*, 505 F. Supp. 3d at 991. When a requester no longer challenges the treatment of a record, there is no basis

for the agency to press the matter further. FOIA claims are regularly dismissed as moot once a requester receives a record and raises no further objection. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears and becomes moot since . . . disclosure . . . has already been made."). Such cases no longer present any justiciable controversy. *Cf. Alvarez v. Smith*, 558 U.S. 87, 92 (2009); *N. Carolina v. Rice*, 404 U.S. 244, 246 (1971).

An agency's attempt to assert an exemption retroactively is moot under the FOIA's equitable-waiver doctrine, too. Specifically, a withholding claim should fail when the information at issue was previously "acknowledged" or "disclosed." "[M]aterials normally immunized from disclosure . . . lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). An agency cannot backtrack and re-process a record once it is in the hands of the requester. At that point the record has become a "permanent public record," *id.*, that lives in the public domain. *See Students Against Genocide*, 257 F.3d at 836 ("[A] disclosure made to any FOIA requester is effectively a disclosure to the world at large. The courts lack authority to limit the dissemination of records once they are released[.]"); *see also Favish*, 541 U.S. at 174; *Stonehill*, 558 F.3d at 538; *cf. Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563

U.S. 401, 410–11 (2011) (FOIA response and production of records is an agency "report" that triggers the False Claims Act's "public disclosure bar").

It does not matter if disclosure was inadvertent, mistaken, or otherwise regretted. "[T]hrough such inadvertence" an agency still "irretrievably place[s] . . . [the record] in the public domain." *Chesapeake Bay Found., Inc. v. U.S. Army Corp of Eng'rs*, 722 F. Supp. 2d 66, 72 n.3 (D.D.C. 2010). There may be rare exceptions. If a rogue employee at an intelligence agency, for example, leaks unredacted national-security material outside the normal FOIA process, an "inadvertent" disclosure might lack "official acknowledgment" and defease "the public domain exception." *Id.* But in the normal course, agency inadvertence has consequences.

Finally, to the extent some courts have entertained clawback by issuing so-called "temporary protective orders" that prohibit a requester from using a record until a lawsuit is complete, *see Wilson*, 2022 WL 4245485, at *14–15; *Pub. Citizen Health Research Grp.*, 953 F. Supp. at 404, those courts misconceive the issue at hand. *See 100Reporters*, 602 F. Supp. 3d at 84. Such "protective orders" raise the same justiciability concerns as an order to return or destroy a record *tout court*. If an agency seeks a "protective order," its motion presupposes an opportunity later in the litigation to argue that an inadvertently disclosed record should be properly exempt. But once a requester has a copy of a record in unredacted form, any further dispute is moot. *See supra* at pp. 17–18. A court has no basis to rule on a legal

question that is no longer a live issue, *see Cause of Action Inst. v. Dep't of Veterans Affairs*, No. 20-997, 2021 WL 1549668, at *5 n.2 (D.D.C. Apr. 20, 2021), or which may never be raised be at summary judgment if the requester seeks dismissal of the case. Any other outcome would commit a court to offering an advisory opinion. For that reason, a court's consideration of an exemption claim against the wishes of a requester could be constitutionally barred. *See Perry*, 684 F.2d at 125; *see also Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–92 (D.C. Cir. 1986).[6]

### B. Clawback deviates from the expected use of a court's inherent equitable power to enforce the terms of the FOIA.

At least one court has suggested its broad equitable authority to fashion remedies for violating the FOIA justifies an inherent clawback power. *See Sierra Club*, 505 F. Supp. 3d at 989. That is misguided. To be sure, the Supreme Court has recognized Congress wrote the FOIA to make the courts the "enforcement arm of the statute" and it did not intend "to limit the[ir] inherent powers." *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19–20 (1974). Yet the exercise of equitable power ought always to be "consistent with the statutory language and policy [of the FOIA], the legislative background[,] and the public interest." *Id.* at

---

[6] For this reason, the opinion in *National Press Club Journalism Institute*, while commendable, is less than ideal. Judge Contreras concluded an agency did not waive Exemptions 5, 6, and 7(C). But he also did not require the requester to return or destroy the contested records, nor did he otherwise limit their use in the litigation. 2023 WL 9001337, at *19.

19 (citing *Porter v. Warner Holding Co.*, 328 U.S. 395).  The silence of the FOIA, in this respect, should not be construed as *carte blanche* for a court to invent or import inherent or implied powers that flout the statute's purpose.  A requester who receives a record without redaction has not, in any way, violated the FOIA.

