IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

HUMAN RIGHTS DEFENSE CENTER,

*Plaintiff-Appellant,*

v.

UNITED STATES PARK POLICE,

*Defendant-Appellee.*

Appeal from the United States District Court for the District of
Columbia, Case No. 1:19-cv-01502 (Hon. Tanya S. Chutkan)

**BRIEF OF *AMICI CURIAE* REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS AND 27 NEWS MEDIA
ORGANIZATIONS IN SUPPORT OF APPELLANT AND
REVERSAL**

Bruce D. Brown
  *Counsel of Record*
Katie Townsend
Adam A. Marshall
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1020
Washington, DC 20005
bruce.brown@rcfp.org
ktownsend@rcfp.org
amarshall@rcfp.org
(202) 795-9300
*Counsel for Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amici curiae* Reporters Committee for Freedom of the Press, Advance Publications, Inc., Axios Media Inc., Californians Aware, Dow Jones & Company, Inc., The E.W. Scripps Company, First Amendment Coalition, Forbes Media LLC, The Foundation for Progress (d/b/a The Center for Investigative Reporting and Reveal), Gannett Co., Inc., Hearst Corporation, The Intercept Media, Inc., The Media Institute, National Freedom of Information Coalition, National Press Club Journalism Institute, The National Press Club, National Press Photographers Association, National Public Radio, Inc., The New York Times Company, News/Media Alliance, ProPublica, Inc., The Seattle Times Company, Society of Environmental Journalists, Society of Professional Journalists, Student Press Law Center, TEGNA Inc., Tully Center for Free Speech, and The Washington Post (collectively, "*Amici*"), certify as follows:

## A. Parties and *Amici*

Except for Americans for Prosperity Foundation and the National Police Accountability Project, all parties, intervenors, and *amici curiae*

appearing before the district court and in this Court as of the filing of this brief are listed in the brief for Plaintiff-Appellant.

B.  <u>Rulings Under Review</u>

References to the rulings at issue appear in Plaintiff-Appellant's brief.

C.  <u>Related Cases</u>

To the knowledge of *Amici*'s counsel, there are no other cases within the meaning of Circuit Rule 28(a)(1)(C).

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, *Amici* certify as follows:

Advance Publications, Inc. ("Advance") certifies that it has no parent corporation and no publicly held corporation owns any of its stock.

Axios Media Inc. is a privately owned company, and no publicly held company owns 10% or more of its stock.

Californians Aware is a nonprofit organization with no parent corporation and no stock.

The Center for Investigative Reporting (d/b/a Reveal) is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code.  It has no statutory members and no stock.

Dow Jones & Company, Inc. ("Dow Jones") is an indirect subsidiary of News Corporation, a publicly held company.  Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones.  News Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of

Ruby Newco, LLC. No publicly traded corporation currently owns ten percent or more of the stock of Dow Jones.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

First Amendment Coalition is a nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

Forbes Media LLC is a privately owned company and no publicly held corporation owns 10% or more of its stock.

The Foundation for National Progress (d/b/a The Center for Investigative Reporting) is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Gannett Co., Inc. is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

Hearst Corporation is privately held and no publicly held corporation owns 10% or more of Hearst Corporation.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

The National Freedom of Information Coalition is a nonprofit organization that has not issued any shares or debt securities to the public, and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

The National Press Club Journalism Institute is a not-for-profit corporation that has no parent company and issues no stock.

The National Press Club is a not-for-profit corporation that has no parent company and issues no stock.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

National Public Radio, Inc. is a privately supported, not-for-profit membership organization that has no parent company and issues no stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

News/Media Alliance is a nonprofit, non-stock corporation organized under the laws of the commonwealth of Virginia. It has no parent company.

Pro Publica, Inc. ("ProPublica") is a Delaware nonprofit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

The Seattle Times Company: The McClatchy Company, LLC owns 49.5% of the voting common stock and 70.6% of the nonvoting common stock of The Seattle Times Company.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization. It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

Student Press Law Center is a 501(c)(3) not-for-profit corporation that has no parent and issues no stock.

TEGNA Inc. has no parent company, and no publicly-held company has a 10% or greater ownership interest in TEGNA, Inc.

The Tully Center for Free Speech is a subsidiary of Syracuse University.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos. WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES.............................................................................. i

CORPORATE DISCLOSURE STATEMENT ......................................... iii

TABLE OF AUTHORITIES ................................................................... x

STATUTES AND REGULATIONS ...................................................... xvi

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO
    FILE ......................................................................................... xvi

RULE 29(a)(4)(E) CERTIFICATION.................................................. xvii

CERTIFICATE REGARDING SEPARATE BRIEFING .................... xviii

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 1

ARGUMENT .......................................................................................... 5

I.    The District Court's order imposes an unconstitutional prior
      restraint that must be vacated. ..................................................... 5

      A.    The order is a classic prior restraint that must satisfy
            stringent First Amendment standards.................................... 5

      B.    That the government released information that it may
            be permitted (or even required) to withhold under a
            statute does not alter the constitutional analysis. ................ 8

      C.    The First Amendment does not foreclose the possibility
            that the government could obtain a prior restraint in
            an "exceptional" case; this is not such a case. ...................... 12

II.   Constitutional protections against prior restraints apply to
      information released by an agency under FOIA both before
      and after a FOIA complaint has been filed. ................................. 15

      A.    Journalists and news organizations increasingly need
            to resort to FOIA litigation as a result of agency delay. ....... 15

B.     The release of requested records in the context of FOIA litigation is not akin to civil discovery.................................22

III.   Agency efforts to restrict the dissemination of records released under FOIA are increasingly common and jeopardize reporting in the public interest. ..................................27

CONCLUSION..........................................................................................32

CERTIFICATE OF COMPLIANCE ......................................................34

CERTIFICATE OF SERVICE .................................................................35

# TABLE OF AUTHORITIES

**Cases**

*100Reporters v. U.S. Dep't of State,*
  602 F. Supp. 3d 41 (D.D.C. 2022) ................................................. 11, 12

*Alexander v. United States,*
  509 U.S. 544 (1993) ............................................................ 2, 6, 7, 10

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963) ..................................................................... 5

*Bartnicki v. Vopper,*
  532 U.S. 514 (2001) .................................................................... 6

*CBS Inc. v. Davis,*
  510 U.S. 1315 (1994) .................................................................. 6

*CBS, Inc. v. U.S. District Court,*
  729 F.2d 1174 (9th Cir. 1984) ...................................................... 13

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n,*
  711 F.3d 180 (D.C. Cir. 2013) .................................................. 24, 25

