# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

HUMAN RIGHTS DEFENSE CENTER,

Plaintiff-Appellant,

v.

UNITED STATES PARK POLICE,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Columbia

## BRIEF FOR APPELLEES

*Of Counsel:*

ROBERT ANDERSON
 *Solicitor*
JONATHAN B. FLESHNER
 *Attorney*

*U.S. Department of the Interior*

BRIAN M. BOYNTON
 *Principal Deputy Assistant
 Attorney General*

MATTHEW M. GRAVES
 *United States Attorney*

MARK B. STERN
MAXWELL A. BALDI
 *Attorneys, Appellate Staff
 Civil Division, Room 7513
 U.S. Department of Justice
 950 Pennsylvania Avenue NW
 Washington, DC 20530
 (202) 532-0211*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Plaintiff-appellant is Human Rights Defense Center.  Defendant-appellee is the United States Park Police.

There were no amici or intervenors in district court.  The following amici have filed briefs in this Court:  Americans for Prosperity Foundation, National Police Accountability Project, Reporters Committee for Freedom of the Press, Advance Publications, Inc., Axios Media Inc., Californians Aware, Dow Jones & Company, Inc., The E.W. Scripps Company, First Amendment Coalition, Forbes Media LLC, The Foundation for Progress (d/b/a The Center for Investigative Reporting and Reveal), Gannett Co., Inc., Hearst Corporation, The Intercept Media, Inc., The Media Institute, National Freedom of Information Coalition, National Press Club Journalism Institute, The National Press Club, National Press Photographers Association, National Public Radio, Inc., The New York Times Company, News/Media Alliance, ProPublica, Inc., The Seattle Times Company, Society of Environmental Journalists, Society of Professional Journalists, Student

Press Law Center, TEGNA Inc., Tully Center for Free Speech, and The Washington Post.

**B.  Rulings Under Review**

Plaintiff appeals from the memorandum opinion and order issued by the district court (Chutkan, J.) on August 29, 2023.  The memorandum opinion has not been published but is available at 2023 WL 5561602.  There is no official citation for the order.

**C.  Related Cases**

This case has not previously been before this Court or any court other than the district court.  Counsel for defendant-appellee are unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Maxwell A. Baldi*
Maxwell A. Baldi

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. v

GLOSSARY ..................................................................................... x

STATEMENT OF JURISDICTION ................................................. 1

STATEMENT OF THE ISSUES ...................................................... 1

PERTINENT STATUTES AND REGULATIONS ......................... 2

STATEMENT OF THE CASE ......................................................... 2

    A.    Statutory Background ..................................................... 2

    B.    Factual Background and Procedural History ................. 4

SUMMARY OF ARGUMENT ........................................................ 8

STANDARD OF REVIEW ............................................................. 9

ARGUMENT ................................................................................. 10

I.    The district court properly held that the officers have a privacy interest in avoiding disclosure of their names and that disclosure would not reveal anything about the Park Police's conduct ................... 10

II.    The district court properly exercised its discretion to preclude dissemination of the identities of two claimants that were inadvertently disclosed when the Park Police produced documents to plaintiff. ............................................... 17

    A.    Courts have inherent authority to order a party to return inadvertently disclosed information ................................. 18

B.    The district court's order comports with the First Amendment..........................................................................24

CONCLUSION.................................................................................................28

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                       **Page(s)**

*ACLU v. DOD,*
  No. 09 Civ. 8071, 2012 WL 13075284 (S.D.N.Y. Mar. 20, 2012) ............ 19, 20

*Al-Haramain Islamic Found., Inc. v. Bush,*
  451 F. Supp. 2d 1215 (D. Or. 2006), *rev'd on other grounds,*
  507 F.3d 1190 (9th Cir. 2007) ........................................................................ 20

*Amiri v. National Sci. Found.,*
  664 F. Supp. 3d 1 (D.D.C. 2021) ..................................................................... 19

*August v. FBI,*
  328 F.3d 697 (D.C. Cir. 2003) ......................................................................... 16

*Bartnicki v. Vopper,*
  532 U.S. 514 (2001) .......................................................................................... 26

*Beck v. DOJ,*
  997 F.2d 1489 (D.C. Cir. 1993) ....................................................................... 15

*CBS, Inc. v. Davis,*
  510 U.S. 1315 (1994) ........................................................................................ 26

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ...................................................................................... 9–10

*Club v. EPA,*
  505 F. Supp. 3d 982 (N.D. Cal. 2020) ............................................................ 21

*Cobell v. Norton,*
  334 F.3d 1128 (D.C. Cir. 2003) ....................................................................... 23

*Degen v. United States,*
  517 U.S. 820 (1996) .......................................................................................... 22

*Department of Air Force v. Rose,*
  425 U.S. 352 (1976) .......................................................................................... 15

*Dietz v. Bouldin,*
  579 U.S. 40 (2016) ............................................................................................ 22

*Ecological Rights Found. V. FEMA*,
No. 15-cv-4068, 2017 WL 24859 (N.D. Cal. Jan. 3, 2017) ....................... 20–21

