NOT YET SCHEUDLED FOR ORAL ARGUMENT

No. 23-5236

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

HUMAN RIGHTS DEFENSE CENTER,

         Plaintiff–Appellant,

v.

UNITED STATES PARK POLICE,

         Defendant–Appellee.

On Appeal from a Final Judgment of the United States
District Court for the District of the District of Columbia
Case No. 19-cv-1502 Hon. Tanya S. Chutkan

**REPLY BRIEF**

Deborah M. Golden
D.C. Bar # 470-578
THE LAW OFFICE OF
 DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE
Second Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

         *Counsel for Appellant*

June 28, 2024

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ................................................................................. iii
Summary of Argument ............................................................................. 1
Argument .................................................................................................. 3
I. The Government's apparent concession dooms their argument against release of the officials' names ............................. 3
II. The Government's arguments for claw back are similarly unavailing. ..................................................................................... 8
Conclusion .............................................................................................. 12
Certificates ............................................................................................. 1a

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*August v. FBI*,
  328 F.3d 697 (D.C. Cir. 2003) .......................................................... 4, 6
*Center for Investigative Reporting v. United States Customs & Border Prot.*,
  436 F.Supp.3d 90 (D.D.C. 2019) ......................................................... 5
*Chambers v. NASCO*,
  501 U.S. 32 (1991) ........................................................................... 11
*Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Justice ("CREW")*,
  45 F.4th 963 (D.C. Cir. 2022) ............................................................. 3
*Cobell v. Norton*,
  334 F.3d 1128 (D.C. Cir. 2003) ......................................................... 11
*Cottone v. Reno*,
  193 F.3d 550 (D.C. Cir. 1999) ............................................................. 9
*In re Rafferty*,
  864 F.2d 151 (D.C. Cir. 1988) ..................................................... 11, 12
*Jordan v. United States Dep't of Justice*,
  591 F.2d 753 (D.C. 1978) ................................................................... 6
*King v. DOJ*,
  830 F.2d 210 (D.C. Cir. 1987) ............................................................. 3
*Leopold v. DOJ*,
  94 F.4th 33 (D.C. Cir. 2024) ............................................................... 6
*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) ............................................................... 7
*Machado Amadis v. U.S. Dep't of State*,
  971 F.3d 364 (D.C. Cir. 2020) ............................................................. 5
*Miner v. Atlass*,
  363 U.S. 641 (1960) ......................................................................... 11
*Nebraska Press Assn. v. Stuart*,
  427 U.S. 539 (1976) ......................................................................... 12
*Prison Legal News v. Samuels*,
  787 F.3d 1142 (D.C. Cir. 2015) ........................................................... 7

*Reporters Committee for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) .......................................... 4, 5
*Rocky Mountain Wild, Inc. v. United States Forest Serv.*,
   56 F.4th 913 (10th Cir. 2022) ......................................... 8, 9
*Rosenberg v. Department of Defense (Rosenberg I)*,
   342 F.Supp.3d 62 (D.D.C. 2018) ........................................... 5
*Rosenberg v. Department of Defense (Rosenberg II)*,
   442 F.Supp.3d 240 (D.D.C. 2020) .......................................... 5
*Sierra Club v. United States Environmental Protection Agency*,
   505 F.Supp.3d 982 (N.D. Cal. 2020) ...................................... 11
*Stern v. FBI*,
   737 F.2d 84 (D.C. Cir. 1984) ............................................. 7
*The Florida Star v. B.J.F.*,
   491 U.S. 524 (1989) ..................................................... 10
*Trentadue v. Integrity Comm'n.*,
   501 F.3d 1215 (10th Cir. 2007) ........................................... 7
*Wood v. FBI*,
   432 F.3d 78 (2d Cir. 2005) ............................................... 7

**Statutes**
28 U.S.C. § 2106 ............................................................ 6

**Rules**
Fed. R. Civ. P. 26(b)(5)(B) ................................................. 9

# SUMMARY OF ARGUMENT

On the first issue—whether Appellant is entitled to the names of Park Police officials involved in settled tort claims—the Government has buried a concession in its Response Brief that should resolve this case. The Government seemingly concedes that the declarations it submitted to substantiate the possible harm that officers would suffer from possible release of their names are deficient, though it suggests that "remand and not reversal would be appropriate," Response Br. at 16, because only intervening authority rendered the declarations insufficient. *See* Response Br. at 15-17. That request relies upon this Court's discretion to excuse the Government's failure at the District Court, and cases involving unforeseeable and intervening doctrinal changes. But here, the case it cites—and the authority that case cites—shows that the requirement to state foreseeable harm from release is not an intervening doctrinal change. And in any event, even in its Response Brief to this Court, the Government's mention of supposed risks to officers of release does not amount to more than sheer speculation. For those and other reasons, this Court should order release of the officers' names.