A court's equitable power in the FOIA context should instead only be exercised in remedial fashion against agencies for failure to abide by the statute.  *See Long v. Internal Revenue Serv.*, 693 F.2d 907, 909 (9th Cir. 1982) ("In determining whether injunctive relief is appropriate to resolve a FOIA dispute, the court's prime consideration should be on the effect on the public disclosure or nondisclosure."); *accord Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).  It should not be weaponized against requesters for the benefit of agencies, which only enjoy limited options to seek temporary relief from their disclosure obligations.  *See, e.g.*, 5 U.S.C. § 552(a)(6)(C) (authorizing a stay of proceedings if an agency can show "exceptional circumstances").  It would be entirely backwards for a court effectively to reverse disclosure by ordering the return or destruction of a record, let alone to prohibit a requester from using such a record in any way.  Either outcome is discordant with the FOIA.

It is also unfair to allow an agency to appeal to a court's equitable power for clawback when such a mechanism is nonexistent at the administrative stage.  The FOIA does not allow for clawback.  The fact a requester chooses to enforce *its* rights

by filing a complaint should not expand the agency's ability to revisit its productions after the fact. The involvement of a court in scheduling productions or supervising processing amid litigation should not, by itself, expand the court's inherent authority to do what could not be accomplished by the agency on its own under the statute.

## C. Clawback orders infringe on a requester's First Amendment rights.

A court's inherent equitable authority—especially as it pertains to the return, destruction, or limitation of the use of lawfully obtained records—is circumscribed by the Constitution and controlling caselaw that bars prior restraints on speech. "The First Amendment prohibits government from 'abridging the freedom of speech,'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021), and "[a]n individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used.'" *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011); *see N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("'Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.'").

A requester's right to use records obtained under the FOIA, and otherwise in the requester's lawful possession, is seriously threatened by clawback. It is hard to imagine *any* compelling government interest that would justify abridging the constitutionally protected right to speech merely to allow an agency a second bite at the FOIA-exemption apple. *Cf. Butterworth v. Smith*, 494 U.S. 624, 632 (1990).

Unfortunately, the few courts ordering clawback have given scant attention, if any, to the First Amendment implications. *See Sierra Club*, 505 F. Supp. 3d at 988.

Once again, the distinction between the production of records under the FOIA and during coercive civil discovery is relevant. *See supra* at pp. 9–13. As the Supreme Court explained in *Seattle Times Company v. Rhinehart*, while "a litigant [does not have] . . . an unrestrained right to disseminate information that has been *obtained through pretrial discovery*," 467 U.S. 20, 31 (1984) (emphasis added), courts can "*not* restrict the dissemination of . . . information *if gained from other sources*[.]" *Id.* at 37 (emphasis added). This Court has confirmed that *Seattle Times* limits any claimed inherent power to control the use of records obtained by a litigant outside of discovery, *see, e.g.*, *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988),[7] including in the FOIA context. *See Chiquita Brands Int'l Inc. v. Sec. & Exch. Comm'n*, 805 F.3d 289, 300 (D.C. Cir. 2015); *accord In re Providence Journal Co.*, 820 F.2d 1342, 1344–45, 1349 n.51 (1st Cir. 1986); *cf. In re Columbia Univ. Patent Litig.*, 330 F. Supp. 2d 18, 19 n.1 (D. Mass. 2004) ("The court has expressed serious

---

[7] In *In re Rafferty*, this Circuit held a magistrate "exceeded his delegated powers, which were limited to supervising the discovery process," by prohibiting disclosure of information "obtained *before* the litigation began." 864 F.2d at 155 (emphasis added). Admittedly, in most clawback disputes, a requester will have obtained the contested material during a lawsuit. But this is a distinction without a difference. Disclosure under the FOIA is already required during administrative processing and before the filing of a complaint. There is nothing inherent to processing records under the FOIA that implicates the judicial process. The fact there is no avenue for an agency to clawback records outside of litigation buttresses this point.

doubts [post-*Seattle Times*] as to whether it would ordinarily be permissible or appropriate to restrict distribution of information obtained [under the FOIA] independently of discovery . . . in view of the heavy presumption against prior restraints[.]") (citing *Pub. Citizen Health Research Grp.*, 953 F. Supp. at 404–05).