*F.B.I. v. Abramson,*
  456 U.S. 615 (1982) ................................................................... 25

*Florida Star v. B.J.F.,*
  491 U.S. 524 (1989) .............................................................. 6, 9, 10

*Gray Media Grp., Inc. v. W. Va. Dep't of Health & Hum. Res.,*
  No. 22-P-197, 2023 WL 5682352
  (W. Va. Cir. Ct. Aug. 28, 2023) ................................................ 12, 13

*Houchins v. KQED, Inc.,*
  438 U.S. 1 (1978) ...................................................................... 16

*Hum. Rts. Def. Ctr. v. U.S. Park Police,*
  No. 19-cv-1502 (TSC), 2023 WL 5561602
  (D.D.C. Aug. 29, 2023) ...................................... 2, 7, 8, 18, 24

*In re Sealed Case,*
  77 F.4th 815 (D.C. Cir. 2023) ............................................ 5

*In re Terrorist Attacks on Sept. 11, 2001,*
  No. 03-MD-01570 (GBD)(SN), 2022 WL 1805398
  (S.D.N.Y. June 2, 2022) ........................................................23

*N.Y. Times Co. v. United States,*
  403 U.S. 713 (1971) ................................ 1, 5, 6, 8, 9, 14, 15

*Near v. Minnesota ex rel. Olson,*
  283 U.S. 697 (1931) ...........................................1, 5, 13

*Neb. Press Ass'n v. Stuart,*
  427 U.S. 539 (1976) ........................................5, 6, 7, 8, 11

*Nixon v. Warner Commc'ns, Inc.,*
  435 U.S. 589 (1978) ........................................................27

*Reps. Comm. for Freedom of the Press v. F.B.I.,*
  3 F.4th 350 (D.C. Cir. 2021) ........................................26, 27

*Se. Promotions, Ltd. v. Conrad,*
  420 U.S. 546 (1975) ........................................................ 1

*Seattle Times Co. v. Rhinehart,*
  467 U.S. 20 (1984) ........................................................26, 27

*Sierra Club v. U.S. Env't Prot. Agency,*
  505 F. Supp. 3d 982 (N.D. Cal. 2020) ................................11

*Smith v. Daily Mail Publ'g Co.,*
  443 U.S. 97 (1979) ........................................................1, 2, 6

*Stonehill v. I.R.S.,*
  558 F.3d 534 (D.C. Cir. 2009) ........................................23

## Statutes

5 U.S.C. § 552........................................................................xv

5 U.S.C. § 552(a)(4) ............................................................16

5 U.S.C. § 552(a)(6) ........................................................16, 24

5 U.S.C. § 552(a)(8) ..............................................20, 25, 26

5 U.S.C. § 552(b)(1) ........................................................ 8

Fla. Stat. § 119.07(3)(h) (1983) ............................................. 9

**Other Authorities**

Associated Press, *122 levees across the nation at risk of failing*,
    NBC News (Feb. 1, 2007),
    https://www.nbcnews.com/id/wbna16932664 .....................................22

Ben Gittleson, *An inside look at how Donald Trump's name came
    to appear on stimulus checks*, ABC News (May 7, 2021),
    https://abcnews.go.com/Politics/inside-donald-trumps-stimulus-
    checks/story?id=77534116 ................................................22

Brody Mullins et al., *Inside the U.S. Antitrust Probe of Google*,
    Wall St. J. (Mar. 19, 2015),
    https://www.wsj.com/articles/inside-the-u-s-antitrust-probe-of-
    google-1426793274 .......................................................32

Dave Philipps, *Generals Sought More Positive Coverage on Head
    Injuries, Document Shows*, N.Y. Times (Sept. 29, 2015),
    https://www.nytimes.com/2015/09/30/us/generals-sought-more-
    positive-coverage-document-shows.html ....................................21

Def.'s Reply in Supp. of Mot. for Summ. J.,
    *Hum. Rts. Def. Ctr. v. U.S. Park Police*,
    No. 19-cv-1502 (TSC) (D.D.C. June 25, 2021), ECF No. 27 ......7, 14, 23

*Ensuring Transparency through the Freedom of Information Act:
    Hearing Before the H. Comm. on Oversight & Gov't Reform*,
    114th Cong. (June 2, 2015),
    https://oversight.house.gov/wp-content/uploads/
    2015/06/2015-06-02-FC-Ensuring-Transparency-Through-the-
    FOIA.pdf ..................................................................17

Fed. R. Civ. P. 26 ..........................................................23

Fed. R. Evid. 502........................................................................23

*FOIA Suits Rise Because Agencies Don't Respond Even As*
  *Requesters Wait Longer To File Suit*,
  The FOIA Project (Dec. 15, 2019),
  https://foiaproject.org/2019/12/15/foia-suits-rise-because-
  agencies-dont-respond-even-as-requesters-wait-longer-to-file-
  suit/........................................................................18

Juliet Eilperin, *Trump administration officials dismissed benefits*
  *of national monuments*, Wash. Post (July 23, 2018),
  https://www.washingtonpost.com/national/health-science/trump-
  administration-officials-dismissed-benefits-of-national-
  monuments/2018/07/23/5b8b1666-8b9a-11e8-a345-
  a1bf7847b375_story.html........................................................32

Lizette Chapman & Jason Leopold, *The Big Names That Got*
  *Backstop for Billions in Uninsured SVB Deposits*,
  Bloomberg News (June 23, 2023),
  https://www.bloomberg.com/news/articles/2023-06-23/fdic-
  insured-billions-in-deposits-for-sequoia-other-top-
  svb-customers........................................................28, 29

Matt Egan, *FDIC accidentally reveals details about Silicon Valley*
  *Bank's biggest customers*, CNN (June 23, 2023),
  https://www.cnn.com/2023/06/23/investing/svb-bank-
  fdic/index.html........................................................29

Melville B. Nimmer, Nimmer on Freedom of Speech (1984)..................7

Mem. of Law in Supp. of Def.'s Mot. for Summ. J.,
  *Hum. Rts. Def. Ctr. v. U.S. Park Police*,
  No. 19-cv-1502 (TSC) (D.D.C. Mar. 26, 2021), ECF No. 23-1..............7

Memorandum from the Attorney General (Mar. 19, 2009),
  https://www.justice.gov/sites/default/files/ag/
  legacy/2009/06/24/foia-memo-march2009.pdf........................................25