*EEOC v. Whiting-Turner Contracting Co.*,
No. 3:21-cv-753, 2022 WL 3221825 (M.D. Tenn. Aug. 9, 2022) ....................20

*Federal Labor Relations Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*,
884 F.2d 1446 (D.C. Cir. 1989) .......................................................... 11

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989) .................................................................. 25, 26

*Halpern v. FBI*,
181 F.3d 279 (2d Cir. 1999) ................................................................ 13

*Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*,
No. C 06-4234, 2008 WL 901539 (N.D. Cal. Mar. 31, 2008) ........................ 20

*Hunt v. FBI*,
972 F.2d 286 (9th Cir. 1992) ............................................................... 15

*Jordan v. DOJ*,
591 F.2d 753 (D.C. Cir. 1978).............................................................16

*Leopold v. DOJ*,
94 F.4th 33 (D.C. Cir. 2024) ............................................................... 17

*Lepelletier v. FDIC*,
164 F.3d 37 (D.C. Cir. 1999) ............................................................... 12

*Long v. IRS*,
693 F.2d 907 (9th Cir. 1982) ............................................................... 24

*Montgomery v. IRS*,
40 F.4th 702 (D.C. Cir. 2022) ............................................................... 9

*National Ass'n of Retired Fed. Emps. v. Horner*,
879 F.2d 873 (D.C. Cir. 1989) ............................................................... 3

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976) .................................................................. 26, 27

*New York Times Co. v. United States,*
403 U.S. 713 (1971) ........................................................ 26

*Niskanen Ctr. v. FERC,*
20 F.4th 787 (D.C. Cir. 2021) ............................. 11, 12, 16

*NLRB v. Robbins Tire & Rubber Co.,*
437 U.S. 214 (1978) ........................................................ 14

*100Reporters v. U.S. Dep't of State,*
602 F. Supp. 3d 41 (D.D.C. 2022) ............................... 20

*Piper v. DOJ,*
294 F. Supp. 2d 16 (D.D.C. 2003), *amended by*
428 F. Supp. 2d 1 (D.D.C. 2006) ................................. 20

*Potter v. District of Columbia,*
558 F.3d 542 (D.C. Cir. 2009) ...................................... 10

*Public Citizen Health Research Grp. v. FDA,*
953 F. Supp. 400 (D.D.C. 1996) ................................... 20

*Rafferty, In re,*
864 F.2d 151 (D.C. Cir. 1988) ................................. 24–25

*Reporters Comm. for Freedom of the Press v. FBI,*
3 F.4th 350 (D.C. Cir. 2021) ........................................ 15

*Rocky Mountain Wild, Inc. v. U.S. Forest Serv.,*
56 F.4th 913 (10th Cir. 2022) ...................................... 19

*Salmon v. Lang,*
57 F.4th 296 (1st Cir. 2022) ......................................... 10

*Schrecker v. DOJ,*
349 F.3d 657 (D.C. Cir. 2003) ...................................... 12

*Seattle Times Co. v. Rhinehart,*
467 U.S. 20 (1984) ............................................... 9, 24, 25

*Sheppard v. Maxwell,*
384 U.S. 333 (1966) ....................................................... 27

*Smith v. Daily Mail Publ'g Co.*,
    443 U.S. 97 (1979) ................................................................. 26

*Stern v. FBI*,
    737 F.2d 84 (D.C. Cir. 1984) ................................................ 13

*Trentadue v. Integrity Committee*,
    501 F.3d 1215 (10th Cir. 2007) ........................................... 13

*United States v. Alatishe*,
    616 F. Supp. 1406 (D.D.C. 1985) .......................................... 4

*Wilson v. FCC*,
    No. 21-cv-895, 2022 WL 4245485 (D.D.C. Sept. 15, 2022) ............. 8

*Wood v. FBI*,
    432 F.3d 78 (2d Cir. 2005) ................................................... 13

**Statutes:**

Act of Mar. 17, 1948,
    Pub. L. No. 80-447, §§ 1, 3, 62 Stat. 81, 81 ......................................3

Act of Aug. 18, 1970,
    Pub. L. No. 91-383 § 4, 84 Stat. 825, 827 ......................................3–4

Freedom of Information Act (FOIA):
    5 U.S.C. § 552(a)(3) .............................................................. 2
    5 U.S.C. § 552(a)(4)(B) ...................................................... 1, 2
    5 U.S.C. § 552(a)(6)(A)(i) ...................................................... 4
    5 U.S.C. § 552(b)(1)-(9) .......................................................... 2
    5 U.S.C. § 552(b)(6) ........................................................ 2, 10

FOIA Improvement Act of 2016,
    Pub. L. No. 114-185, 130 Stat. 538 (2016).............................3
       sec. 2(1)(D), § 552(a)(8)(A), 130 Stat. at 539
       (codified at 5 U.S.C. § 552(a)(8)(A)). ...........................3

28 U.S.C. § 1291 ................................................................... 1

28 U.S.C. § 1331 ................................................................... 1

28 U.S.C. § 2201(a) ................................................................. 1

28 U.S.C. § 2202 .................................................................... 1

54 U.S.C. § 102701(a)(1) .........................................................3

54 U.S.C. § 102701(a)(2) .........................................................3

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ....................................................... 1