On the second issue—whether the Government can claw back inadvertently released records—the Government invites this Court to make the same wrongful conflation of civil discovery with release under the FOIA that the District Court did. The Government acknowledges that civil discovery rules do not apply in this context, but it urges the Court to

apply them anyway. It does so despite the clear prior restraint problem, and it cites cases allowing claw back that do not engage with the First Amendment issues at all. This Court should reject claw back, too.

For the reasons in this Reply Brief and those in the Opening Brief, the Court should reverse.

# ARGUMENT

## I. The Government's apparent concession dooms their argument against release of the officials' names.

Toward the end of its first argument section, the Government admits that "the government's declarations did not specifically analyze the nature of the privacy interest at issue" in the potential release of the individual officers' names. Response Br. at 15-16. As Appellant explained in its Opening Brief, the failure to assert a concrete, non-speculative harm that might come from release dooms their argument against release. *See* Opening Br. at 22; *see also Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Justice ("CREW")*, 45 F.4th 963, 977 (D.C. Cir. 2022) (quoting *King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987)). In asking the Court to excuse a deficiency that should be fatal, the Government asks the Court to exercise its "discretion to remand for further consideration" in the District Court rather than reversing outright. Response Br. at 16. It asks, in short, for a do-over; to have a second bite at the apple by getting leave to "supplement its declaration" on remand. *Id*. at 17. But the Court should decline to exercise that discretion for two key reasons. The first is that the Government's excuse for the deficiency is flatly wrong, and its case citations provide it no help. And the second is that this Court uses that discretion only sparingly regardless, and it should not use it here.

First, the Government's stated basis for why the Court should exercise discretion to remand instead of reversing is simply wrong. In explaining why the declarations it submitted to the District Court lack any discussion of foreseeable or concrete harm from the release of officers' names, the Government explains that it could not have been expected to meet the standard set out by the FOIA because it took "an interim development in legal doctrine" to put it on notice of its responsibilities. Response Br. at 16 (citing *August v. FBI*, 328 F.3d 697, 700 (D.C. Cir. 2003). Specifically, it argues that *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), amounts to just such an interim development that should excuse the deficient declarations.

But *Reporters Committee* did not change the Government's responsibilities in any relevant way, and so it does not amount to an intervening development. To be such, intervening authority must be more than "[t]he simple resolution of other litigation." *August*, 328 F.3d at 700. *Reporters Committee* did not announce a new rule barring unbounded speculation or declarations lacking specificity about harm; it cited and discussed a statute passed in 2016. 3 F.4th at 369. In *Reporters Committee*, this Court actually called it "apparent from the statutory text alone that the government's successful invocation of a FOIA exemption cannot justify its withholding of exempt material without a more particularized inquiry into what sort of foreseeable harm would result from the material's release." *Id.* at 369 n.2 (citing 5 U.S.C. §

4

552(a)(8)(A)(i)(I)). Even were the straightforward statutory text not enough, *Reporters Committee* cited a litany of cases from both the District of the District of Columbia and this Court that predated the 2021 declarations at issue here and unanimously undertook the same straightforward reading—the only plausible reading—of the statute. *See id.* at 369. Most notably, it cited an opinion from this Court that predates the 2021 declarations, which had already endorsed an appellant's argument that "under FOIA's foreseeable-harm provision, [the Government] cannot simply rely on 'generalized' assertions." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020). District Courts were unanimous, too. *Reporters Committee*, 3 F.4th at 369-370 (citing *Amadis*, 971 F.3d at 371; *Rosenberg v. Department of Defense (Rosenberg I),* 342 F.Supp.3d 62, 78 (D.D.C. 2018); *Center for Investigative Reporting v. United States Customs & Border Prot.*, 436 F.Supp.3d 90, 106 (D.D.C. 2019); and *Rosenberg v. Department of Defense (Rosenberg II),* 442 F.Supp.3d 240, 259 (D.D.C. 2020)). And the U.S. Attorney's Office in the District of Columbia handled each of those cases, as it did this one below. The Government's implication that it did not know in 2021 that it needed to comply with the plain statutory text of FOIA's 2016 amendments, confirmed by numerous pre-*Reporters Committee* decisions, is simply implausible.