An agency's claim that it inadvertently disclosed a record does not change the First Amendment calculus. In *The Florida Star v. B.J.F.*, the Supreme Court rejected the argument that lawful *receipt* of information—there, the name of a rape victim "erroneous[ly], if inadvertent[ly]," included in a police report, 491 U.S. 524, 538 (1989)—turned on whether it was properly *disclosed*. *Id.* at 536 ("But the fact that state officials are not required to disclose such reports does not make it unlawful for a newspaper to receive them when furnished by the government."); *see N.Y. Times Co.*, 403 U.S. at 713 (recognizing government inability to prevent publication of the Pentagon Papers). If the First Amendment protects the dissemination of information inadvertently disclosed outside of civil discovery, even when such dissemination impinges on the privacy interests of non-governmental third parties, then it must protect, *a fortiori*, the right of a requester to use an agency record, no matter if it has been mistakenly released or could be withheld under a FOIA exemption.[8]

---

[8] Although many First Amendment cases involve traditional news-media organizations, the holdings of those cases and the protections afforded by the Bill of Rights, apply to all Americans. A citizen-watchdog or a "representative of the news media," *see* 5 U.S.C. § 552(a)(4)(A)(ii), among others, are just as entitled to be free from prior restraints as a classic news entity.

### III. Clarification as to the status of inherent clawback authority is needed.

Clawback is rare, but agencies are increasingly trying to obtain clawback orders. AFPF, for its part, is now in the midst of such a dispute with the Federal Trade Commission ("FTC")—a dispute that involves one of the more incredible attempts to obtain the return or destruction of a record long after it has been disclosed. *See generally Ams. for Prosperity Found. v. Fed. Trade Comm'n*, No. 21-3207 (D.D.C. filed Dec. 8, 2021).

During the summer of 2022, the FTC disclosed several records to AFPF, including an email chain reflecting communications between lawyers at FTC and another agency about a couple of lawsuits. There was nothing in the FTC's determination letter—let alone the email chain itself—to suggest the record should have been withheld under an exemption, and even if it could have been technically privileged (and protected by Exemption 5), it was not self-evident there was any foreseeable harm in disclosure.

For seven months, the email chain was freely accessible to all AFPF employees. Then, at the end of February 2023, the FTC claimed its release of the email had been inadvertent. That claim came in the middle of negotiations to narrow the scope of summary judgment briefing. The FTC asked AFPF to sequester and destroy all copies of the email chain, but AFPF declined to do so. Despite AFPF's consistent refusal to destroy or return the email chain, the FTC waited another three

months before moving the district court for entry of a briefing schedule for a clawback motion.  *See* Pre-Mot. J. Statement at 6–10, *Ams. for Prosperity Found. v. Fed. Trade Comm'n*, No. 21-3207 (D.D.C. July 28, 2023), ECF No. 29.

The FTC has yet to file a clawback motion following an agreement that AFPF could use the contested email under seal in summary judgment proceedings.  *See* Pl.'s Not., *Ams. for Prosperity Found. v. Fed. Trade Comm'n*, No. 21-3207 (D.D.C. Aug. 18, 2023), ECF No. 31.  That is, of course, an exceedingly curious status quo. But the agency's previewed arguments run the gamut from appealing to the inherent authority to preserve the integrity of judicial proceedings *à la* management of civil discovery, to the supposed relevance of FRE 502 to the FOIA, and the need for a "temporary protective order" to serve the ends of justice.

This sort of litigation strategy on the part of the government needs to end. District court judges should be directed that their inherent authority does not extend to order clawback, which is inconsistent with the FOIA and constitutionally suspect.

//

//

//

## CONCLUSION

For these reasons, this Court should reverse the district court.

Dated: March 6, 2024

Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203
Telephone: (571) 444-2841
rmulvey@afphq.org

*Counsel for Amicus curiae* AFPF

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rules of Appellate Practice 29(a)(5) and 32(a)(7)(B) because it contains 6,454 words. The brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Practice 32(a)(5)–(6) because it was prepared using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: March 6, 2024

*Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus curiae* AFPF

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2024, I electronically filed the above Brief of *Amcius Curiae* Americans for Prosperity Foundation in Support of Plaintiff-Appellant with the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. I further certify that the participants in this case are registered CM/ECF users, and service will be accomplished through the appellate CM/ECF system.

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
Counsel for *Amicus Curiae* AFPF