Nate Jones, *Document Friday: Someone from the Department of State thought that punishing Pakistan for "providing refuge and assistance" to Osama bin Laden was "a bunch of crap!!"*, Unredacted (May 13, 2011), https://unredacted.com/2011/05/13/document-friday-the-department-of-state-was-hiding-this/ .........................................21, 22

Patty Reinert, *NASA has lost $34 million in property since '97*, Houston Chronicle (Feb. 27, 2004), https://www.chron.com/news/nation-world/article/NASA-has-lost-34-million-in-property-since-97-1508285.php.............................22

Rachel Rabkin Peachman, *While They Were Sleeping*, Consumer Reports (Dec. 30, 2019), https://www.consumerreports.org/child-safety/while-they-were-sleeping/.......................................................................29, 30

Roque Planas, *Emails Show Border Patrol's Widespread Use Of Anti-Immigrant Slur*, HuffPost (Feb. 14, 2024), https://www.huffpost.com/entry/border-patrol-agents-tonk-usage-emails-messages-released_n_65cbcfffe4b065628a611059........20

Ryan Felton, *A Tiny Lab Found Benzene in Sunscreen and Hand Sanitizer. Why Did the FDA Go After It?*, Consumer Reports (Mar. 31, 2022), https://www.consumerreports.org/product-safety/valisure-found-benzene-in-products-fda-inspected-lab-a7872407447/ .................30, 31

*The Foilies 2023*, Elec. Frontier Found. (Mar. 12, 2023), https://www.eff.org/deeplinks/2023/03/foilies-2023#ice .....................31

U.S. Dep't of Justice, Annual Freedom of Information Act Report: Fiscal Year 2022 (2023), https://www.justice.gov/d9/202303/doj_fy22_agency_overall_report_final.pdf...........................................................................16, 17

*Vaughn* Index, *Hum. Rts. Def. Ctr. v. U.S. Park Police*, No. 19-cv-1502 (TSC) (D.D.C. Mar. 26, 2021), ECF No. 23-8 .............14

*When FOIA Goes to Court: 20 Years of Freedom of Information Act Litigation by News Organizations and Reporters*,
The FOIA Project (Jan. 13, 2021),
https://foiaproject.org/2021/01/13/foialitigators2020/ .........................18

## STATUTES AND REGULATIONS

All applicable statutes are contained in the brief for Plaintiff-Appellant.

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

*Amici* are the Reporters Committee for Freedom of the Press (the "Reporters Committee") and 27 news media organizations.

Plaintiff-Appellant Human Rights Defense Center ("HRDC") and Defendant-Appellee United States Park Police ("Park Police") consent to the filing of this brief. *See* Fed. R. App. P. 29(a)(2); Cir. R. 29(b).

Lead *amicus* the Reporters Committee is an unincorporated nonprofit association founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

Representatives of the news media, including the Reporters Committee, frequently rely on the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), to gather information to report on matters

of public interest and shed light on the activities of government. As a result, they are particularly likely to be the targets of government demands to destroy or return documents lawfully obtained from an agency under FOIA, including during the pendency of FOIA litigation. To *Amici*'s knowledge, this Court has never addressed the validity of an order restraining the publication or other dissemination of information obtained lawfully pursuant to FOIA. Accordingly, *Amici* have a strong interest in the outcome of this appeal and, specifically, in ensuring that journalists and news organizations can vindicate their statutory right of access to agency records under FOIA without fear that an agency will be able to obtain—as the Park Police did here—an unconstitutional prior restraint prohibiting them from disseminating records that the agency released pursuant to the Act, regardless whether those records were released before or after the filing of a FOIA complaint.

## **RULE 29(a)(4)(E) CERTIFICATION**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici* certify that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than

*amici*, their members, or counsel—contributed money that was intended to fund preparing or submitting the brief.

## CERTIFICATE REGARDING SEPARATE BRIEFING

Pursuant to Circuit Rule 29(d), *Amici* certify that this brief is necessary to provide the perspective of a broad range of media organizations that frequently rely on FOIA to gather information in order to inform the public. *Amici* have a strong interest in ensuring that courts do not, in contravention of the First Amendment, enter orders prohibiting the dissemination of information in records released by an agency pursuant to FOIA.

**<u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>[1]**

One of the fundamental purposes of the First Amendment to the Constitution was "to prevent all such previous restraints upon publications as had been practiced by other governments[.]" *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 714 (1931) (citation omitted). This "distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). And, accordingly, any prior restraint on speech or publication "bear[s] a heavy presumption against its constitutional validity[,]" *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (citation omitted), and is subject to "the most exacting scrutiny[,]" *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979). Even when faced with claims of purported harm to national security, the Supreme Court has rejected a prior restraint against publication by the press. *N.Y. Times Co.*, 403 U.S. at 714; *see also id.* at 730–31 (White, J., concurring) (noting the "extraordinary protection against prior restraints enjoyed by the press under our constitutional system").

---

[1]      *Amici* take no position on any issue not expressly addressed herein.

1

The appealed-from order of the District Court requires HRDC—which is, among other things, the publisher of *Prison Legal News* and *Criminal Legal News*—"not to disclose, disseminate, or make use of" information in records provided to it by an agency of the federal government in response to a request under FOIA. *Hum. Rts. Def. Ctr. v. U.S. Park Police*, No. 19-cv-1502 (TSC), 2023 WL 5561602, at *6 (D.D.C. Aug. 29, 2023) (hereinafter "District Court Order"). Such an order is a "classic example[]" of a prior restraint. *Alexander v. United States*, 509 U.S. 544, 550 (1993). Even assuming, *arguendo*, that courts have some degree of "implied" authority to act when an agency purportedly inadvertently discloses information under FOIA, *cf.* Brief for Appellant at 37–42, it is beyond reasonable dispute that courts must exercise that authority within constitutional bounds. Yet, here, the District Court entered its order with no showing by the government that the First Amendment's heavy presumption against the validity of a prior restraint was overcome—indeed, without any First Amendment analysis at all. Its prior restraint must be vacated.

*Amici* write not only to underline the constitutional infirmity of the District Court's order but also to highlight the grave ramifications

of that order for FOIA litigants in this Circuit, in general, and for the news media in particular.  As lengthy agency delays in responding to FOIA requests have become the norm, journalists and news organizations are increasingly forced to resort to litigation simply to compel agencies to respond to FOIA requests in the first instance.  If a news organization can be subject to what would otherwise be an unconstitutional court order restraining its publication of information lawfully obtained under FOIA merely because an agency processed and released records in response to a FOIA request after a complaint was filed, the press will be deterred from seeking to vindicate its statutory right to access agency records in court.  And agencies, for their part, will be encouraged both to avoid responding to FOIA requests outside of litigation and to routinely demand that district courts restrain the publication of information released under the Act that the government later decides it would have preferred to have withheld.  It contravenes the First Amendment as well as the purpose and structure of the Act to subject the press to unconstitutional prior restraints in the FOIA context that the government could not otherwise obtain.