Fed. R. Civ. P. 26(b)(5)(B) .................................................... 21

**Other Authority:**

41 Fed. Reg 44,876 (Oct. 13, 1976) ....................................... 3

## GLOSSARY

EEO                              Equal Employment Opportunity

FOIA                           Freedom of Information Act

## STATEMENT OF JURISDICTION

Plaintiff invoked the jurisdiction of the district court under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(B), and 28 U.S.C. §§ 1331, 2201(a) and 2202. [Dkt. 1 at 1]. The district court entered judgment in favor of defendant on August 29, 2023. [Dkt. 32 at 1]. Plaintiff filed a timely notice of appeal on October 16, 2023. [Dkt. 33 at 1]; *see* Fed. R. App. P. 4(a)(1)(B).

This court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiff filed a request under FOIA seeking records of claims and lawsuits brought against the U.S. Park Police. The Park Police produced most of the requested records but redacted the names of the claimants and officers involved with several tort and Equal Employment Opportunity (EEO) claims. The Park Police also sought to protect the names of two claimants, which it accidentally had failed to redact in its production to plaintiff, through an order prohibiting plaintiff from disseminating them.

The questions presented are:

**I.** Whether the district court correctly held that the names of Park Police officers involved in tort claims were protected by FOIA Exemption 6

which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

II. Whether the district court properly exercised its discretion to protect the names of two victims of alleged misconduct, which the Park Police inadvertently produced to plaintiff.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A. Statutory Background

1. FOIA requires federal agencies to make certain documents available to the public upon request. 5 U.S.C. § 552(a)(3). A requester dissatisfied with the agency's response may sue to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." *Id.* § 552(a)(4)(B).

FOIA "does not apply to matters" within nine listed exemptions. 5 U.S.C. § 552(b)(1)–(9). As relevant here, Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6). When "disclosure would compromise a substantial[ ] . . . privacy interest" and the

public interest does not outweigh that harm, Exemption 6 applies. *National Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

In 2016, Congress enacted the FOIA Improvement Act. Pub. L. No. 114-185, 130 Stat. 538 (2016). As relevant here, that law prevents agencies from withholding information unless they "reasonably foresee[] that disclosure would harm an interest protected by an exemption" or unless "disclosure is prohibited by law." *Id.* sec. 2(1)(D), § 552(a)(8)(A), 130 Stat. at 539 (codified at 5 U.S.C. § 552(a)(8)(A)).

**2.** The Park Police is a unit of the National Park Service within the Department of the Interior. The Park Police is charged with "maintaining law and order and protecting persons and property within areas of the National Park System." 41 Fed. Reg 44,876, 44,876 (Oct. 13, 1976); *see* 54 U.S.C. § 102701(a)(1). To enforce federal law within the National Park System, the Park Police may make arrests, serve warrants, and conduct certain investigations. 54 U.S.C. § 102701(a)(2).

The Park Police also has general law enforcement responsibility in the District of Columbia and on federal enclaves in 10 surrounding jurisdictions in Maryland and Virginia. *See* Act of Mar. 17, 1948, Pub. L. No. 80-447, §§ 1, 3, 62 Stat. 81, 81; Act of Aug. 18, 1970, Pub. L. No. 91-383 § 4, 84 Stat. 825,

827; *see generally United States v. Alatishe*, 616 F. Supp. 1406, 1409–10 (D.D.C. 1985).  And the Park Police maintains field offices in San Francisco to protect the Presidio and Golden Gate Bridge and in New York to protect the Statue of Liberty and Ellis Island.

### B.  Factual Background and Procedural History

**1.**  Plaintiff filed a request under FOIA seeking records of all claims or lawsuits brought against the Park Police between 2010 and 2018.  [Dkt. 1 at 4].  When the Park Police did not process the request within 20 business days, *see* 5 U.S.C. § 552(a)(6)(A)(i), plaintiff sued.  [Dkt. 1 at 5].  After the Park Police filed its answer, the district court ordered the parties to meet and confer.  [Minute Order (Sept. 5, 2019)].  In response, plaintiff agreed to narrow its request, and the Park Police promptly turned over all responsive, non-exempt records.  [Dkt. 11 at 1–2; Dkt. 12 at 1].

The Park Police produced 14 sets of documents related to Equal Employment Opportunity (EEO) claims, which largely consisted of letters accepting the claims for processing and settlement agreements.  *See* [Dkt. 23-8 at 1–14].

The Park Police also produced three sets of documents related to tort claims.

- The first claim alleged that a Park Police officer used excessive force at the Lincoln Memorial. [Dkt. 23-8 at 13–14; Dkt. 31 at 4]. The Park Police paid a $17,500 settlement. [Dkt. 31 at 4]. The documents included two memoranda describing the alleged facts of the incident, the claimant's injury, and recommendations for settlement; a judgment fund voucher; and a worksheet including the claimant's Standard Form 95 claim. *See* [Dkt. 23-8 at 13–14].