Second, this Court should reject the Government's request for it to exercise its discretion here to remand rather than reverse, regardless. In

support of its request for remand, the Government cites *August*, 328 F.3d at 700, and *Leopold v. DOJ*, 94 F.4th 33, 35 (D.C. Cir. 2024). Response Br. at 17. But *August* itself explains that remand is appropriate only in "some 'extraordinary' circumstances in which courts of appeals may exercise their authority under 28 U.S.C. § 2106 to require [] further proceedings" in the district court. *August*, 328 F.3d at 700. *August* also discussed "the considerations courts should take into account in deciding whether to exercise their section 2106 discretion." *Id*. (citing *Jordan v. United States Dep't of Justice*, 591 F.2d 753 (D.C. 1978)). None of those circumstances—"substantial change in the factual context of the case," "an interim development in applicable legal doctrine," or "pure mistake" on the part of the Government—are present here. Indeed, the *August* Court noted that the Government there had "provided clear evidence that wholesale disclosure of the requested information"—notably, more than names—"would endanger" the subjects of the information. *August*, 328 F.3d at 700-01. Here, by contrast, even on appeal, the Government merely asserts that release of the names "would undoubtedly subject them to scrutiny and intrusions on their privacy," with no citation. Response Br. at 16. It believes that "[n]o more explanation is required[.]" *Id*. The Government's apparent belief, even now, that it need not comply with the plain text of the FOIA counsels against this Court exercising its discretion to remand.

The Government's arguments on the merits of applying Exemption 6 to the officers' names at issue in this case are unavailing in any event. The Government does not engage with perhaps the most analogous precedent of this Court on that topic, *Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015). *See generally* Response Br. (failing to cite *Samuels*); *compare id. with* Opening Br. at 1, 17, 18, 22, 24, 25, 26 (citing *Samuels*). What cases it does add to the discussion only underscore why the names of officers who engaged in work-related conduct giving rise to tort claims actually would "shed light on the [Government's] performance of its duties." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999); *see id.* (explaining why the names of civilians owed money by the Government would not themselves shed light on the Government's performance there). Another one specifies that "the relevant interest is only in knowing *who* the public servants are that were involved in the governmental wrongdoing." *Trentadue v. Integrity Comm'n.*, 501 F.3d 1215, 1233-34 (10th Cir. 2007) (emphasis in original) (citing *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984)). Still a third explains that "names and other identifying information do not always present a significant threat to an individual's privacy interest." *Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005); *see id.* (discussing the need for the Government to assert "consequences likely to ensue from disclosure").

As to the Government's withholding of the individual officers' names, this Court should reverse without remand.

## II. The Government's arguments for claw back are similarly unavailing.

The Government's arguments about claw back invite this Court to make the same error that the District Court did here. The Government conflates civil discovery with the FOIA, attempting to shoehorn its FOIA release into the civil discovery context by repeated reference to the purported "meet-and-confer process" that led the Government to produce some responsive records here. Response Br. at 9, 17, 18, 19, 23. But the Government's arguments and cited authority illustrate the need for this Court to address this issue, and to reject a maneuver that has no basis in statute and fails to comport with this Court's precedents limiting the use of implied powers.

First, the Government cites several district court cases and one out-of-circuit case in support of its arguments. Appellant addressed many of them in its Opening Brief, but one case bears further discussion. *Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 56 F.4th 913 (10th Cir. 2022), allowed claw back after inadvertent disclosure by the Government. *Id.* at 930-31. But *Rocky Mountain Wild* only illustrates some of the shortcomings of the cases purporting to allow claw back. It offers its claw back analysis in three short paragraphs. *Id.* In those paragraphs, it hinges its analysis on its view that the Government there had not "properly divulged the documents." *Id.* at 930. But that key assertion is wrong; the Government may always—and properly—release responsive

information as to which it might otherwise successfully assert an exemption. *E.g. Cottone v. Reno*, 193 F.3d 550, 553-54 (D.C. Cir. 1999). The Tenth Circuit also wrote that "the government waives the ability to exempt a document under FOIA only after it has already released the same information to the public," *Rocky Mountain Wild*, 56 F.4th at 930, apparently excluding information inadvertently released from information "already released . . . to the public." *Id*. And, like most cases purporting to allow claw back despite its lack of statutory basis, *Rocky Mountain Wild* does not discuss the serious First Amendment implications of claw back orders at all. *See generally id.* at 930-31.