The circumstances under which the government has attempted to

enjoin a publisher from reporting on records released to it under the Act—both in and outside the context of litigation—are a far cry from those the Supreme Court has indicated might justify a prior restraint. As detailed herein, federal agencies have demanded that requesters destroy or return records on matters ranging from the embarrassing (records reflecting oil lobbyists scheduling drinks with government officials) to the deadly serious (records identifying companies that manufactured "sleepers" linked to dozens of infant mortalities). *Amici* urge this Court to make clear that government requests for court orders like the one entered by the District Court, below, are subject to exacting scrutiny under the First Amendment and bear a heavy presumption against their constitutional validity.

Because the First Amendment bars prior restraints in all but the most exceptional situations, and because the government did not—and could not—carry its heavy burden to overcome that bar here, *Amici* strongly urge the Court to vacate that portion of the District Court's order imposing a prior restraint.

# **ARGUMENT**

## I. **The District Court's order imposes an unconstitutional prior restraint that must be vacated.**

### A. <u>The order is a classic prior restraint that must satisfy stringent First Amendment standards.</u>

Prior restraints are "the essence of censorship." *Near*, 283 U.S. at 713. They have long been recognized to be "the most serious and the least tolerable infringement on First Amendment rights[,]" with the danger being "particularly great when the prior restraint falls upon the communication of news and commentary on current events." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Any prior restraint thus "bear[s] a heavy presumption against its constitutional validity." *N.Y. Times Co.*, 403 U.S. at 714 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)); *accord In re Sealed Case*, 77 F.4th 815, 829–30 (D.C. Cir. 2023) (prior restraints are "presumptively unconstitutional").

The Supreme Court consistently has held that the First Amendment bars courts from enjoining, punishing, or otherwise restricting the press's publication of truthful information of public significance that has been lawfully obtained. The Court has held the First Amendment protects the right to publish classified information, *see N.Y. Times Co.*, 403 U.S. at 714, the name of a victim of a sexual

offense that was inadvertently disclosed by a government agency, *Florida Star v. B.J.F.*, 491 U.S. 524, 538 (1989), information originally obtained by a source using unlawful means, *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001), the names of juveniles where publication has been criminalized by statute, *Daily Mail Publ'g Co.*, 443 U.S. at 106, information that might result in "significant economic harm," *CBS Inc. v. Davis*, 510 U.S. 1315, 1318 (1994) (Blackmun, J., in chambers), and information implicating competing constitutional rights, *Neb. Press Ass'n*, 427 U.S. at 570. And while it has made clear the threat to First Amendment freedoms posed by post-publication punishment, *see Florida Star*, 491 U.S. 524, the Court has applied the most stringent review to prior restraints, *Alexander*, 509 U.S. at 554 ("[T]he First Amendment [provides] greater protection from prior restraints than from subsequent punishments[.]").

The District Court's order is a "classic example[]" of a prior restraint: a "judicial order[] forbidding certain communications . . . issued in advance of the time that such communications are to occur." *Id.* at 550 (emphasis omitted) (quoting Melville B. Nimmer, Nimmer on Freedom of Speech § 4.03 (1984)). HRDC lawfully obtained the

information subject to the order—the names of certain claimants—from the Park Police; the agency disclosed it in response to a FOIA request. *See* District Court Order, 2023 WL 5561602, at *6.  Thereafter, at the Park Police's request, the District Court ordered HRDC "not to disclose, disseminate, or make use" of that information.  *Id.*  In so doing, it imposed a permanent, prior restraint on HRDC's speech.

The government made no attempt to carry "its heavy burden of showing justification for the prior restraint." *Neb. Press Ass'n*, 427 U.S. at 558.  Indeed, the Park Police did not even respond to HRDC's First Amendment arguments.  *See* Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 2, *Hum. Rts. Def. Ctr. v. U.S. Park Police*, No. 19-cv-1502 (TSC) (D.D.C. Mar. 26, 2021), ECF No. 23-1; Def.'s Reply in Supp. of Mot. for Summ. J., *Hum. Rts. Def. Ctr. v. U.S. Park Police*, No. 19-cv-1502 (TSC) (D.D.C. June 25, 2021), ECF No. 27.  And the District Court's order contains no discussion of First Amendment caselaw or constitutional analysis.  Instead, following a brief discussion of its "implied" authority to consider the Park Police's request, 2023 WL 5561602, at *6, the District Court imposed a prior restraint on HRDC. The District Court's failure to address the constitutional dimensions of

that order—let alone the order's failure to satisfy the applicable First Amendment standard—is fatal. The prior restraint must be vacated.

B. <u>That the government released information that it may be permitted (or even required) to withhold under a statute does not alter the constitutional analysis.</u>

Even assuming, *arguendo*, that the information subject to the District Court's order in this case could have been lawfully withheld under FOIA, that does not relieve the Park Police of its "heavy burden" under the First Amendment to justify a prior restraint on the dissemination or publication of that information once the government has disclosed it. *Neb. Press Ass'n*, 427 U.S. at 558.

The Pentagon Papers were classified, *N.Y. Times Co.*, 403 U.S. at 714, and could have been withheld under Exemption 1 if requested under FOIA. *See* 5 U.S.C. § 552(b)(1). But the mere fact that they were subject to a potential Exemption 1 denial did not relieve the government of its "heavy burden" to provide adequate "justification for the imposition of" an order restraining their publication by *The New York Times* and *The Washington Post*. *N.Y. Times Co.*, 403 U.S. at 714. Simply put, that the Pentagon Papers were classified and met the criteria for a FOIA exemption was an insufficient basis under the First

Amendment to justify a prior restraint.  *See id.*

The Supreme Court's decision in *Florida Star* is instructive. There, a Florida sheriff's department inadvertently placed a report containing the name of a victim of a sexual offense in its pressroom, where it was copied by a reporter.  491 U.S. at 527.  The victim's name was subsequently included in a news article and the victim sued both the sheriff's department and the newspaper under Florida law.  *Id.* at 527–28.  There was no dispute that the name of the victim was exempt from disclosure under Florida's public records law, and thus would not have been required to be disclosed by the sheriff's department in response to a public records request.  *Id.* at 536 (citing Fla. Stat. § 119.07(3)(h) (1983)).  Moreover, Florida statutory law prohibited publication of the victim's name, *id.* at 526–28.  Yet because the report revealing the victim's name was placed in the pressroom by the sheriff's department (inadvertently or not), the Supreme Court held that the newspaper could not be held liable for publishing it because the name was "truthful information" that the newspaper "lawfully obtained[.]" *Id.* at 541.