- The second claim alleged that a Park Police detective injured the claimain while attempting to arrest another person. *See* [Dkt. 23-8 at 14–15; Dkt. 31 at 4]. The Park Police paid a $13,500 settlement. [Dkt. 31 at 4]. The documents included a memorandum describing the alleged facts of the incident, the claimant's injury, and recommendations for settlement; a judgment fund voucher; and a cover letter for the voucher. *See* [Dkt. 23-8 at 14].

- The third claim alleged that a Park Police detective improperly arrested an attendee of a public meeting. [Dkt. 23-8 at 15; Dkt. 31 at 4]. The Park Police paid a $15,000 settlement. [Dkt. 31 at 4]. The documents included a cover letter for a judgment fund voucher; a claims worksheet; and the claimant's Standard Form 95 claim. *See* [Dkt. 23-8 at 15].

Because the Park Police settled the claims before any litigation commenced, no court has ever had the chance to evaluate any of the claimants' allegations. *See* [Dkt. 23-8 at 13–15].

The Park Police redacted exempt information from both sets of records, including the names of some claimants and alleged tortfeasors under Exemption 6. [Dkt. 18 at 3–4]. In producing the records, the Park Police inadvertently failed to redact the single appearance of the name of an EEO claimant in one document and three appearances of the name of a tort

claimant in another document.  *See* [Dkt. 31 at 11; Dkt. 23-3 at 7].  One

instance of the tort claimant's surname also appears in the Park Police's

*Vaughn* index.  [Dkt. 23-8 at 13.]  Plaintiff refused to return the documents

containing the names but agreed not to disseminate them until the district

court could address the issue.  [Dkt. 18 at 3].

Plaintiff challenged the Park Police's redactions of the identities of the

claimants and police officers involved in three tort claims.  [Dkt. 31 at 4].  The

Park Police explained that releasing the names of the claimants would

"constitute an unwarranted invasion of personal privacy due to the nature

of" their claims and that the claimants' privacy interests outweighed any

public interest in their claims.  [Dkt. 23-8 at 13–15].  It also explained that

releasing the names of the "low-ranking" officers involved in the incidents

would harm the officers' privacy interests.  [Dkt. 23-8 at 13–15].

**2.**  On cross motions for summary judgment, the district court ruled in

favor of the Park Police.  [Dkt. 31 at 12].

The district court held that the claimants and police officers had a

substantial privacy interest in protecting their names from public disclosure.

It found that disclosing the claimants' names might lead to harm or

harassment and that "disclosing [the officers'] names may lead the public to

infer that the officers engaged in wrongdoing, which could result in retaliation, embarrassment, harassment, and undue public attention." [Dkt. 31 at 9]. The district court also held that the public had limited interest in learning the names of the officers because "disclosing the names would reveal little or nothing about Park Police's conduct and would not assist the public in better understanding the workings of the agency." [Dkt. 31 at 10]. The district court noted that the Park Police had already "disclosed the amount of each settlement, the relative low rank of the officers, and that the officers are still employed with the agency." [Dkt. 31 at 11]. Because releasing the names "would reveal little more about Park Police's conduct than what has already been disclosed and would not assist the public in better understanding the workings of the agency," the district court concluded that the officers' privacy interests outweighed any public interest in disclosure. [Dkt. 31 at 11].

The district court also addressed the inadvertent disclosure of the names of two claimants. [Dkt. 31 at 12]. Relying on the inherent power "'necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,'" the district court ordered plaintiff "not to disclose, disseminate, or make use of the claimants' names."

[Dkt. 31 at 11–12] (quoting *Wilson v. FCC*, No. 21-cv-895, 2022 WL 4245485, at *5 (D.D.C. Sept. 15, 2022)).  The district court concluded that this relief was appropriate because the claimants' names were properly protected by Exemption 6 and there was "no discernible public interest in having the names of private citizens disclosed."  [Dkt. 31 at 12].

## SUMMARY OF ARGUMENT

**I.**  Plaintiff seeks records of claims and lawsuits brought against the Park Police.  The Park Police produced most of the requested records but redacted the names of the claimants and officers involved.  The district court correctly concluded that the identities of both the claimants and the officers were protected under FOIA Exemption 6.  The district court recognized that the claimants and the law enforcement officers have a significant privacy interest in avoiding disclosure of their names.  And the district court further explained that disclosing their names would not provide the public with any meaningful information about how the Park Police performs its duties and that plaintiff failed to show that disclosure would be in the public interest.  These conclusions are correct.

**II.  A.**  Plaintiff does not challenge the district court's holding that the Park Police properly withheld the names of tort claimants.  And the district

court acted well within its discretion in ordering plaintiff not to disseminate the identities of two claimants that were inadvertently disclosed. As part of the court-ordered-and-supervised meet-and-confer process, the parties agreed that the government would disclose a set of documents to plaintiff. In producing those documents, the government inadvertently failed to redact one instance of the name of one claimant and three instances of the name of a second claimant. The court was not powerless to avoid an unwarranted invasion of the privacy of the two claimants.

**B.** The order is also fully consistent with the First Amendment. A protective order governing civil discovery is "not the kind of classic prior restraint that requires exacting First Amendment scrutiny," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), and that is equally the case with respect to an order barring further dissemination of material received in a FOIA case.