Second, the Government's own description of its actions here only underscores the brazenness of its request for claw back. Despite acknowledging that "production here is not governed by the requirement that discovery recipients in civil litigation return or destroy" information inadvertently produced by civil litigants, Response Br. at 21, the Government nevertheless urges this Court to import Fed. R. Civ. P. 26(b)(5)(B) into this FOIA context. That rule, the Government explains, "reflects the difficulties inherent in reviewing the volume of electronically stored information and the difficulty in ensuring that all information to be produced has in fact been reviewed." Response Br. at 21 (citing and quoting Fed. R. Civ. P. 26(b)(5)(B) advisory committee's note to 2006 amendment). But the Government admits here, as it must, that it "missed one instance" of one claimant's name "in a 16-page production,"

9

and missed *three* instances of the other claimant's name "in a 17-page production." Response Br. at 18. One claimant's name remains on the public docket in the District Court because of the Government. *See* Doc. 23-8 at 13. These errors did not owe to voluminous electronic discovery as contemplated in the Rule, and in any event, the Supreme Court long ago observed in *Florida Star* that the Government's sloppiness does not justify penalizing recipients of information. The Government "may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination." *The Florida Star v. B.J.F.*, 491 U.S. 524, 534 (1989). "Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts." *Id.*

Third, the Government does not grapple with this Court's clear directions about when district courts may resort to implied powers. It ultimately describes those powers' use here as "a reasonable response to the problem presented." Response Br. at 23. But that's not the standard. The Government must show that the use of the implied powers is either "documented by historical practice," *Cobell v. Norton*, 334 F.3d 1128, 1141 (D.C. Cir. 2003) (citing *Miner v. Atlass*, 363 U.S. 641, 643-44 (1960)), or necessary to ensure that a court can still exercise its undoubted

judicial authority. *Cobell*, 334 F.3d at 1141 (citing *Chambers v. NASCO*, 501 U.S. 32, 43 (1991)). The Government does not seriously attempt to show either here. Nor could it. Claw back is a recent invention, *see generally* Response Brief at 18-21 (citing no case older than 2006), and because the Government may always waive FOIA exemptions, its inadvertent disclosure of a responsive document does not implicate the District Court's ability to decide the contested legal issues remaining before it as to unreleased documents. *Sierra Club v. United States Environmental Protection Agency*, 505 F.Supp.3d 982, 991 (N.D. Cal. 2020).

Finally, the Government does not explain why the serious First Amendment interest strongly limiting the use of prior restraint does not carry the day here. It cites *In re Rafferty*—not a First Amendment case—for the proposition that "the court may restrict information a party obtained through discovery but not information the party obtained independently of any judicial process," Response Brief at 24-25, but fails to note that *Rafferty* specifically rejected a court using "the happenstance of a discovery proceeding to place under a protective order materials not obtained through discovery." *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988). The Government characterizes Appellant and *Amici* as relying on cases where "a party obtains information from a non-judicial source," Response Br. at 25, but *Rafferty* itself explains that the magistrate judge in that case "exceeded his delegated powers" because those powers "were

11

limited to the discovery process." *Rafferty*, 864 F.2d at 155. At bottom, the Government simply insists that FOIA production and civil discovery should be treated equally. But to the contrary, "the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 561 (1976). This Court should reject the conflation of FOIA production and civil discovery, and a substantial proposed expansion of district courts' implied powers.

## CONCLUSION

For all of the foregoing reasons, and the reasons in the Opening Brief, the judgment of the District Court should be reversed.

Respectfully submitted,

                               /s/ Jim Davy

Deborah M. Golden
D.C. Bar # 470-578
THE LAW OFFICE OF
   DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE
Second Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

*Counsel for Appellant*

June 28, 2024

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 2,619 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.66.1, set in Century Schoolbook 14-point type.

<u>/s/ Jim Davy</u>
Jim Davy

## CERTIFICATE OF SERVICE

I certify that on June 28, 2024, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

I further certify that within the required time I will serve one (1) paper copy upon the Clerk of Court. Upon the filing of the deferred appendix, I will serve eight (8) copies of the updated brief upon the Clerk of Court. Those copies will be identical and unmodified to this one, except for added record citations.

<u>/s/ Jim Davy</u>

Jim Davy