*Florida Star* makes clear that the First Amendment prohibits

punishing a news organization for publishing truthful information it lawfully obtained from the government, even if the government provided that information by mistake and was required to withhold it pursuant to statute.  And if post-publication punishment cannot be imposed in this circumstance consistent with the First Amendment, then the more demanding standard applicable to prior restraints *a fortiori* cannot be satisfied.  *See Alexander*, 509 U.S. at 554.

In considering (and rejecting) government requests for prior restraints like the one imposed by the District Court below, other federal and state courts have correctly recognized that whether or not information is subject to a FOIA exemption does not alter the necessary constitutional analysis.  In 2020, the Northern District of California rejected the Environmental Protection Agency's request for a court order requiring the Sierra Club to destroy certain information the agency claimed it inadvertently released in response to a FOIA request and could have properly withheld under Exemption 6.  *See Sierra Club v. U.S. Env't Prot. Agency*, 505 F. Supp. 3d 982, 984 (N.D. Cal. 2020).  At issue were the names and email addresses of petroleum industry lobbyists that were included in emails exchanged between those

lobbyists, agency employees, and a White House official about "plans to meet for drinks[.]" *Id.* The district court rejected the government's request, noting that "mistakes by litigants have consequences" and refusing to "restrain Sierra Club employees' speech in the absence of any showing that EPA could meet its heavy burden to obtain such an order[.]" *Id.* at 991–92 (citing *Neb. Press Ass'n*, 427 U.S. at 559).

More recently, in this Circuit, District Court Judge Randolph Moss rejected a request made by the State Department in a FOIA case "to take the extraordinary step of ordering a news organization and a journalist to return materials to a government agency, which they obtained through no unlawful or improper action[.]" *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022). At issue were names disclosed to a news organization and journalist in the context of FOIA litigation that the agency later claimed could be withheld under Exemptions 6, 7(C), and 7(F). *See id.* In denying the agency its requested prior restraint, the district court noted that the agency had failed to give "serious treatment" to the "great importance" of the First Amendment issues implicated by that request. *Id.*

An even more recent example involves a West Virginia

government agency's inadvertent release of a record that a state court had determined was exempt from disclosure under the state's public records law for privacy reasons. *Gray Media Grp., Inc. v. W. Va. Dep't of Health & Hum. Res.*, No. 22-P-197, 2023 WL 5682352 (W. Va. Cir. Ct. Aug. 28, 2023). The record was released mistakenly to counsel for a local TV station. The agency subsequently sought a protective order requiring the news outlet to destroy the document and prohibiting it from discussing or disseminating its contents. *Id.* at *2. The West Virginia court soundly rejected that request, finding that the agency had "fail[ed] to meet its 'heavy burden' to overcome the presumption that the prior restraint it seeks would violate the First Amendment." *Id.* at *4. In so holding, it determined that "nothing in the inadvertence of the disclosure" altered "the strong protection of the First Amendment[.]" *Id.*

C.   The First Amendment does not foreclose the possibility that the government could obtain a prior restraint in an "exceptional" case; this is not such a case.

Although there is a heavy presumption against the constitutional validity of a prior restraint, the possibility remains that it could be overcome in an appropriate "exceptional case[]." *Near*, 283 U.S. at 716;

*see also CBS, Inc. v. U.S. District Court*, 729 F.2d 1174, 1183 (9th Cir. 1984) (stating that "prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances"). The Supreme Court has indicated, for example, that restricting the publication of "sailing dates of transports or the number and location of troops" during wartime might satisfy the applicable constitutional standard. *Near*, 283 U.S. at 716. And, to the extent that standard can be satisfied, it can be satisfied in the context of information mistakenly disclosed in response to a FOIA request. Thus, if the Department of Defense inadvertently disclosed wartime troop movements in response to a FOIA request, one would expect the government to seek to enjoin their publication.

But such information is a far cry from the information at issue here. The Park Police asserts that the information it seeks to restrain HRDC from disseminating are the *names of two people who filed claims against the government*, one in a document consisting of "an EEO claim[] and one in [another document consisting of] a tort claim[.]" Def.'s Reply in Supp. of Mot. for Summ. J., *supra*, at 6. This does not remotely approach the kind of extraordinary circumstances that the

Supreme Court has indicated might justify the imposition of a prior restraint. Indeed, that the Park Police would seek a court order to restrain the dissemination of a name that the agency itself included in its publicly filed *Vaughn* index only underlines how very far removed such a request is from complying with constitutional standards. *See Vaughn* Index at 13, *Hum. Rts. Def. Ctr. v. U.S. Park Police*, No. 19-cv-1502 (TSC) (D.D.C. Mar. 26, 2021), ECF No. 23-8 (referencing "Breton v. Park Police").

If the First Amendment forbids a prior restraint on the publication of "the contents of a classified study" like the Pentagon Papers, *N.Y. Times Co.*, 403 U.S. at 714, a district court cannot, consistent with the First Amendment, prohibit the publication of non-classified, non-sensitive information that the government not only released to HRDC in response to a FOIA request but also subsequently included in a publicly filed judicial record. Such an order, if upheld, "would make a shambles of the First Amendment." *Id.* at 715 (Black, J., concurring).

**II. Constitutional protections against prior restraints apply to information released by an agency under FOIA both before and after a FOIA complaint has been filed.**

There should be no dispute that, had the Park Police inadvertently disclosed records under FOIA but outside of the context of litigation, the government would have had to overcome the "heavy presumption against [the] constitutional validity" of a prior restraint. *N.Y. Times Co.*, 403 U.S. at 714 (citation omitted). But neither the Park Police nor the District Court explained why the mere filing of a FOIA complaint alters this constitutional analysis, nor is there any legal or policy rationale that would support such a notion. The First Amendment's protections against prior restraints apply to records obtained under FOIA regardless of whether or not litigation has been initiated over those records.

A. <u>Journalists and news organizations increasingly need to resort to FOIA litigation as a result of agency delay.</u>

Journalists are the "'eyes and ears' of the public." *Houchins v. KQED, Inc.*, 438 U.S. 1, 8 (1978). And in fulfilling that constitutionally recognized role, journalists routinely rely on FOIA as a means to gather information to report on the work of federal agencies. Journalists' use of FOIA, as Congress has recognized in enacting provisions specific to

the news media, furthers the core purposes of the Act.  *See, e.g.*, 5

U.S.C. § 552(a)(4)(A)(ii)(II) (limiting fees for news media); *id.* §

552(a)(6)(E)(v) (providing for expediting processing of requests by

"person[s] primarily engaged in disseminating information").