## STANDARD OF REVIEW

Courts review de novo a district court's grant of summary judgment. *Montgomery v. IRS*, 40 F.4th 702, 709 (D.C. Cir. 2022).

Courts review for abuse of discretion a district court's exercise of its inherent authority to manage proceedings. *See Chambers v. NASCO, Inc.*,

501 U.S. 32, 55 (1991) (inherent authority to impose sanctions); *Potter v. District of Columbia*, 558 F.3d 542, 546 (D.C. Cir. 2009) (case management decisions); *cf. Salmon v. Lang*, 57 F.4th 296, 326–27 (1st Cir. 2022) (rulings under Federal Rule of Evidence 502 reviewed for abuse of discretion).

## ARGUMENT

I. **The district court properly held that the officers have a privacy interest in avoiding disclosure of their names and that disclosure would not reveal anything about the Park Police's conduct.**

**1.** FOIA Exemption 6 permits an agency to withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The district court found, and plaintiff does not dispute, that the names of the officers and the tort claimants were maintained in the type of file protected by Exemption 6, *see* [Dkt. 31 at 8], so the only question is whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy," [Dkt. 31 at 6] (quotation marks omitted). Because plaintiff does not challenge the redaction of the names of the tort claimants, the discussion regarding the applicability of Exemption 6 addresses only the names of the officers.

To decide whether disclosure is proper, "a court must first determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest. If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure." *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021) (cleaned up) (finding privacy interest in individuals' names and addresses). Finding a substantial privacy interest is a "low bar." *Id.* And this Court has "consistently found that the privacy interest in an individual's name . . . surmounts this low bar." *Id.* (collecting cases).[1] Disclosure of an individual's name implicates a significant privacy interest "whenever the information sought [i]s of a type that might invite unwanted intrusions, even

---

[1] This Court cited as examples: "*Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (names and addresses of individuals associated with abortion medication); *National Ass['n] of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002) (parcel numbers where pygmy owls were spotted); *Painting & Drywall Work Pres[.] Fund, Inc. v. Department of Hous[.] & Urban Dev[.]*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) (names and addresses of construction contractors); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (names and addresses of employees eligible to vote); *SafeCard Serv[s.], Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (names and addresses of third parties mentioned in witness interviews); *[Federal Labor Relations Auth.] v. [U.S.] Dep['t] of Treasury[, Fin. Mgmt. Serv.]*, 884 F.2d 1446, 1452 (D.C. Cir. 1989) (names and addresses of agency employees); [*National Ass'n of Retired Fed. Emps. v.*] *Horner*, 879 F.2d [873,] 878 [(D.C. Cir. 1989)] (names and addresses of retired employees)." *Niskanen Ctr.*, 20 F.4th at 791.

absent evidence that such intrusions ha[ve] occurred in the past." *Id.* That is the case for government employees as well as private persons. *See, e.g.*, *Federal Labor Relations Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*, 884 F.2d 1446, 1452 (D.C. Cir. 1989).

In assessing the countervailing interest in disclosure, "the only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (cleaned up). As this Court has stressed, "the balancing inquiry focuses 'not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld.'" *Niskanen Ctr.*, 20 F.4th at 791 (quoting *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003)).

Courts have recognized that disclosing the identities of lower-level employees, such as the officer, detective, and sergeants involved in this case, will often give little insight into the operations of the agency. This Court observed in *Stern v. FBI*, "that the level of responsibility held by a federal employee, as well as the activity for which such an employee has been

censured, are appropriate considerations for determining the extent of the public's interest in knowing the identity of that censured employee" and that "these and other factors tilt the balance *against* disclosure of the names of . . . lower-level employees" under Exemption 7(C).  737 F.2d 84, 92 (D.C. Cir. 1984).  Similarly, the Tenth Circuit in *Trentadue v. Integrity Committee*, noted that each of the individuals whose names had been redacted pursuant to Exemption 6 "was a low-level employee who committed serious acts of misconduct."  501 F.3d 1215, 1234 (10th Cir. 2007).  The court explained that "[t]he public interest in learning how law enforcement agencies dealt with these individuals [accused of misconduct] is very high, and *that information* must be released.  Disclosing the *names* of the employees, however, would shed little light on the operation of government."  *Id.* (emphases added) Accordingly, "[i]dentifying information with respect to these individuals may be properly withheld under Exemption 6."  *Id.*; *see also Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005) (upholding application of exemption and observing that "[s]ignificantly, the employees here are of relatively low rank and the identities of the decision-makers have already been disclosed"); *Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir. 1999) (holding that "the public interest in identifying law enforcement personnel is small since that information sheds

little light if any on the conduct and administration of FBI investigations")
(Exemption 7(C)).