But as journalists and news organizations know all too well,

agency delay in responding to FOIA requests has become so endemic

that litigation is often the only viable mechanism to compel an agency

to respond to a request in any reasonable timeframe.  In fiscal year

2022, for example, the Criminal Division of the Department of Justice

averaged more than 1,090 days to process its "complex" requests.  U.S.

Dep't of Justice, Annual Freedom of Information Act Report: Fiscal Year

2022, at 37 (2023), https://www.justice.gov/d9/2023-

03/doj_fy22_agency_overall_report_final.pdf.  Such delays are especially

harmful to reporters, who are often requesting records with

contemporaneous news value.  For such requests, litigation is almost

always necessary.  As the Assistant General Counsel for the New York

Times Company told a Congressional committee in 2015:

> Last year, I filed eight FOIA lawsuits on behalf of the Times.
> Much of that litigation was driven not by actual disagreement
> about legal issues but in response to unacceptable delay by

agencies.  In other words, we find ourselves compelled to litigate simply to prompt agencies to act upon request.

*Ensuring Transparency through the Freedom of Information Act:*

*Hearing Before the H. Comm. on Oversight & Gov't Reform*, 114th Cong. 16 (June 2, 2015), https://oversight.house.gov/wp-content/uploads/ 2015/06/2015-06-02-FC-Ensuring-Transparency-Through-the-FOIA.pdf (statement of David E. McCraw).  Agency delay as a main driver of FOIA litigation is borne out by studies examining recent FOIA case data.  One such study showed that most of the increase in FOIA litigation between 2015 and 2019 was due to agencies' failure to issue timely determinations.  *See FOIA Suits Rise Because Agencies Don't Respond Even As Requesters Wait Longer To File Suit*, The FOIA Project (Dec. 15, 2019), https://foiaproject.org/2019/12/15/foia-suits-rise-because-agencies-dont-respond-even-as-requesters-wait-longer-to-file-suit/.  And another study shows that FOIA lawsuits by news media plaintiffs dramatically increased over a similar time period.  *See When FOIA Goes to Court: 20 Years of Freedom of Information Act Litigation by News Organizations and Reporters*, The FOIA Project (Jan. 13, 2021), https://foiaproject.org/2021/01/13/foialitigators2020/ (reporting

more news media FOIA lawsuits were brought 2017–2020 than 2001–2016).

That journalists and news organizations must increasingly turn to litigation simply to prompt agencies to search for and process requested records underlines the threat posed to the press by the District Court's prior restraint in this case. The District Court located its authority to impose a prior restraint on HRDC in its "implied powers" in cases pending before it. District Court Order, 2023 WL 5561602, at *6. Neither the District Court nor the Park Police has suggested (nor could they) that an agency could obtain a prior restraint outside litigation without satisfying constitutional requirements. Thus, under the District Court's reasoning, simply by filing a FOIA complaint in order to compel an agency to respond to a FOIA request, a journalist or news organization may be subjected to what would otherwise be unconstitutional prior restraint—a restriction on the dissemination and publication of information lawfully obtained under FOIA after their complaint is filed. Not only is that result unmoored from the Constitution, but also it creates perverse incentives for requesters and government agencies alike.

On the one hand, journalists and news organizations may be dissuaded from filing FOIA lawsuits by the prospect of being restrained, by court order, from publishing information the government released (inadvertently or not) under FOIA and that it later decides should have been withheld. As described *infra*, agencies are increasingly demanding that reporters and news organizations destroy records they released in response to FOIA requests; faced with the potential of such demands resulting in court orders limiting what information they can publish, news media requesters may decline to pursue litigation. Dissuading use and enforcement of the Act by the press is squarely at odds with congressional intent.

On the other hand, government agencies would be incentivized to wait for a lawsuit to be filed before releasing any records in response to a FOIA request, knowing that if records are released after the filing of a FOIA complaint they will have a powerful tool at their disposal to 'undo' any inadvertent disclosures, or disclosures they simply determine later should not have been made.

Such a scenario is not difficult to imagine. Consider the following hypothetical: Six months after submitting a FOIA request and receiving

no response, a reporter files a FOIA lawsuit.  After the complaint is filed, the defendant agency processes and releases pre-decisional, deliberative emails between the head of the agency and a number of subordinates in which the agency head uses a slur.[2]  The agency releases the emails to the reporter because although they fall within the scope of a discretionary FOIA exemption—Exemption 5—the agency determines that the foreseeable harm standard, 5 U.S.C. § 552(a)(8), is not satisfied.  The reporter receives the records and writes a story based on the emails.  Before publishing the reporter reaches out to the agency's press office for comment about the agency head's use of a slur.  The press office, in turn, alerts the agency head, who demands agency staff do something to ensure the story doesn't run.[3]  Agency counsel

---

[2]     *Cf., e.g.*, Roque Planas, *Emails Show Border Patrol's Widespread Use Of Anti-Immigrant Slur*, HuffPost (Feb. 14, 2024), https://www.huffpost.com/entry/border-patrol-agents-tonk-usage-emails-messages-released_n_65cbcfffe4b065628a611059.

[3]     *C.f.* Dave Philipps, *Generals Sought More Positive Coverage on Head Injuries, Document Shows*, N.Y. Times (Sept. 29, 2015), https://www.nytimes.com/2015/09/30/us/generals-sought-more-positive-coverage-document-shows.html (reporting two Army generals sought to delay responding to a *Times* FOIA request on concussions at West Point in order to secure more favorable coverage elsewhere).

quickly files a motion with the court where the case is pending, claiming that, in light of new information, the agency believes the foreseeable harm standard is satisfied and the emails should have been withheld; on that basis the agency seeks an order restraining publication of the contents of the emails.

There are all manner of embarrassing, inconvenient, and politically damaging records that are released under FOIA that someone in government might later want to 'claw' back: an email in which an agency employee calls pending legislation "a bunch of crap,"[4] a list of levees that are at risk of failing,[5] records showing that millions of dollars of federal property has gone missing,[6] or records showing the

---

[4] Nate Jones, *Document Friday: Someone from the Department of State thought that punishing Pakistan for "providing refuge and assistance" to Osama bin Laden was "a bunch of crap!!"*, Unredacted (May 13, 2011), https://unredacted.com/2011/05/13/document-friday-the-department-of-state-was-hiding-this/.