The district court applied these principles in concluding that the officers' privacy interest far outweighed any public interest in disclosure. The district court explained that "most of the information [plaintiff] believes will be revealed by disclosing the officers' names has already been disclosed," noting, for example, that the "Park Police disclosed the amount of each settlement, the relative low rank of the officers, and that the officers are still employed with the agency." [Dkt. 31 at 11]. The court found that "[t]his information on its own, without the officers' names, fulfills the basic purpose of FOIA, which is to 'ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" [Dkt. 31 at 11] (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

**2.** Plaintiff offers only one argument for why the public has an interest in the officers' names: that disclosure would reveal whether any of the officers are serial tortfeasors and how much money has been spent to resolve claims involving them. [Dkt. 24 at 7]. Plaintiff has provided no reason to believe that disclosure of names related to three individual incidents will

shed light on systemic misconduct. *See Hunt v. FBI*, 972 F.2d 286, 289 (9th Cir. 1992) (disclosure of single agent's name would not reveal whether misconduct is common). Taken on their own, the names will not serve the purpose plaintiff advanced in district court.

To the extent plaintiff now suggests that disclosure of the names would provide information about the Park Police's disciplinary process, it has forfeited that claim. *Compare* [Dkt. 24 at 6–7], *with* Appellant's Br. 25–26. And, in any event, even if plaintiff's belated assertion could justify the release of anonymized disciplinary records, it would not justify the release of the names of low-ranking officers. *See Department of Air Force v. Rose*, 425 U.S. 352, 381 (1976) (shielding names of Air Force cadets involved in misconduct); *Beck v. DOJ*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (shielding names of law-enforcement agents involved in misconduct).

**3.** The agency's *Vaughn* index and declarations were filed before this Court's decision in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), which definitively construed for the first time the FOIA Improvement Act's requirement that in withholding information an agency must explain how disclosure would harm an interest protected by a FOIA exemption. Although the index and the government's declarations

did not specifically analyze the nature of the privacy interest at issue, the district court correctly recognized that releasing the names of the officers "may lead the public to infer that the officers engaged in wrongdoing, which could result in retaliation, embarrassment, harassment, and undue public attention." [Dkt. 31 at 9]. That risk establishes that the officers have a substantial interest in avoiding the disclosure of their names. *See Niskanen Ctr.*, 20 F.4th at 791. Indeed, plaintiff itself submitted its FOIA request "[a]s part of its ongoing reporting." [Dkt. 24 at 2]. If plaintiff or other members of the news media publicized the names of the officers, it would undoubtedly subject them to scrutiny and intrusions on their privacy. No more explanation is required to sustain the district court's ruling.

If, however, this Court were to determine that the agency's *Vaughn* index is inadequate, remand and not reversal would be appropriate. When an "an interim development in applicable legal doctrine" excuses the government's failure to raise a FOIA defense in the first instance in the district court, this Court has discretion to remand for further consideration. *See, e.g., August v. FBI*, 328 F.3d 697, 700 (D.C. Cir. 2003) (quoting *Jordan v. DOJ*, 591 F.2d 753, 780 (D.C. Cir. 1978)). If this Court concludes that the Park Police's justification is not sufficiently detailed, it should remand to

allow the agency an opportunity to supplement its declaration. This Court adopted that course in *Leopold v. DOJ*, remanding "to the district court to determine whether the [agency] can meet its burden to show that release of any portion of the [withheld document] could foreseeably harm" a protected interest. 94 F.4th 33, 35 (D.C. Cir. 2024). The same disposition would be appropriate here.

## II. The district court properly exercised its discretion to preclude dissemination of the identities of two claimants, which were inadvertently disclosed when the Park Police produced documents to plaintiff.

Plaintiff does not challenge the district court's holding that the names of the claimants are protected by Exemption 6, and there is no basis for its insistence that the district court was powerless to restrain the dissemination of their identities. The district court properly exercised its inherent powers in ordering plaintiff "not to disclose, disseminate, or make use of the claimants' names." [Dkt. 31 at 12]. And it acted well within its discretion in concluding that the claimants' uncontested privacy rights should not be compromised because the government made a mistake in attempting to comply with its obligations under the meet-and-confer process that the district court ordered.

**A.    Courts have inherent authority to order a party to return information inadvertently disclosed during litigation.**

After the district court ordered the parties to meet-and-confer, plaintiff agreed to narrow the scope of its request and the Park Police promptly produced the covered records.  [Dkt. 31 at 2–3.]  In doing so, the Park Police inadvertently failed to redact the names of two claimants—including the records in which it inadvertently failed to redact the claimants' names.  For the EEO claimant, the Park Police redacted 39 instances of the claimant's name in a 16-page production but missed one instance in a section header in one document.  For the tort claimant, the Park Police redacted 33 instances of the claimant's name in a 17-page production; it missed one instance in the text of one document and two instances in a header of the same document. *See* [Dkt. 31 at 3].

**1.**  There is no general rule that requires return of documents inadvertently disclosed under FOIA.  It is equally the case, however, that a court is not powerless to ameliorate the impact of inadvertent disclosure, particularly when further disclosure would harm the public interest or the interests of third parties.  The court's corrective authority here is also particularly clear because the parties were engaged in implementing the

district court's meet-and-confer procedures. As the District Court for the Southern District of New York observed in requiring plaintiffs to return inadvertently disclosed documents subject to Exemption 1, having asked for judicial oversight and management of the government's production of records, the "[p]laintiffs may not now claim the [c]ourt lacks the authority to supervise the very process that they themselves set in motion." *ACLU v. DOD*, No. 09 Civ. 8071, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012)).