[5] Associated Press, *122 levees across the nation at risk of failing*, NBC News (Feb. 1, 2007), https://www.nbcnews.com/id/wbna16932664.

[6] Patty Reinert, *NASA has lost $34 million in property since '97*, Houston Chronicle (Feb. 27, 2004), https://www.chron.com/news/nation-world/article/NASA-has-lost-34-million-in-property-since-97-1508285.php.

scramble to add a government official's name to stimulus checks.[7]  The

District Court's prior restraint, if not vacated, will encourage mischief

and insert uncertainty into a statutory framework designed to make

government transparent to the public.

> B.  <u>The release of requested records in the context of FOIA litigation is not akin to civil discovery.</u>

In support of its request for a prior restraint, below, the Park

Police cited Federal Rule of Evidence 502(b), which pertains to

information that is attorney-client or work-product privileged; it cross-

references Federal Rule of Civil Procedure 26(b)(5).  *Compare* Def.'s

Reply in Supp. of Mot. for Summ. J., *supra*, at 6, *with* Fed. R. Evid. 502,

*and* Fed. R. Civ. P. 26.  That rule has no applicability here.

Even setting aside the fact that the information HRDC has been

restrained from publishing is not subject to either privilege, an agency's

release of records in response to a FOIA request (whether in the context

of litigation or not) is not civil discovery.  *Stonehill v. I.R.S.*, 558 F.3d

534, 538 (D.C. Cir. 2009) (explaining that the "FOIA disclosure regime .

---

[7]     Ben Gittleson, *An inside look at how Donald Trump's name came to appear on stimulus checks*, ABC News (May 7, 2021), https://abcnews.go.com/Politics/inside-donald-trumps-stimulus-checks/story?id=77534116.

. . is distinct from civil discovery").  The plain language of the rules applicable to discovery makes clear they do not control the release of information under FOIA.  *See, e.g.*, Fed. R. Civ. P. 26(b)(5)(B) (applying only to information "produced in discovery"); *accord In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD)(SN), 2022 WL 1805398, at *3 (S.D.N.Y. June 2, 2022) (clarifying that "information obtained through a FOIA request" or other means is outside the scope of a protective order for discovery materials).

In addition to the clear textual barrier to applying civil discovery rules to FOIA, both the law and practice of FOIA litigation underscore the differences between records released in response to a request made under the Act and materials exchanged between parties in civil discovery.  In this Circuit, after a FOIA complaint is filed and answered, the counsel for the requester and agency will typically meet and confer and agree to a schedule by which the agency will search for and process records for release.  In the experience of *Amici* and their counsel, while a district court may enter a processing order, it is more common for the parties to simply agree to a schedule and file periodic

status reports with the district court.[8]  The agency will thereafter

release responsive records it does not seek to withhold as exempt by

sending those records directly to the requesting journalist or to their

counsel who, in *Amici*'s experience, promptly forward them to the

journalist or newsroom.  This process of searching for, reviewing, and

releasing records after a FOIA complaint has been filed is, in essence,

what the Act contemplates the agency doing in a timely fashion *before*

any lawsuit is filed.  *Cf.* 5 U.S.C. § 552(a)(6)(A)(i) (requiring

determinations to be made within 20 working days); *Citizens for Resp.*

*& Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir.

2013) (describing what qualifies as a "determination" under the Act).

Moreover, when agencies release records in response to FOIA

requests, FOIA requesters *expect* to receive information that is exempt,

including privileged information.  As they should.  In general, FOIA's

exemptions are discretionary; unless statutorily barred from doing so,

an agency can (and they frequently do) release information that could

have been withheld.  *Cf., e.g.*, Memorandum from the Attorney General

---

8    This process is essentially the one that was followed in this case.
*See* District Court Order, 2023 WL 5561602, at *1–2.

(Mar. 19, 2009), https://www.justice.gov/sites/default/files/ag/
legacy/2009/06/24/foia-memo-march2009.pdf (instructing agencies not to
"withhold information simply because [they] may do so legally."); *accord*
*F.B.I. v. Abramson*, 456 U.S. 615, 621 (1982) (noting Congress "provided
nine specific exemptions under which disclosure *could* be refused"
(emphasis added)).  Moreover, since the passage of the FOIA
Improvement Act of 2016, the "foreseeable harm" provision *mandates*
that agencies disclose information that falls within the scope of a
discretionary exemption, including Exemption 5, if the "foreseeable
harm" requirement is not met.  5 U.S.C. § 552(a)(8); *accord Reps.*
*Comm. for Freedom of the Press v. F.B.I.*, 3 F.4th 350, 369 (D.C. Cir.
2021) ("[T]he government may not withhold even those privileged
materials unless it also 'reasonably foresees that disclosure would harm
an interest protected by' the FOIA exemption." (quoting 5 U.S.C. §
552(a)(8)(A)(i)(I))).

In sum, the release of records by an agency in response to a FOIA
request, whether in litigation or not, is markedly different from
discovery, and distinguishes the District Court's order here from the
situation confronted by the Supreme Court in *Seattle Times Co. v.*

*Rhinehart*, 467 U.S. 20 (1984). In that case, the Court determined that a less demanding First Amendment standard applied to restrictions on material obtained by a party pursuant to civil discovery procedures and a protective order that had been entered by the trial court "under Rule 26(b)(1)." *Id.* at 31. As the Court noted, in discovery a party can only obtain material that is "not privileged." *Id.* at 29 (citation omitted). Moreover, information is "made available" through discovery "only for purposes of trying [the] suit[,]" and "may be unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 32–33. Finally, the Court noted that discovery is not a "traditionally public source of information." *Id.* at 33.

None of these considerations apply to records released under FOIA. The press and public have an independent statutory right of access to agency records under the Act.[9] That right extends to exempt and privileged material where the Act's "foreseeable harm" requirement is not satisfied. *Reps. Comm.*, 3 F.4th at 369. And—even when that

---

[9] Even if there were no statutory right of access to executive branch records, journalists and members of the public would have a common law right of access. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[T]he courts of this country recognize a general right to inspect and copy public records and documents[.]").

requirement is satisfied—an agency's decision to withhold records is generally discretionary.  Moreover, critically, in FOIA litigation, access to information is the entire reason for the suit: disclosure of records by the government goes to the merits of the action itself; it is not merely a means to another end.  *Cf. Seattle Times*, 467 U.S. at 33.  Accordingly, records released pursuant to FOIA, whether in the context of FOIA litigation or not, are unlike materials merely exchanged between civil litigants in discovery.  *Seattle Times* has no application here.