The district court's order breaks no new ground. In the only court of appeals decision to address the issue, the Tenth Circuit held that district courts may protect inadvertently disclosed FOIA documents, rejecting the argument that a court could "afford no confidentiality to documents mistakenly disclosed" even after the documents at issue in that case had been posted online. *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 930 (10th Cir. 2022). Because the documents were exempt from disclosure, the district court had authority to correct the mistaken disclosure. *Id.* at 930–31.

District courts have reached the same conclusion. That is true for district courts in this Circuit. *See, e.g.*, *Amiri v. National Sci. Found.*, 664 F. Supp. 3d 1, 22–23 (D.D.C. 2021) (ordering that inadvertently disclosed

documents be permanently sealed); *Public Citizen Health Research Grp. v. FDA*, 953 F. Supp. 400, 404–06 (D.D.C. 1996) (requiring that documents be sealed pending determination of whether the documents were subject to disclosure); *Piper v. DOJ*, 294 F. Supp. 2d 16, 27 n.5 (D.D.C. 2003) (ordering return of documents), *amended by* 428 F. Supp. 2d 1 (D.D.C. 2006). And that is also true for district courts across the Nation. *See, e.g.*, *Al-Haramain Islamic Found., Inc. v. Bush*, 451 F. Supp. 2d 1215, 1229 (D. Or. 2006) (ordering return of documents), *rev'd on other grounds*, 507 F.3d 1190 (9th Cir. 2007); *Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*, No. C 06-4234, 2008 WL 901539, at *9 (N.D. Cal. Mar. 31, 2008) (same); *ACLU*, 2012 WL 13075284, at *5 (same); *EEOC v. Whiting-Turner Contracting Co.*, No. 3:21-cv-753, 2022 WL 3221825, at *7 (M.D. Tenn. Aug. 9, 2022) (same).

Even district courts that have denied government efforts to protect inadvertently disclosed documents have not foreclosed the possibility of a protective order in an appropriate case. In *100Reporters v. U.S. Department of State*, for example, the court denied a requested protective order without prejudice, requiring the government to make a more robust showing. 602 F. Supp. 3d 41, 84 (D.D.C. 2022). Similarly, the court in *Ecological Rights Foundation. v. FEMA* concluded that it had the power to protect documents

20

but denied a motion for protective order because the documents were subject to disclosure under FOIA.  *See* No. 15-cv-4068, 2017 WL 24859, at *2, *8 (N.D. Cal. Jan. 3, 2017); *see also Club v. EPA*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020) ("While such an order might be a valid and necessary exercise of inherent authority in an appropriate case, the circumstances of *this* case do not warrant use of that power to claw back the documents the EPA produced[ ] . . . .").

Although the production here is not governed by the requirement that discovery recipients in civil litigation return or destroy and refrain from using inadvertently disclosed privileged information, *see* Fed. R. Civ. P. 26(b)(5)(B), a court may properly look to that rule in assessing the reasonableness of its actions in dealing with inadvertent disclosures in FOIA litigation.  The current requirements regarding the return of inadvertently disclosed information reflect the difficulties inherent in reviewing "the volume of electronically stored information and the difficulty in ensuring that all information to be produced has in fact been reviewed."  Fed. R. Civ. P. 26(b)(5) advisory committee's note to 2006 amendment.  A court may address the same problems inherent in responding to FOIA requests.  As in civil discovery, an agency responding to a FOIA request must often review vast

quantities of material, disclose non-exempt documents in their entirety or as redacted, and prepare an index describing why it has withheld documents. Just as the potential of a retroactive protective order facilitates more efficient discovery by mitigating the risk of inadvertent production, the potential of a FOIA protective order allows an agency to review and disclose documents more quickly.

**2.**  Plaintiff never explains why it should be allowed to disseminate names that it should never have received, and its arguments underscore its misunderstanding of the principles cabining the exercise of a court's inherent authority.

Plaintiff correctly notes that a court's inherent authority is not unlimited.  The Supreme Court has explained that "the exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice," and that "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute."  *Dietz v. Bouldin*, 579 U.S. 40, 45–46 (2016) (quoting *Degen v. United States*, 517 U.S. 820, 823–24 (1996)).  The order here meets these standards.

An order restraining dissemination of names provided inadvertently in disclosures made in the course of litigation, here in connection with the district court's meet-and-confer process, is a reasonable response to the problem presented. Plaintiff identifies no case finding that a district court abused its discretion in circumstances resembling those in this case. Instead, disregarding the modest nature of the district court's order, plaintiff mistakenly seeks to rely on abuses of authority such as the novel assertions of power reversed by this Court in *Cobell v. Norton*, 334 F.3d 1128, 1141 (D.C. Cir. 2003).[2]

Plaintiff repeatedly stresses that FOIA does not speak to a court's authority in remedying an inadvertent disclosure. But an absence of explicit authority is a feature common to any case involving an exercise of inherent authority: a court's invocation of inherent authority always fills in gaps left by federal statutes or rules. The statute does not preclude a court from

---

[2] This Court in *Cobell* rejected the assertion that the district court had authority "to invest [a] Court Monitor with wide-ranging extrajudicial duties over the Government's objection." 334 F.3d at . 1142. The Court noted that "[t]he Monitor's portfolio was truly extraordinary; instead of resolving disputes brought to him by the parties, he became something like a party himself. The Monitor was charged with an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system." *Id.*

fashioning an order to deal with problems that arise in the course of litigation.