III.  **Agency efforts to restrict the dissemination of records released under FOIA are increasingly common and jeopardize reporting in the public interest.**

In recent years, there has been a concerning number of demands made by federal agencies to journalists and news organizations to restrict the use of records they lawfully obtained under FOIA.  Although the total number of such demands is not known to *Amici*, the examples described below from outside the litigation context underline the importance of the issue presented in this appeal.  If the District Court's prior restraint is not vacated, it threatens to open the floodgates.

Just last year, a reporter for Bloomberg News received a 'clawback' demand from the Federal Deposit Insurance Corporation

("FDIC"). *See* Lizette Chapman & Jason Leopold, *The Big Names That Got Backstop for Billions in Uninsured SVB Deposits*, Bloomberg News (June 23, 2023), https://www.bloomberg.com/news/articles/2023-06-23/fdic-insured-billions-in-deposits-for-sequoia-other-top-svb-customers. The demand sought the return of a record released to the journalist in response to a FOIA request about the implosion of Silicon Valley Bank ("SVB")—specifically records regarding the largest depositors who benefited from the FDIC's controversial bailout of SVB. *Id.* The disclosed record provided important insight into the scope of the bailout, showing that the FDIC had secured billions in deposits made by Sequoia Capital and other large companies, in addition to small startups. *Id.* After initially releasing an unredacted record to Bloomberg, the FDIC subsequently demanded that Bloomberg destroy the record and cease disseminating it. *Id.* Bloomberg refused, and the FDIC's demand ended up informing the broader debate about how much the public was entitled to know about the SVB bailout. *See, e.g.*, Matt Egan, *FDIC accidentally reveals details about Silicon Valley Bank's biggest customers*, CNN (June 23, 2023), https://www.cnn.com/2023/06/23/investing/svb-bank-fdic/index.html.

In 2019, the Consumer Product Safety Commission ("CPSC") demanded that Consumer Reports journalists destroy data they obtained in response to a FOIA request regarding infant fatalities linked to specific "sleeper" products. *See* Rachel Rabkin Peachman, *While They Were Sleeping*, Consumer Reports (Dec. 30, 2019), https://www.consumerreports.org/child-safety/while-they-were-sleeping/. As recounted by Consumer Reports, "CPSC's lawyers sent letters to [Consumer Reports] demanding we destroy the data and not publish anything based on it." *Id.* Consumer Reports refused. Instead, it published stories about "the vast scope of [infant] deaths, as well as the brands that had caused them"—identifying those brands for the first time. *Id.* The stories were followed by the recall of millions of dangerous sleepers. *Id.*

Additional examples of agencies demanding the destruction or return of records released under FOIA abound:

- In 2022, the Food and Drug Administration ("FDA") demanded that Consumer Reports destroy an investigation report that the FDA released under FOIA. *See* Ryan Felton, *A Tiny Lab Found Benzene in Sunscreen and Hand Sanitizer. Why Did the FDA Go*

*After It?*, Consumer Reports (Mar. 31, 2022),

https://www.consumerreports.org/product-safety/valisure-found-

benzene-in-products-fda-inspected-lab-a7872407447/. Consumer

Reports declined. *Id.* The disclosed report showed the FDA

closely scrutinized a "tiny Connecticut-based laboratory [that] had

a string of successes uncovering serious safety problems in

common consumer products and medications[,]" including the

presence of benzene, a carcinogen, in hand sanitizer. *Id.*

Consumer Reports reporting about the disclosure prompted

questions by experts and a member of Congress about the FDA's

investigation priorities. *Id.*

- In 2021, Immigration and Customs Enforcement ("ICE") sent a

'clawback' demand to a reporter for documents it released under

FOIA pertaining to the Department of Homeland Security's

involvement in the response to widespread demonstrations

following the murder of George Floyd in the summer of 2020. *See*

*The Foilies 2023*, Elec. Frontier Found. (Mar. 12, 2023),

https://www.eff.org/deeplinks/2023/03/foilies-2023#ice. The

records illuminated the scope of various DHS components'

assistance to local law enforcement around the country during the demonstrations, including the provision of federal personnel, equipment, and surveillance support. *Id.*

- In 2018, the Department of Interior demanded that multiple journalists delete unredacted versions of documents that the agency uploaded to its online FOIA reading room, which showed "department officials dismissed some evidence that contradicted the administration's push" to shrink certain national monuments. *See* Juliet Elperin, *Trump administration officials dismissed benefits of national monuments*, Wash. Post (July 23, 2018), https://www.washingtonpost.com/national/health-science/trump-administration-officials-dismissed-benefits-of-national-monuments/2018/07/23/5b8b1666-8b9a-11e8-a345-a1bf7847b375_story.html.

- In 2015, the Federal Trade Commission demanded that *The Wall Street Journal* return documents it released under FOIA, which showed that key FTC staff had urged aggressive enforcement action against Google. *See* Brody Mullins et al., *Inside the U.S. Antitrust Probe of Google*, Wall St. J. (Mar. 19, 2015),

https://www.wsj.com/articles/inside-the-u-s-antitrust-probe-of-google-1426793274.

As these examples show, federal agencies are more than willing to demand that journalists and media organizations return or destroy documents released pursuant to FOIA—even outside the scope of FOIA litigation. If agencies can obtain court orders requiring news organizations to destroy (or refrain from disseminating) information they lawfully obtained from the agency under FOIA simply by claiming the information was "inadvertently" disclosed and could have been withheld pursuant to a FOIA exemption, agencies will have license to stifle the publication of information of vital importance to the public.

## CONCLUSION

For the reasons herein, *Amici* respectfully urge the Court to vacate the District Court's prior restraint.

Dated: March 6, 2024

Respectfully submitted,

*/s/ Bruce D. Brown*
Bruce D. Brown
  *Counsel of Record for*
  *Amici Curiae*
Katie Townsend
Adam A. Marshall

REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1020
Washington, DC 20005
ktownsend@rcfp.org
amarshall@rcfp.org
(202) 795-9300

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 6,484 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: March 6, 2024
      Washington, D.C.

*/s/ Bruce D. Brown*
Bruce D. Brown

*Counsel of Record for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on March 6, 2024, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. All parties are registered CM/ECF users, and service upon them will be accomplished by the appellate CM/ECF system.

*/s/ Bruce D. Brown*
Bruce D. Brown
*Counsel of Record for*
*Amici Curiae*

Dated: March 6, 2024