Without apparent irony, plaintiff asserts that the district court's order disserves the purposes of FOIA because "under the FOIA, courts have the 'responsibility of ensuring the fullest responsible disclosure.'" Appellant's Br. 39 (quoting *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982)). It should go without saying that "responsible disclosure" does not encompass inadvertent disclosure of the names of individuals protected by Exemption 6.

## B. The district court's order comports with the First Amendment.

**1.** "[F]reedom of speech does not comprehend the right to speak on any subject at any time." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984) (cleaned up) (holding that civil discovery protective order issued for good cause satisfies First Amendment). Nor does freedom of speech "carry with it the unrestrained right to gather information." *Id.* at 32 (quotation marks omitted).

The key question in evaluating a protective order preventing dissemination of information is whether the information was obtained as part of the litigation. *See Seattle Times*, 467 U.S. at 34; *see also In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988) (holding that court may restrict

information a party obtained through discovery but not information the party obtained independently of any judicial process).  Information that a litigant gains access to only as a result of litigation "does not raise the same specter of government censorship that such control might suggest in other situations." *Seattle Times*, 467 U.S. at 32.  Such an order "is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Id.* at 33.

As the district court explained, plaintiff had no preexisting right to the claimants' names because the names were not subject to disclosure under FOIA.  [Dkt. 31 at 12].  Instead, as might be the case for a litigant in civil discovery, plaintiff obtained the names at issue as a result of inadvertent disclosures that occurred during a court-supervised process.  The district court's order, issued for good cause, thus satisfied the First Amendment. *See Seattle Times*, 467 U.S. at 37

**2.**  Plaintiff and their *amici* err in focusing on cases in which a party obtains information from a non-judicial source.  Plaintiff primarily relies (at 44–45) on *Florida Star v. B.J.F.*, a case in which a newspaper lawfully obtained information from a public record.  491 U.S. 524, 536 (1989).  The Supreme Court appropriately held that a court could not restrict the

newspaper's dissemination of that public information. *Id.* at 541. *Amicus* Reporters Committee similarly points (at 5–6, 8–10) to cases in which a party obtained information from non-judicial sources. *See New York Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam) (Pentagon Papers leaked by Daniel Ellsberg); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) (names of juveniles obtained from reporter interviews with eyewitnesses); *CBS, Inc. v. Davis*, 510 U.S. 1315 (1994) (Blackmun, J., in chambers) (footage obtained by hidden camera); *Bartnicki v. Vopper*, 532 U.S. 514 (2001) (names obtained by wiretap). That a court may not restrict a party's use of a document obtained outside of litigation in no way suggests that court lacks such authority with regard to inadvertent disclosures in litigation.

No more applicable are cases involving a right of access to proceedings such as *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), relied on by Reporters Committee (at 5–8). In *Nebraska Press Ass'n*, a state trial court precluded the press from reporting "any testimony given or evidence adduced" from public pretrial proceedings to prevent prejudicial publicity. *Id.* at 542 (quotation marks omitted). The Supreme Court held that the order violated the First Amendment, in part because the order transgressed the "settled principle[]" that "'nothing . . . proscribes the press from

reporting events that transpire in the courtroom.'" *Id.* at 568 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362–63 (1966)).  Where material is not subject to a First Amendment right of access—or even a common law right of access—as is the case with documents exempt from FOIA, the presumption underlying *Nebraska Press Ass'n* does not apply.

Plaintiff's misunderstanding of relevant principles is encapsulated in its contention that analysis here should be no different than would be the case if the Park Police had inadvertently disclosed the claimants' names prior to this litigation.  Plaintiff fails to recognize the crucial difference between information obtained outside the litigation context and information, like the names of the claimants here, obtained as part of a judicially supervised process.  The First Amendment does not prevent a court from protecting the latter from improper dissemination.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

*Of Counsel:*

ROBERT ANDERSON
*Solicitor*

MATTHEW M. GRAVES
*United States Attorney*

JONATHAN B. FLESHNER
*Attorney*

MARK B. STERN

*U.S. Department of the Interior*

/s/ *Maxwell A. Baldi*

MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*
*maxwell.baldi@usdoj.gov*

May 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,803 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Century Expanded BT 14-point font, a proportionally spaced typeface.

/s/ *Maxwell A. Baldi*
Maxwell A. Baldi

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 552 ...........................................................................A1

**5 U.S.C. § 552**

## § 552. Public information; agency rules, opinions, orders, records, and proceedings

(a) Each agency shall make available to the public information as follows:

. . .

(3)(A) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

. . .

(8)(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law[.] . . .

(b) This section does not apply to matters that are—

. . .

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]

. . .

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.