**NOT YET SCHEDULED FOR ORAL ARGUMENT**

No. 23-5236

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

HUMAN RIGHTS DEFENSE CENTER,

Plaintiff–Appellant,

v.

UNITED STATES PARK POLICE,

Defendant–Appellee.

On Appeal from a Final Judgment of the United States
District Court for the District of the District of Columbia
Case No. 19-cv-1502 Hon. Tanya S. Chutkan

**APPENDIX**

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for Appellant

Date: July 5, 2024

# APPENDIX TABLE OF CONTENTS

Complaint (Doc. 1):                                          JA 1

9/5/2019 Minute Order (No docket number):                   JA 7

10/7/2019 Joint Status Report (Doc. 11):                    JA 9

11/15/2019 Joint Status Report (Doc. 12):                   JA 12

9/28/2020 Joint Status Report (Doc. 18):                    JA 15

Park Police Motion for Summary Judgment (Doc. 23):          JA 19

    Statement of Facts (Doc. 23-2):     JA 20

    Tyler Declaration (Doc. 23-3):       JA 25

    *Vaughn* Index (Doc. 23-8):          JA 32

HRDC Summary Judgment Opposition (Doc. 24):                 JA 47

    Statement of Facts (Doc. 24-1):      JA 56

    Wright Declaration (Doc. 24-2):      JA 59

Opinion (Doc. 31):                                          JA 62

Judgment (Doc. 32):                                         JA 74

Notice of Appeal (Doc. 33):                                 JA 75

UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**HUMAN RIGHTS DEFENSE CENTER**          )
1028 N. Federal Highway                  )
Lake Worth Beach, FL 33460               )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )          Civil Action
                                         )          No.
**UNITED STATES PARK POLICE**            )
1100 Ohio Drive SW                       )
Washington, D.C. 20024                   )
                                         )
          Defendant.                     )
_____  )

## COMPLAINT

This lawsuit is an action under the Freedom of Information Act, 5 U.S.C. §552, *et seq.*,

seeking production of records responsive to requests submitted by the Human Rights Defense

Center to the United States Park Police.

### JURISDICTION AND VENUE

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction

   over the defendant under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201(a) and

   2202.

2. Venue is appropriate in this Court under to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §1391.

## Parties

3.  Plaintiff Human Rights Defense Center is a non-profit charitable organization incorporated in the state of Washington, with principal offices in Lake Worth Beach, Florida.

4.  Defendant United States Park Police ("Park Police") is a component of the United States National Park Service and an agency under 5 U.S.C. §552(f)(1) and 5 U.S.C. § 701.

## Facts

### Human Rights Defense Center's Background and Mission

5.  The Human Rights Defense Center (previously named Prison Legal News) has spent the last twenty-nine years dedicated to public education, prisoner education, advocacy, and outreach to support the rights of prisoners and to further basic human rights.

6.  To accomplish its mission, HRDC gathers information from governmental entities around the country and publishes the information in its journals and on its websites.

7.  HRDC publishes and distributes books, magazines, and other information containing news and analysis about prisons, jails and other detention facilities, prisoners' rights, court rulings, management of prison facilities, prison conditions, and other matters about the rights and interests of incarcerated individuals.

8.  HRDC publishes two magazines: *Prison Legal News (PLN)* and *Criminal Legal News (CLN)*.

9. *PLN* is a legal journal that reports news and litigation about carceral facilities. *PLN* has published monthly since 1990 and has around 9,000 subscribers in all 50 states. Based on reader survey results the estimated actual readership is around ten times that number. *PLN's* subscribers include lawyers, journalists, judges, courts, public libraries and universities. *PLN* also maintains a website that receives around 100,000 visitors per month based on site analytics.

10. *CLN* is a legal journal launched in November, 2017. *CLN* reports on criminal law decisions from the states and federal systems, focusing on legal developments affecting the fact and duration of confinement. *CLN* also covers civil rights litigation against police, prosecutors, and court systems.

11. Through its publishing arm, HRDC also publishes books about the criminal justice system and legal issues affecting prisoners.

### The United States Park Police

12. The Park Police was created in 1791, and is a law enforcement agency with jurisdiction in all federal parks.

13. The Park Police employs hundreds of officers, who have arrest authority in California, Maryland, New Jersey, New York, Virginia, and Washington D.C.

### Request at Issue

14. On December 12, 2018, HRDC sent to the Park Police via U.S. first class mail a FOIA request for records of litigation against the Park Police.

15. Specifically, the December 12, 2018 FOIA request sought:

"1. Records, regardless of physical form or characteristics, sufficient to show for all claims or lawsuits brought against the U.S. Park Police and/or any of its agents or employees in which payments totaling $1,000 or more were disbursed from January 1, 2010 to the present:

- The name of all parties involved;

- The case or claim number;

- The jurisdiction in which the case or claim was brought (e.g., U.S. District Court for the District of Columbia, D.C. Superior Court, etc.);

- The date of resolution;

- The amount of money involved in the resolution and to whom it was paid.

2. For each case or claim detailed above:

- The complaint or claim form and any amended versions;

- The verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case."

16. HRDC did not receive a response to the December 12, 2018 FOIA request.

17. On March 1, 2019 HRDC sent a FOIA request to the Park Police via the Department of the Interior's online portal: https://www.doi.gov/foia/foia-request-form.  This FOIA request asked for the same documents as the December 12, 2018 request.

18. HRDC's FOIA requests also requested a fee waiver, as HRDC is a media organization.

19. On March 4, 2019, Ms. Charis Wilson, a FOIA Officer for the National Park Service, sent HRDC an email indicating that the March 1, 2019 FOIA request had been received, and was routed for processing.

20. No further information or communication from the Park Police, the National Park Service, or the Department of the Interior has been received by HRDC.

21. HRDC never received a response to its FOIA requests to the Park Police.

## HRDC's Claim for Relief

22. HRDC incorporates paragraphs 1 -22 by reference.

23. The Park Police wrongly withheld documents responsive to HRDC's properly submitted request.

24. HRDC has a statutory right to the records it seeks, and there is no basis for the Park Police to withhold them.

25. As a result, by failing to release the records specifically requested by HRDC, the Park Police has violated FOIA.

26. HRDC has a legal right to the responsive documents.

## Requested Relief

HRDC therefore respectfully requests that this Court:

1. Declare that the records sought by HRDC are subject to FOIA;

2. Order the Park Police to disclose the requested records;

3. Award costs and attorney's fees under 5 USC (a)(4)(E); and

4.   Grant such other relief as the Court may consider just and proper.


Date: May 23, 2019.


                Respectfully submitted,


_____

Deborah M. Golden
Human Rights Defense Center
316 F Street, NE #107
Washington, DC 20002
(202) 543-8100
(202) 630-0332 (cell)
D.C. Bar No. 470-578

Minute Order

(Sept. 5, 2019)

U.S. District Court for the District of Columbia

Civil Docket

1:19-cv-01502-TSC

Human Rights Defense Center v. United States Park Police

09/05/2019        MINUTE ORDER: Before the Court in this FOIA case are
a complaint and an answer. The requirements of LCvR
16.3 and Rule 26(f) of the Federal Rules of Civil
procedure appear to be inapplicable. IT IS HEREBY
ORDERED that the parties shall meet and confer and
propose a schedule for proceeding in this matter. The
schedule shall address the status of Plaintiff's FOIA
request, the anticipated number of documents
responsive to Plaintiff's FOIA request, the anticipated
date(s) for release of the documents requested by
Plaintiff, whether a motion for an Open America stay is
likely in this case, whether a Vaughn index will be
required in this case, whether and when either party
anticipates filing a dispositive motion, and any other
pertinent issues. The parties shall file a joint status
report that addresses these issues no later than
10/7/19. The joint status report shall be accompanied
by a proposed order. Signed by Judge Tanya S. Chutkan
on 9/5/19. (DJS) (Entered: 09/05/2019)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,
*Plaintiff*,

v.

UNITED STATES PARK POLICE,
*Defendant*.

Civil Action No. 19-1502 (TSC)

## JOINT STATUS REPORT

Defendants, the United States Park Police ("USPP"), and Plaintiff, Human Rights Defense Center ("HRDC"), each by its undersigned counsel, submit this joint status report in response to the Court's Minute Order dated September 5, 2019.

1.    On May 24, 2019, Plaintiff HRDC perfected service of his complaint on Defendant alleging that the USPP failed to respond its Freedom of Information Act ("FOIA") request seeking "records of litigation against the Park Police."  Compl. at 3:¶14.

2.    Defendant filed an Answer on September 5, 2019, and by minute order that same day, the Court instructed the parties to "meet and confer and propose a schedule for proceeding in this matter. The schedule shall address the status of Plaintiff's FOIA request, the anticipated number of documents responsive to Plaintiff's FOIA request, the anticipated date(s) for release of the documents requested by Plaintiff, whether a motion for an *Open America* stay is likely in this case, whether a *Vaughn* index will be required in this case, whether and when either party anticipates filing a dispositive motion, and any other pertinent issues on or before October 7, 2019."

3.    Defendant provides the following status regarding the search for records and responses to Plaintiff's FOIA requests.

4.    As a result of the parties' meet and confer discussions, on July 11, 2019, plaintiff limited the scope of its request as follows: (a) excluding all records of an automobile accident

(personal or property injury) under $50,000; (b) excluding all records of USPP Equal Employment Opportunity ("EEO") claims premised on worker's compensation or pay calculation benefits (but including EEO discrimination claims); and (c) excluding any category of claim where the relief sought or rendered is under $3,000.

5.      On September 13, 2019, and with the exception of EEO records, Defendant released all records responsive to Plaintiff's modified request.  With respect to EEO records, Defendant is conducting a manual and electronic search for complaints responsive to Plaintiff's request. Defendant anticipates completing its search, review, and release of the EEO records request within the next 45 days (*i.e.*, by November 21, 2019).

6.      Although USPP's FOIA office is severely understaffed and has inadequate existing resources, Defendant does not anticipate filing a motion for an *Open America* stay.

7.      If the parties' meet and confer efforts do not resolve this matter, Defendant anticipates that a *Vaughn* declaration would be sufficient to support its response to Plaintiff's FOIA request.

8.      In light of Defendants' ongoing searches for and releases of records responsive to HRDC's FOIA request, the parties respectfully request that the Court defer the entry of a briefing schedule at this time and instead order the parties to submit another joint status report updating the Court on the status of Defendant's responses and/or releases to HRDC's FOIA request within 45 days: on or before <u>November 21, 2019</u>.

*       *       *

Respectfully submitted,

_/s/ Deborah M. Golden_

Deborah M. Golden, D.C. Bar #470578
The Law Office of Deborah M. Golden
1415 H St. NE
Washington, D.C.  20002
Telephone: (202) 630-0332
deb.golden@gmail.com


*Counsel for Plaintiff*



Dated: October 7, 2019.

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:  _/s/ Paul A. Mussenden_

PAUL A. MUSSENDEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 7874
Paul.Mussenden@usdoj.gov

*Counsel for Defendants*

JA 011

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,
*Plaintiff*,

v.

Civil Action No. 19-1502 (TSC)

UNITED STATES PARK POLICE,
*Defendant*.

## JOINT STATUS REPORT

Defendants, the United States Park Police ("USPP"), and Plaintiff, Human Rights Defense Center ("HRDC"), each by its undersigned counsel, submit this joint status report in response to the Court's Minute Order dated October 18, 2019.

1.    As explained in the parties previously filed Joint Status Report dated October 7, 2019 (ECF No. 11), Plaintiff agreed during meet and confer discussions to modify the scope of its FOIA request as follows:  (a) excluding all records of an automobile accident (personal or property injury) under $50,000; (b) excluding all records of USPP Equal Employment Opportunity ("EEO") claims premised on worker's compensation or pay calculation benefits (but including EEO discrimination claims); and (c) excluding any category of claim where the relief sought or rendered is under $3,000.  *See* ECF No. 11 at 1-2:¶4.

2.    The parties further reported that, on September 13, 2019, and with the exception of EEO records, Defendant released all records responsive to Plaintiff's modified request.  With respect to EEO records, Defendant anticipated completing its search, review, and release of the EEO records request on or before November 21, 2019.  *Id*. at 2:¶5.

3.    Defendant completed its search and review of relevant EEO records and produced all non-exempt EEO records to Plaintiff by letter dated October 18, 2019.  On October 25, 2019, Plaintiff's counsel acknowledged receipt of the EEO records production.

4.      By email dated November 6, 2019, Plaintiff advised that it completed its review of all documents produced and requested that Defendant reconsider several redactions it believes should be withdrawn under applicable FOIA precedent.

5.      Defendant has agreed to consider Plaintiff's request and pursue further meet and confer discussions to narrow the areas of disagreement.

6.      To allow adequate time for the parties to confer regarding the redactions challenged by Plaintiff, the parties respectfully request that the Court defer the entry of a briefing schedule at this time.  Consistent with the Court's Minute Order dated October 18, 2019 directing the parties to file status reports "every 60 days", the parties shall submit another joint status report updating the Court on the status of the parties' efforts to resolve this matter on or before January 21, 2020.

*       *       *

JA 013

Respectfully submitted,

  /s/ *Deborah M. Golden*
Deborah M. Golden, D.C. Bar #470578
The Law Office of Deborah M. Golden
1415 H St. NE
Washington, D.C.  20002
Telephone: (202) 630-0332
deb.golden@gmail.com


*Counsel for Plaintiff*

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ *Paul A. Mussenden*
PAUL A. MUSSENDEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 7874
Paul.Mussenden@usdoj.gov

*Counsel for Defendants*

Dated: November 15, 2019.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,

*Plaintiff*,

v.

UNITED STATES PARK POLICE,

*Defendant*.

Civil Action No. 19-1502 (TSC)

## JOINT STATUS REPORT

Defendants, the United States Park Police ("USPP"), and Plaintiff, Human Rights Defense Center ("HRDC"), each by its undersigned counsel, submit the following updated joint status report consistent with the Court's Minute Order dated October 18, 2019 directing the parties to file status reports "every 60 days":

1.    As explained in the parties previously filed Joint Status Report dated October 7, 2019 (ECF No. 11), Plaintiff agreed during meet and confer discussions to modify the scope of its FOIA request as follows:  (a) excluding all records of an automobile accident (personal or property injury) under $50,000; (b) excluding all records of USPP Equal Employment Opportunity ("EEO") claims premised on worker's compensation or pay calculation benefits (but including EEO discrimination claims); and (c) excluding any category of claim where the relief sought or rendered is under $3,000.  *See* ECF No. 11 at 1-2:¶4.

2.    The parties further reported that, on September 13, 2019, and with the exception of EEO records, Defendant released all records responsive to Plaintiff's modified request.  With respect to EEO records, Defendant anticipated completing its search, review, and release of the EEO records request on or before November 21, 2019.   *Id.* at 2:¶5.  Defendant completed its search and review of relevant EEO records and produced all non-exempt EEO records to Plaintiff by letter dated October 18, 2019.

3.      By email dated November 6, 2019, Plaintiff advised that it completed its review of all documents produced and requested that Defendant reconsider several redactions it believes should be withdrawn under applicable FOIA precedent.

4.      Defendant agreed to consider Plaintiff's request and pursue further meet and confer discussions to narrow the areas of disagreement.

5.      On March 27, 2020, Defendant provided a comprehensive and detailed response to each challenged redaction and addressed questions raised about information related to a particular subset of documents.

6.      By subsequent written communications in August and early September, the parties exchanged information and views in an attempt to reach a resolution and/or further narrow the areas of disagreement.

7.      The parties now believe that they have exhausted their efforts to narrow the areas of disagreement through meet and confer discussions, and that the remaining issues require briefing and resolution by the Court.

8.      The parties have narrowed the issues for summary judgment briefing as follows: (1) the scope of the FOIA requests at issue for briefing is modified consistent with the parties meet and confer discussions as follows:   (a) excluding all records of an automobile accident (personal or property injury) under $50,000; (b) excluding all records of USPP Equal Employment Opportunity ("EEO") claims premised on worker's compensation or pay calculation benefits (but including EEO discrimination claims); and (c) excluding any category of claim where the relief sought or rendered is under $3,000.  *See* ECF No. 11 at 1-2:¶4. (2) there are no genuinely disputed issues regarding the adequacy of the search and segregability; and (3) the only withholdings at issue are (a) the names of claimants withheld on 21 documents under Exemption (b)(6), including

the inadvertent disclosure of a claimants' name that the USPP contends should be subject to a claw-back and discarded by Plaintiff;  and (b) the names of tortfeasors on 4 documents, three of which are also included in the documents with unreleased claimants.  With respect to the inadvertent disclosure of a claimants' name, Plaintiff disagrees with the need for an immediate claw-back and destruction of the record, but has agreed not to disseminate the record until the issue is resolved by the Court.

        9.        To resolve the remaining disputed issues, the parties propose the following briefing schedule:

|  | Deadline |
|---|---|
| Defendant's Motion for Summary Judgment | December 4, 2020 |
| Plaintiff's Opposition and Cross Motion for Summary Judgment | January 8, 2021 |
| Defendant's Reply and Opposition to Cross Motion for Summary Judgment | January 29, 2021 |
| Plaintiff's Reply re Opposition to Cross Motion for Summary Judgment | February 19, 2021 |

*     *     *

JA 017

Respectfully submitted,

_/s/ Deborah M. Golden_
Deborah M. Golden, D.C. Bar #470578
The Law Office of Deborah M. Golden
1415 H St. NE
Washington, D.C.  20002
Telephone: (202) 630-0332
deb.golden@gmail.com


_Counsel for Plaintiff_

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:  _/s/ Paul A. Mussenden_
PAUL A. MUSSENDEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 7874
Paul.Mussenden@usdoj.gov

_Counsel for Defendants_

Dated: September 28, 2020.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,

*Plaintiff*,

v.                                        Civil Action No. 19-01502 (TSC)

UNITED STATES PARK POLICE,

*Defendant*.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now comes the Defendant in the above captioned matter, United States Park Police, by and through undersigned counsel, and hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56.  In support of this motion, Defendant relies upon the attached Memorandum in Support, Statement of Material Facts Not in Dispute, Declaration of Janeen C. Tyler, and *Vaughn* Index.

Dated:  March 26, 2021                Respectfully submitted,

CHANNING D. PHILLIPS
D.C. Bar No. 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

/s/Thomas W. Duffey/s/
THOMAS W. DUFFEY
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2510
Thomas.Duffey@usdoj.gov

Counsel for Defendant

JA 019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,

*Plaintiff*,

v.

UNITED STATES PARK POLICE,

*Defendant*.

Civil Action No. 19-01502 (TSC)

## <u>DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE</u>

Pursuant to Local Civil Rule 7(h), Defendant United States Park Police ("USPP" or "Defendant"), by and through undersigned counsel, respectfully submits the following Statement of Facts as to Which There is no Genuine Issue.  These facts are primarily taken from the Declaration of Janeen Tyler, which accompanies USPP's Motion for Summary Judgment.

1.      On December 12, 2018 and March 1, 2019, Plaintiff submitted a FOIA request to USPP seeking "[A]ll records concerning litigation against the U.S. Park Police and/or its employees or agents where the agency and or the insurer paid $1,000 or more to resolve claims.  These payments include but are not limited to settlements, damages, attorney fee awards, and sanctions, irrespective of the identity of the plaintiff or claimant; and record of all litigation against the U.S. Park Police and/or its employees or agents where the agency and/or its insurers paid $1,000 or more to resolve claims. These payments include, but are not limited to, settlements, damages, attorney fee awards, and sanctions irrespective of the identity of the plaintiff or claimant."  Tyler Decl. ¶2 and Exhibit A attached thereto
.

1

2.     After consultation, on July 11, 2019, Plaintiff agreed to limit and clarify the scope of its request to exclude automobile accidents with damages under $50,000; any EEO claims not about discrimination; and any claim at all under $3,000.  Id at ¶ 4, and Exhibit B attached thereto.

3.     Searches were conducted for responsive records, and the various custodians provided the results to the USPP FOIA Office.  Id at ¶ ¶ 5-9.

4.     The responsive records fell into two general categories: 1) EEO settlement case files and 2) tort settlement case files.  Id at ¶ 13.

5.     Identities of employees who filed EEO complaints, tort claimants, and alleged tortfeasors were withheld, including pronouns, personal identity markers, settlement dates, and dates of filing of claims. Id at ¶ 14.

6.     The redactions were made pursuant to Exemption 6 because release of the information would constitute an unwarranted invasion of personal privacy.  Id.

7.     Defendant produced responsive documents to Plaintiff on September 13, 2019, and October 18, 2019. *Id* at ¶ ¶ 15-16.

8.     Redactions were made to the produced responsive documents pursuant to Exemption 6, removing the identity of any tort claimants or USPP employees who filed EEO complaints, as well as 4 USPP alleged tortfeasors, including pronouns that could identify gender and other identifying markers, settlement dates, and dates of filing of claims.  Id at ¶ 17.

9.     In December 2019, Plaintiff requested that USPP re-evaluate the redacted records, and particularly questioned USPP's Exemption 6 redactions. Id.

10.    USPP engaged in a second review of the withholdings beginning in December 2019 and,

JA 021

pursuant to agency regulations, after re-evaluating USPP's earlier releases, revised proposed redactions were sent to USPP's Office of the Solicitor for review.  Id at ¶¶ 17-18 .

11.  After the second review, USPP modified its redactions and provided additional information requested by Plaintiff. Id at ¶ ¶ 19-20.

12.  USPP continued to withhold the names of the EEO claimants on documents 1-14, the names of tort claimants on documents 15-17, and the names 4 alleged USPP tortfeasors on documents 15-17.   Id at ¶ 20, and Vaughn Index attached thereto as Exhibit "E".

13.  USPP made the redactions pursuant to Exemption 6, informing Plaintiff that release of the information concerning the identities of the EEO and tort claimants, and the alleged USPP tortfeasors, would constitute an unwarranted invasion of their personal privacy.  Id at ¶ 20.

14.  The EEO claimants in documents 1-14 on the *Vaughn* Index made various personal claims of discrimination based on disability, age, race, national origin, sex, color, and sexual harassment.  Id at ¶ 21, and *Vaughn* Index attached thereto as Exhibit E".

15.  USPP carefully examined the documents and determined that the EEO claimants in documents 1-14 had a significant privacy interest in their identities and that their privacy interests outweighed the release of the information, and that release of the information would not shed light on the activities of USPP.  Tyler Decl. ¶ 22, and *Vaughn* Index attached thereto as Exhibit E".

16.  The tort claimants and alleged tortfeasors in documents 15-17 on the Vaughn Index involved personal claims of injury, and allegations against low ranking USPP employees that were never proven. Tyler Decl. ¶ 23, and *Vaughn* Index attached thereto as Exhibit E".

17.  USPP carefully examined the documents and determined that the tort claimants and alleged tortfeasors in documents 15-17 had a significant privacy interest in their identities and that

their privacy interests outweighed the release of the information, and that release of the information would not shed light on the activities of USPP. Tyler Decl. ¶ 24, and *Vaughn* Index attached thereto as Exhibit E".

18.    The USPP performed adequate and reasonable searches for records responsive to Plaintiffs FOIA request to the USPP; processed all records located by the USPP; and released all reasonably segregable non-exempt information from records responsive to Plaintiff's FOIA request.  Information was properly withheld pursuant to FOIA Exemption 6.  The only information withheld was the names of EEO claimants on Document nos. 1-14; the names of tort claimants on documents 15-17; and the names of 4 alleged tortfeasors on documents 15-17, who were all low-ranking USPP officers.  Tyler Decl. ¶ 25, and *Vaughn* Index attached thereto as Exhibit E".

19.    The USPP carefully examined documents 1-17 and determined that the information withheld from Plaintiff pursuant to Exemption 6, if disclosed, would cause a clearly unwarranted invasion of personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Tyler Decl. ¶ 26, and *Vaughn* Index attached thereto as Exhibit E".

20.    The USPP performed a balancing test, and concluded that the privacy interests of those individuals whose names were redacted outweighed the public interest in release of the information.  Tyler Decl. ¶ 27, and *Vaughn* Index attached thereto as Exhibit E".

21.    After extensive review of the documents at issue, the USPP determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information. Tyler Decl. ¶ 28, and *Vaughn* Index attached thereto as Exhibit E".

22.    But to the extent that a claimant's name was inadvertently released, it was done in error

and plaintiff should not disclose the errant release to the public and should destroy that

document. Tyler Decl. ¶ 29.

23.    There are no issues regarding the adequacy of the search and segregability. ECF No. 18, p.

2.

24.    The parties agreed to restrict summary judgment briefing to the following withholdings:

the names of 14 EEO claimants, the names of three FTCA claimants, and the names of four

alleged USPP tortfeasors, including the inadvertent disclosure of a claimant's name that

USPP contends should be subject to a clawback. Id at pp. 2-3.

Dated:  March 26, 2021                                        Respectfully submitted,

                                                             CHANNING D. PHILLIPS
                                                             D.C. Bar No. 415793
                                                             Acting United States Attorney

                                                             BRIAN P. HUDAK
                                                             Acting Chief, Civil Division

                                                             By: /s/Thomas W. Duffey
`                                                            THOMAS W. DUFFEY
                                                             Assistant United States Attorney
                                                             555 Fourth Street, NW
                                                             Washington, D.C. 20530
                                                             (202) 252-2510
                                                             Thomas.duffey@usdoj.gov

                                                             Attorneys for the United States

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,

*Plaintiff*,

v.

UNITED STATES PARK POLICE,

*Defendant*.

Civil Action No. 19-01502 (TSC)

**DECLARATION OF JANEEN C. TYLER**

I, Janeen C. Tyler, declare as follows:

1. I am a Freedom of Information Act (FOIA) Officer and Government Information Specialist for the United States Park Police (USPP) at the Department of the Interior (Department).  I have held this position since April 2008. My office receives and processes all initial FOIA requests for offices and staffs within the United States Park Police. In my capacity as the USPP FOIA Officer, I am familiar with USPP's obligations under FOIA, including application of the various exemptions thereunder. All information herein is based upon my personal knowledge, and/or experience and/or my personal review of Plaintiff's FOIA request and documents, and/or upon information furnished to me in my official capacity. I participated in processing the FOIA request that is the subject of this lawsuit.

**ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST**
**NPS-2019-00608 and NPS-2019-00715**

2. On December 12, 2018, and March 1, 2019, Michelle Dillon, on behalf of the Human Rights Defense Center (Plaintiff), submitted a FOIA Request to the United

1

JA 025

States Park Police seeking:

> [A] ll records . . . concerning litigation against the U.S. Park Police and/or its employees or agents where the agency and/or its insurers paid $1,000 or more to resolve claims. These payments include but not limited to settlements, damages, attorney fee awards, and sanctions, irrespective of the identity of the plaintiff or claimant; and record of all litigation against the U.S. Park Police and/or its employees or agents where the agency and/or its insurers paid $1,000 or more to resolve claims. These payments include, but not limited to, settlements, damages, attorney fee awards, and sanctions irrespective of the identity of the plaintiff or claimant.

*See* Exhibit A (NPS-2019-00608 FOIA Request (December 12, 2018)). The FOIA Request included a date restriction confining the request to records from "January 1, 2010 to the date of receipt of request February 26, 2019." *Id.* This request was put on complex processing track and assigned the tracking number NPS-2019- 00608.

## USPP'S SEARCH FOR DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST

3. I spoke briefly on February 26, 2019, to JR Richardson, Chief, Occupational Safety, Health and Wellness who was reasonably ascertained to be the custodian of potentially responsive records given his direct connection to the underlying subject matter. However, the request was too broad.

4. Due to the broadness of the plaintiff's request, on July 11, 2019, plaintiff agreed to limit and clarify the scope of their request to exclude the following:

    1. Anything that is an automobile accident (personal or property injury) under $50,000.

    2. Any EEO claim that sounds in worker's compensation or pay calculation, or are not about discrimination.

    3. Any claim at all under $3,000 (instead of $1,000). Exhibit B.

5. When the USPP receives a FOIA request, I evaluate the request to determine

which person within the USPP may reasonably be expected to contain the records requested. This determination is based on the description of the records requested and requires a familiarity with how the USPP maintains records. Based on my knowledge, I sent a records' request to three persons, because they were reasonably ascertained to be the custodians of potentially responsive records given their direct connection to the underlying subject matter. Exhibit C.

6.  These custodians included Beverly McKnight (NPS, EEO); JR Richardson (USPP, Chief, Occupational Safety, Health and Wellness); and Karlyn Payton (USPP, Employee and Labor Relations Unit).

7.  The custodians were given search instructions on how to search for the records. Exhibit D.

8.   Each custodian searched their records for the period of January 1, 2010, to February 26, 2019, using the plaintiff's limited scope of request. When conducting a search in response to a FOIA request, the USPP relies on the knowledge and expertise of the employees of each custodian to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized.

9.  After conducting the search, the custodians provided the results to the USPP FOIA Office.

10.  Given my twelve years (12) of experience within the USPP FOIA Office, I concluded that no one else would be reasonably likely to have responsive records.

JA 027

11.   After review and deduplication, I identified eighteen (18) documents totaling 220 pages as responsive to NPS- 2019-00608. Of the eighteen documents, one was released in full.

**FIRST REVIEW OF PROPOSED WITHHOLDINGS AND AWARENESS REVIEW**

12.  On September 11, 2019, October 10, 2019, pursuant to agency regulations, after proposing redactions, my office sent the responsive documents to the Department's Office of the Solicitor for legal review.

13.   The responsive records fell into two general categories: (1) EEO settlement case files and (2) tort settlement case files.

14.   Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  For this reason, the identities of any tort claimants or employees who filed EEO complaints were redacted. Also, the identities of alleged tortfeasors and witnesses were redacted. These redactions were not limited to the name of the person, but also included pronouns that could identify a complainant's/witness's gender, any other personal identifiably makers, settlement dates, and date of filing claims. These redactions were made pursuant to 5 U.S.C. § 552(b)(6) because release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the complaints.

**RELEASE OF RESPONSIVE RECORDS TO PLAINTIFF**

15.   After legal review, on September 13, 2019, the first partial response letter was sent to the plaintiff that contained three (3) responsive documents totaling thirty-two (32) pages. Exhibit F.

16.   After legal review, on October 18, 2019, the second final partial response letter was sent to the plaintiff that contained fifteen (15) responsive documents totaling 188 pages. Exhibit G.

**SECOND REVIEW OF PROPOSED WITHHOLDINGS AND AWARENESS REVIEW**

17.   In December 2019, plaintiff requested that my office evaluate each redacted record on a case by case basis and not make categorical redactions. Specifically, plaintiff questioned our exemption 6 redactions.

18.   Pursuant to agency regulations, after re-evaluating USPP's earlier releases, my office sent revised proposed redactions to the Department's Office of the Solicitor for legal review.

19.   USPP reviewed document nos. 1-17 to see if revised redactions could be made, and USPP did make modifications.

**RELEASE OF RESPONSIVE RECORDS AFTER SECOND REVIEW TO PLAINTIFF**

20.   In response to plaintiff's request, USPP released modified redactions in May 2020 and September 2020.  Additional information was released to Plaintiff, but USPP continued to withhold, pursuant to Exemption 6, the names of the EEO claimants on documents 1-14, the names of tort claimants on documents 15-17, and the names of alleged tortfeasors on documents 15-17.  The documents at issue, nos. 1-17, and the reasons for the application of Exemption 6, are set forth in the *Vaughn* Index, attached as Exhibit "E".

21.  The EEO claimants in documents 1-14 on the *Vaughn* Index made various personal claims of discrimination based on disability, age, race, national origin, sex, color, and sexual harassment.  *Vaughn* Index.

22. USPP carefully examined the documents and determined that the EEO claimants in documents 1-14 had a significant privacy interest in their identities and that their privacy interests outweighed the release of the information, and that release of the information would not shed light on the activities of USPP.  *Vaughn* Index.

23. The tort claimants and alleged tortfeasors in documents 15-17 on the *Vaughn* Index involved personal claims of injury, and allegations against low ranking USPP employees that were never proven.  *Vaughn* Index.

24. USPP carefully examined the documents and determined that the tort claimants and alleged tortfeasors in documents 15-17 had a significant privacy interest in their identities and that their privacy interests outweighed the release of the information, and that release of the information would not shed light on the activities of USPP.  *Vaughn* Index.

### CONCLUSION

25. The USPP performed adequate and reasonable searches for records responsive to Plaintiffs FOIA request to the USPP; processed all records located by the USPP; and released all reasonably segregable non-exempt information from records responsive to Plaintiff's FOIA request.   Information was properly withheld pursuant to FOIA Exemption 6.   The only information withheld was the names of EEO claimants on Document nos. 1-14; the names of tort claimants on documents 15-17; and the names of 4 alleged tortfeasors on documents 15-17, who were all low-ranking USPP officers.  See *Vaughn* Index.

26. The USPP carefully examined documents 1-17 and determined that the information withheld from Plaintiff pursuant to Exemption 6, if disclosed, would cause a clearly

unwarranted invasion of personal privacy, or could reasonably be expected to constitute

an unwarranted invasion of personal privacy.  See *Vaughn* Index.

27. The USPP performed a balancing test, and concluded that the privacy interests of those

individuals whose names were redacted outweighed the public interest in release of the

information.  See *Vaughn* Index.

28.  ~~After~~ extensive review of the documents at issue, the USPP determined that there is

no further non-exempt information that can be reasonably segregated and released

without revealing exempt information.

29. But to the extent that a claimant's name was inadvertently released, it was done in

error and plaintiff should not disclose the errant release to the public and should destroy

that document.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2021.

*Janeen C. Tyler*

Janeen C. Tyler
Freedom of Information Act Officer
United States Park Police

7

**Exhibit E**

| Doc. No. | Record Description | AR Pages | Disposition and/or Exemptions |
|---|---|---|---|
| 1 | NPS-12-0187 (National Origin, Sex, Age & Disability Discrimination Claim) File Contains: <ul><li>Acceptance Letter</li><li>Blank Withdrawal of Complaint Form</li><li>Order of Dismissal</li><li>Settlement Agreement and Release</li><li>Envelope</li></ul> | 1,2,4-10 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex, age, and disability of the claimant as well as the date of the incident. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |

| 2 | NPS-12-0414 (Race, Color, Sex and Age Discrimination Claim) File Contains: <br>• Acceptance Letter<br>• Blank Withdrawal of Complaint Form<br>• Order of Dismissal<br>• Settlement Agreement and Release<br>• Envelope | 1-3,5,7-13 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex, age, and disability of the claimant as well as the date of the incident. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
|---|---|---|---|
| 3 | NPS-12-0625 (Race, Color, Sex and Age Discrimination Claim File Contains:<br>• Amendment, Partial Acceptance Letter | 1-10 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information |

| | | | |
|---|---|---|---|
| | • Blank Withdrawal of Complaint Form<br>• Settlement Agreement and Release | | outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex,  age, and disability of the claimant as well as the date of the incident. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
| 4 | NPS-14-0361 (Sex Discrimination Claim)<br>File Contains:<br>• Acceptance Letter<br>• Blank Withdrawal of Complaint Form<br>• Order of Dismissal<br>• Settlement Agreement and Release | 1-10 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a |

| | | | |
|---|---|---|---|
| | • Envelope | | Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information can not be protected.<br><br>This personal information included the national origin, sex, age, and disability of the claimant as well as the date of the incident because this particular office is small. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
| 5 | NPS-15-0096 (Sex and Race Discrimination Claim File Contains:<br>• Acceptance Letter<br>• Blank Withdrawal of Complaint Form<br>• Settlement Agreement and Release | 1-8 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the |

| | | | willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected. |
|---|---|---|---|
| | | | This personal information included the national origin, sex,  age, and disability of the claimant as well as the date of the incidentDue to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant. |
| | | | In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
| 6 | NPS-15-0097 (Age, Sex and Discrimination and Reprisal Claim File Contains: <br> • Acceptance Letter <br> • Blank Withdrawal of Complaint Form <br> • Order of Dismissal <br> • Settlement Agreement and Release <br> • Envelope | 1-13 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department. |
| | | | The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information can not be protected. |
| | | | This personal information included the national origin, sex,  age, and disability of the claimant as well as the date of the incident. Due to the limited number of |

| | | | officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
|---|---|---|---|
| 7 | NPS-15-0643 (Harassment and Sex Claim)<br>File Contains:<br>• Partial Acceptance Letter<br>• Blank Withdrawal of Complaint Form<br>• Order of Dismissal<br>• Settlement Agreement and Release | 1-6,8-16 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex, \ age, and disability of the claimant as well as the date of the incident because as this particular office is small. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently |

| | | | satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
|---|---|---|---|
| 8 | NPS-15-0911 – Race Discrimination Claim) File Contains:<br>• Acceptance Letter<br>• Blank Withdrawal of Complaint Form<br>• Settlement Agreement dated 9/24/2018 | 1,3-15 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information can not be protected.<br><br>This personal information included the national origin, sex,  age, and disability of the claimant as well as the date of the incidentDue to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |

| 9 | NPS-15-0975 (Gender Discrimination and Reprisal Claim)<br>File Contains:<br>• Acceptance Letter<br>• Blank Withdrawal of Complaint Form | 1-4 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex, age, and disability of the claimant as well as the date of the incident because this particular office is small. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
| 10 | NPS-16-0180 (Race, Sex, Color & Age Discrimination and Reprisal Claim)<br>File Contains:<br>• Acceptance Letter | 1-12 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information |

| | • Blank Withdrawal of Complaint Form<br>• Settlement Agreement and Release | | outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex, age, and disability of the claimant as well as the date of the incident. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
| 11 | NPS-17-0496 (Race, National Origin, and Age Discrimination Claim)<br>File Contains:<br>• Acceptance Letter<br>• Blank Agreement to ADR Mediation Form<br>• Blank Withdrawal of Complaint Form | 1,3-16 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a |

| | | | |
|---|---|---|---|
| | • Notice of Settlement Letter<br>• Order of Dismissal<br>• Settlement Agreement and Release | | Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information can not be protected.<br><br>This personal information included the national origin, sex,  age, and disability of the claimant as well as the date of the incident. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
| 12 | NPS-18-0072 (Race, Color, & Age Discrimination and Reprisal Claim)<br>File Contains:<br>• Acceptance Letter<br>• Blank Agreement to ADR Mediation Form<br>• Blank Withdrawal of Complaint Form<br>• Settlement Agreement dated 9/24/2018<br>• Envelope | 1-15 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the |

| | | | |
|---|---|---|---|
| | | | willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex, age, and disability of the claimant as well as the date of the incident. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
| 13 | NPS-18-0072/NPS-18-0192 (Race, Sex, Color & Age Discrimination and Reprisal Claim)<br>File Contains:<br>• Consolidated Acceptance Letter, NPS-18-0072 and NPS-18-0192<br>• Blank Withdrawal of Complaint Form<br>• Settlement Agreement dated 9/24/2018 | 1-15 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information can not be protected.<br><br>This personal information included the national origin, sex,  age, and disability of the claimant as well as the date of the incident. Due to the limited number of |

| | | | officers working at this facility, release of these details would reveal the identity of the claimant.<br><br>In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist  is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
|---|---|---|---|
| 14 | NPS-18-0072/0192-0645 (Race, Sex, Color & Age Discrimination and Reprisal Claim)<br>File Contains:<br>• (Combined) Settlement Agreement for NPS-15-0911, NPS-18-0072, NPS-18-0192, NPS-18-0645 dated 9/24/2018[1] | 1-11 (b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the EEO complaint. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>The Department of the Interior's EEO claim system gives a source of relief to aggrieved and vulnerable employees. All of these EEO records are maintained in a Privacy Act System of Records. Claimant's information is carefully protected and held in confidence in order protect the claimants from retaliation and embarrassment. By exposing the identities of EEO claimants, former and potential claimants are sent the message that their information is not safe. Accordingly, publishing the identities of EEO complainants would have a chilling effect on the willingness of potential complainants to file future EEO complaints because of the precedent being established that their information cannot be protected.<br><br>This personal information included the national origin, sex, age, and disability of the claimant as well as the date of the incident. Due to the limited number of officers working at this facility, release of these details would reveal the identity of the claimant. |

[1] The records labeled as NPS-15-0911, NPS-18-0072, NPS-18-0192, NPS-18-0645 each contain the same Settlement Agreement. These appear to be separate scans of the same underlying document and I assume were released this way because a copy of the document was placed in the folder of each complaint.

| | | | In addition, USPP withheld the name of the EEO Specialist listed as the point of contact on the Acceptance Letter. Releasing this individual's title sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the EEO Specialist is a relatively low-ranking DOI employee only negatively impacts the officer's privacy interest and has a de minimus public benefit. |
|---|---|---|---|
| 15 | TPB-18-0367, Breton v. Park Police, DC Claim, Ex. Force, 2018<br>File Contains<br>• FTCA Disposition Memo<br>• Judgment Fund Voucher for Payment<br>• Report and Recommendation for Settlement Memo by Claims Specialist<br>• Claims Worksheet | 1-3,7-13,15-17 (b5 & b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the use of force complaint against an officer. Additionally, the employee's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department. More specifically, the USPP has redacted<br>• date of accident (box 6) - USPP will not release the date of the accident. Releasing the date of the accident would expose the accident in question and will allow a fishing expedition. The dates are redacted to protect the privacy of the claimant.<br>• description (box 8) - USPP will not release the claimants name nor the date of the incident. USPP released the description of the incident however, withheld the claimant's prior medical history. Releasing the claimant prior medical history is clearly an invasion of the HIPPA law.<br>• injury (box 10) - USPP will not release the claimant's medical history as such a release would likewise violate the HIPPA.<br>• witness name (box 11) - Due to personal privacy USPP is not willing to release the names of the witnesses. Releasing the name of the witnesses is clearly an unwarranted invasion of personal privacy. The public interest in knowing the name of the witness is low in contrast to the witness's interests in personal privacy.<br>• Description, paragraph 7: The dates and names are redacted to protect the privacy of the claimant. The public interest in knowing the precise day and month of when the claimant went on unpaid leave is low in contrast to the claimant's interests in personal privacy. |

| | | | |
|---|---|---|---|
| | | | • Paragraph 9: Name of Sergeant involved - Due to personnel/personal privacy USPP will not release the name of the sergeant involved. Releasing the rank of the officer involved sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the sergeant who is still employed by the USPP and is a relatively low-ranking law enforcement officer, only negatively impacts the officer's privacy interest and has a de minimus public benefit. Additionally, no court ever found that the allegations were true.<br>• Name of officer involved - Due to personnel/personal privacy USPP will not release the name of the officer involved. Releasing the rank of the officer involved sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the officer who is still employed by the USPP and is a relatively low-ranking law enforcement officer, only negatively impacts the officer's privacy interest and has a de minimus public benefit. Additionally, no court ever found that the allegations were true.<br><br>Pursuant to 5 U.S.C. § 552(b)(5), redactions were made to memos drafted by attorneys to provide litigation risk analysis for a client. The redactions are limited to the portions of the memos reflecting the attorney's legal analysis on the strength and weakness of the claim.<br><br>We also recognize that in our initial release, the claimant's name may have been inadvertently released. Under the Privacy Act of 1972 and FOIA exemptions 6 and 7(c), the name should be treated as redacted. We ask that you destroy any copy referencing the claimant and not disseminate or attempt to contact the person. |
| 16 | Tort Ortho<br>File Contains<br>• FTCA Claims Settlement Offer Letter<br>• Judgment Fund Voucher for Payment | 1,2,6-9 (b5 & b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the their FTCA claim. Additionally, the claimant's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department. |

| | • Memorandum from Claims Specialist | | Pursuant to 5 U.S.C. § 552(b)(5), redactions were made to memos drafted by attorneys to provide litigation risk analysis for a client. The redactions are limited to the portions of the memos reflecting the attorney's legal analysis on the strength and weakness of the claim.<br><br>Due to personnel/personal privacy USPP withheld the name of the officer involved. Releasing the rank of the officer (detective) involved sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the detective who is still employed by the USPP and is a relatively low-ranking law enforcement officer, only negatively impacts the officer's privacy interest and has a de minimus public benefit. Additionally, no court ever found that the allegations were true. |
| 17 | Tort Taxicab<br>File contains<br>• FTCA Claims Settlement Offer Letter<br>• Claims Worksheet<br>• Standard Form 95 | 3-5 (b5 & b6) | Pursuant to 5 U.S.C. § 552(b)(6), USPP withheld the personal information regarding the identity of the claimant as release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the their FTCA claim. Additionally, the claimant's privacy interest in this information outweighs the public interest in its release as the information that was withheld does not shed light on the activities or operations of the Department.<br><br>Pursuant to 5 U.S.C. § 552(b)(5), redactions were made to memos drafted by attorneys to provide litigation risk analysis for a client. The redactions are limited to the portions of the memos reflecting the attorney's legal analysis on the strength and weakness of the claim.<br><br>Due to personnel/personal privacy USPP withheld the name of the officer involved. Releasing the rank of the officer (detective) involved sufficiently satisfies the public's interest in knowing more about case. Releasing the name of the detective who is still employed by the USPP and is a relatively low-ranking law enforcement officer, only negatively impacts the officer's privacy interest and has a de minimus public benefit. Additionally, no court ever found that the allegations were true. |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HUMAN RIGHTS DEFENSE CENTER,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-01502-TSC |
| | ) | |
| **UNITED STATES PARK POLICE,** | ) | |
| Defendant. | ) | |
| | ) | |

## Human Rights Defense Center's Opposition to United States Park Police's Motion for Summary Judgment and Cross-Motion for Summary Judgment

This case is a narrow FOIA dispute. The Human Rights Defense Center has decided to concede the EEO redactions and only challenges redactions in three remaining documents. FOIA Exemption 6 does not support these redactions because they do not prevent a clearly unwarranted invasion of personal privacy. HRDC also opposes the Park Police's attempt to claw back previously released information.

### Factual History of HRDC's FOIA Request and USPP's Redactions

HRDC—which was previously named Prisoners' Legal News, after its flagship publication— has spent the last thirty years dedicated to public education, prisoner education, advocacy, and outreach to support the rights of prisoners and to further basic human rights. To accomplish its mission, it gathers information from governmental entities around the country and publishes the

1

information in its journals and on its websites. *See* Declaration of Paul Wright ("Wright Decl.") ¶¶ 2-4; *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 19 (D.D.C. 2006) (holding that Prison Legal News was entitled to a FOIA public-interest fee waiver for a request seeking settlements and judgments paid by the Federal Bureau of Prisons).

As part of its ongoing reporting, HRDC submitted a FOIA request to the U.S. Park Police. *See* Wright Decl. ¶ 3; Defendant's Statement of Material Facts as to which there is No Genuine Issue [ECF 23-2] ("Def's SMF") ¶ 1. The parties have worked cooperatively to narrow the issues. Upon review of the Defendant's motion, HRDC has decided not to challenge the redactions on the EEO claims. Wright Decl. ¶ 5. Now, all that is left for the Court to decide is the propriety of redacting the identities of claimants and tortfeasors in three tort claims:

1. An assault by a Park Police sergeant on a woman visiting the Lincoln Memorial. Park Police Internal Affairs Unit sustained the woman's complaint, and the Park Police ultimately settled her claim for $17,500.00. Wright Decl. ¶ 8.[1]

2. Injuries suffered by a claimant when the Park Police SWAT team forcibly entered a residence, knocked claimant to the floor, twisted her arm, and tore her rotator cuff. The Park Police paid $13,500.00 to settle this claim. Wright Decl. ¶ 9.

3. The unconstitutional ejection of a member of the public from a meeting of the D.C. Taxicab Commission. The Park Police paid $15,000.00 to settle this claim. Wright Decl. ¶ 10. The Park Police previously agreed to release the name of the claimant, but has not

---

[1] USPP's *Vaughn* index claims that release of certain medical-related information in this document would violate the Health Insurance Portability and Accountability Act. While HRDC is not seeking access to that information, it notes that the Park Police is not a covered entity under HIPAA, *See* 45 C.F.R. § 160.103. This overreach is emblematic of the Park Police's reflexive attempt at avoiding transparency.

provided the information and defends the propriety of the redaction in its Motion for

Summary Judgment. *See id.* Exhibit A to Wright Decl., p. 7  ("USPP will unredact

because this is public information.").

## Legal Argument

**I.      A government agency bears the burden of justifying withholdings in a FOIA
summary judgment motion.**

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Courts must grant

summary judgment when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In a FOIA case, the agency bears the burden to justify nondisclosure. 5 U.S.C. § 552(a)(4)(B).

*See, e.g.*, U.S. *DOJ v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 755, 109 S. Ct. 1468, 103

L. Ed. 2d 774 (1989). The government "bears the burden of showing that there is no genuine

issue of material fact, even when the underlying facts are viewed in the light most favorable to the

requester." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

The agency must sustain its burden by submitting detailed affidavits or declarations that

identify the records at issue and show why they fall under the claimed exemptions. *See Summers v.

DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir.

1973). The standard USPP points to—that the defending agency must only provide a "logical" or

"plausible" excuse for non-disclosure—is limited to issues involving national security and

3

reference to classified information. *See Wolf v. CIA*, 473 F.3d 370, 374-74 (D.C. Cir. 2007). But in a case about run-of-the-mill documents, "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992.

Courts review agency FOIA decisions de novo, and may examine the contents of disputed records *in camera* to determine whether the agencies should disclose them. 5 U.S.C. § 552(a)(4)(B).

## II. Exemption 6, the ground the USPP attempts to stand on, does not shield disclosure.

The Freedom of Information Act arose from concerns over the "mushrooming growth of Government secrecy." H.R. Rep. No. 89-1497, at 2 (1966). The Supreme Court has recognized that FOIA represents the general philosophy of full agency disclosure unless the information is exempt under delineated statutory language. *See U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494, 114 S. Ct. 1006, 127 L. Ed. 2d 325 (1994) ("[D]isclosure, not secrecy, is the dominant objective of FOIA." Id., quoting Dep't. of Air Force v. Rose, 425 U.S. 352, 361 (1976)). The statute serves as a means for citizens to know "what their government is up to." *U.S. DOJ*, 489 U.S. at 773, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (citations omitted). "This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish, 54*1 U.S. 157, 171-72, 124 S. Ct. 1570, 1580 (2004)

The Park Police claims support in FOIA Exemption 6 for all the redactions at issue. That exemption permits withholding of "personnel and medical files and similar files the disclosure of

which would constitute a *clearly unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). The primary purpose of this exemption is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (rejecting claim that settlement agreements are categorically exempt under Exemption 6) (quoting *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1124 (D.C. Cir. 2004)). Exemption 6 "does not categorically exempt individuals' identities." *Id.* (citation omitted).   Rather, "[t]he scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996).

To decide what constitutes a "clearly unwarranted privacy invasion," a court should "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (internal quotation marks omitted). The burden remains on the government to justify any withholdings. *Id.*

A defendant must specifically describe the interest its withholding will protect; formulaic recitations cannot carry the day. *Stonehill v. IRS*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008) ("In short, the government offers no explanation as to why disclosure of this particular agent's name would cause embarrassment, undue harassment, etc."), *aff'd*, 558 F.3d 534, 385 U.S. App. D.C. 18 (D.C. Cir. 2009).[2]

---

[2] Exemption 6 stands in "marked contrast" to Exemption 7(c). *Nat'l Archives & Records Admin.*, 541 U.S. at 165-66, 124 S. Ct. at 1580. Exemption 6 allows withholding only where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6)**.** Exemption 7(c), not relied on here, allows withholding when a disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c). Courts must heed the narrower reach of Exemption 6—it is the considered judgment of Congress not a "mere accident in drafting." *Nat'l Archives & Records Admin.*, 541 U.S. at 165-66, 124 S. Ct. at 1577. The USPP has not met this high threshold for failure to release the requested unredacted information.

USPP identifies no specific privacy interest that would be violated by disclosing the names of the individuals identified in any of the claims here, let alone substantial ones. Exemption 6 protects only *substantial* privacy interests, which arise only when information divulges something revealing or likely to lead to "embarrassment," "disgrace," or "practical disabilities, such as loss of employment or friends." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 377 (1976); *see Hooker v. U.S. HHS*, 887 F. Supp. 2d 40, 60-61 (D.D.C. 2012) ("merely asserting in conclusory terms that disclosure of [] information would constitute an invasion of privacy … failed to articulate a substantial privacy interest"). Instead, the Park Police describes every claimed interest exactly the same way on the *Vaughn* index. There is no examination of the specific nature of the claims or attempt at describing what sort of *substantial* privacy interest might be present.

Nor is there any weighing of the public's right to know what its government, especially its armed agents, are up to. The Park Police's attempt to withhold the identity of its personnel who committed tortious wrongdoings which prompted a payout from public funds conflicts with the very purpose of FOIA. The statute exits "to permit the public to decide for itself whether government action is proper." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 264 (D.C. Cir. 1982). It follows that alleged governmental bad actors cannot claim a sufficiently significant privacy interest in their identity automatically, as USPP appears to assert here. That is why federal government employees' privacy interests are diminished where they have been investigated for misfeasance relating to the performance of their official duties. *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 568 (1st Cir. 1992); *cf. ACLU v. U.S. DOJ*, 655 F.3d 1, 7 (D.C. Cir. 2011) ("disclosure of … public pleas is at the lower end of the privacy spectrum.").

Identifying information facilitates investigations and research that enables HRDC and the public to understand "what their government is up to." *Reporters Comm.*, 489 U.S. at 773. Here, the public has a strong interest in knowing exactly which officials were involved in an allegedly wrongful conduct, like excessive force, which led to payment of public funds disclosed in the Settlement. As the Court of Appeals for the D.C. Circuit held in an earlier FOIA case in which HRDC sought settlement agreements from the Bureau of Prisons:

> Identifying employees who repeatedly engage in tortious or discriminatory conduct will shed light on an agency's performance of its statutory duties. This, in turn, will further the public interest in ensuring that disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner.  It may also help root out the misuse of public funds, an interest typically favoring disclosure.

*Samuels*, 787 F.3d at 1151 (citations omitted). Access to the identities of the individuals named in these documents will reveal whether the officials accused are multiple offenders, how much taxpayer money has been used to resolve claims against those individuals, and whether they continue to be employed by the USPP. Knowing which police officers have committed tortious job-related conduct might be the quintessential public interest.[3]

---

[3] Unfortunately, recent events have only clarified the public's interest in monitoring use of force complaints against Law Enforcement Officers. Derek Chauvin, Garrett Rolfe, and Jason Van Dyke all had use of force complaint histories before they killed someone while on duty. *See, e.g.*, Derek Hawkins, "Officer charged in George Floyd's death used fatal force before and had history of complaints," *The Washington Post* (May 29, 2021 6:47 p.m. EDT), https://www.washingtonpost.com/nation/2020/05/29/officer-charged-george-floyds-death-used-fatal-force-before-had-history-complaints/; Elisha Fieldstadt, "Officer who shot Rayshard Brooks disciplined for use of force with firearm in 2016," NBC News (June 18, 2020, 1:43 PM EDT), https://www.nbcnews.com/news/us-news/officer-who-shot-rayshard-brooks-disciplined-use-force-firearm-2016-n1231163; Chuck Goudie, "At least 18 complaints filed against CPD Officer Jason Van Dyke, now charged with murder," ABC7 Eyewitness News (Nov. 24, 2015), https://abc7chicago.com/jason-van-dyke-vandyke-chicago-cop-charged-laquan-mcdonald/1098265/.

JA 053

### III.    FOIA Does Not Allow an Agency to Claw Back Information

The Park Police has asked HRDC to destroy and agree to not report on two records in which it had released the claimant's names—Document 7 (an EEO claim) and Document 15 (a tort claim). Wright Decl. ¶ ¶ 7-8. The government provides no legal support for this request. Unlike Federal Rule of Civil Procedure 26(b)(5)(B) governing discovery, FOIA contains no claw back provision. *See Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009) (distinguishing the two processes).

The request to claw back the claimant's identity in Document 15 is particularly unsupportable. USPP titled the PDF using the claimant's name: "Brenton v. Park Police." *See* Exhibit B to Wright Decl., p. 6. The name is even repeated in the Vaughn index at p. 13. The agency cannot now say it sought to protect the claimant's privacy.

In any event, there are no grounds under which to request these claw backs. Any such attempt to prevent a member of the news media from publishing what it knows should be considered an unconstitutional prior restraint and subject to a high bar. *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971).

### Conclusion

An agency acts not just through official policy pronouncements, but through its people. Revealing the redacted identities in the three documents at issue will allow the HRDC to continue its reporting on what the government is up to—in this case, which armed agents of the state are hurting citizens.

JA 054

This Court should order the USPP to release the redacted identities in the three tort claim documents. Nor should it allow it to claw back information it has already released.

Dated: April 26, 2021

Respectfully submitted,

*/s/ Deborah M. Golden*
Deborah M. Golden
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com

Counsel for Human Rights Defense Center

JA 055

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HUMAN RIGHTS DEFENSE CENTER,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-01502-TSC |
| | ) | |
| **UNITED STATES PARK POLICE** | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

## PLAINTIFF HUMAN RIGHTS DEFENSE CENTER
## STATEMENT OF GENUINE ISSUES

———————————————————————

Under Local Civil Rule 7(h), Plaintiff Human Rights Defense Center provides the following response to Defendant's Statement of Material Facts, ECF No. 23-2. Generally, there is no disagreement about which documents were produced or what issues remain. HRDC disputes the legal propriety of specific redactions.

**Paragraphs 1-4:** Plaintiff does not dispute these facts.

**Paragraph 5:** Plaintiff disputes the legal conclusion that release of the redacted information would constitute a clearly unwarranted invasion of personal privacy under Exemption 6.

**Paragraphs 7-14:** Plaintiff does not dispute these facts.

1

JA 056

**Paragraph 15:** Plaintiff disputes the legal conclusion that the privacy interests in the identities of the EEO claimants outweigh the public interest in the information and that light that they would shed on the activities of the USPP.

**Paragraph 16:** Plaintiff does not dispute that the tort claims in documents 15-17 involve claims of personal injury at the hands of Park Police employees. Plaintiff disputes that none of the allegations were ever proven. Wright Decl. ¶ 8.

**Paragraph 17:** Plaintiff disputes the legal conclusion that the privacy interests in the identities of the tort claimants and tortfeasors outweigh the public interest in the information and that light that they would shed on the activities of the USPP.

**Paragraph 18:** Plaintiff does not dispute that the searches for documents were adequate and reasonable. Plaintiff disputes the legal conclusion that the redactions were all proper under Exemption 6.

**Paragraphs 19-21:** Plaintiff disputes the legal conclusion that the redactions were all proper under Exemption 6.

**Paragraph 22:** Plaintiff disputes the legal conclusion that it should destroy a produced document.

**Paragraphs 23-24:** Plaintiff does not dispute these facts.

Further, Human Rights Defense Center submits the following as further material facts as to which there is no genuine issue.

JA 057

1. Document No. 15 includes a settlement of excessive force by a USPP officer for $17,500.00. The document notes that the claim was sustained by an Internal Affairs Unit investigation. Wright Decl. ¶ 8.

2. Document No. 16 includes a settlement of excessive force by a USPP officer for $13,500.00. Wright Decl. ¶ 9.

3. Document No. 17 includes a settlement of unconstitutional detention by the USPP for $15,000.00. Wright Decl. ¶ 10.

4. The USPP had agreed to unredact the identity of the claimant in Document No. 17. Exhibit A to Wright Decl., p. 7.

5. The USPP repeatedly referred to the name of the claimant in Document No. 15, even naming the PDF "Brenton v. Park Police," and repeating that title in the *Vaughn* index. Exhibit B to Wright Decl., p. 6; *Vaughn* index p. 13.

Dated: April 26, 2021

Respectfully submitted,

*/s/ Deborah M. Golden*
Deborah M. Golden
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com

Counsel for Human Rights Defense Center

JA 058

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER,    )
        Plaintiff,    )
            )
        v.    )    Civil Action No. 1:19-cv-01502-TSC
            )
UNITED STATES PARK POLICE    )
        Defendant.    )
_____)

## DECLARATION OF PAUL WRIGHT

I, Paul Wright, declare as follows:

1. I am the Executive Director of Human Rights Defense Center. I make this declaration based on personal knowledge and my review of HRDC's regularly maintained contemporaneous business records.

2. HRDC is a nonprofit, IRS section 501(c)(3) organization, incorporated in the state of Washington and with principal offices in Lake Worth, Florida. HRDC was founded in 1990 as Prisoners' Legal News, and adopted its current name in 2009.

3. As an ongoing project, HRDC has investigated and reported on the practices and approaches various government agencies take when settling claims and lawsuits. As part of that project, HRDC has made public records under state and federal laws for settlement agreements and other documents revealing how agencies resolve claims against them.

1

JA 059

HRDC has submitted FOIA requests to many federal agencies, including the Drug

Enforcement Agency, the Federal Bureau of Prisons and (in this case) United States Park

Police. HRDC has made similar requests under state public records laws to state and local

agencies.

4. HRDC seeks claims settlement and resolution information in part because, in our

experience, analysis of settlement agreements can disclose mismanagement, abusive

personnel, or other chronic problems within an agency.

5. The settlement agreements and other records produced by USPP in response to HRDC's

FOIA request contain many redactions, including of party names, addresses, and medical,

financial account, and similar personal information. HRDC does not concede that all of

these redactions are proper. But HRDC is only contesting the redactions of claimants'

identities in documents 1-14 and claimants' and tortfeasors' identities in documents 15-17.

6. I have reviewed the documents provided, and can glean the following information.

7. Document No. 7 includes a settlement of an EEO claim providing for the USPP detective

to be paid $50,000, to have the accused removed from her chain of command and sent to

remedial training. I understand that the identity of this claimant is subject to a claw-back

request from the Park Police. While HRDC does not agree that it has any legal obligation

to destroy information released by the government, it has agreed not to distribute this

document until the court rules.

8. Document No. 15 includes a settlement of excessive force by a USPP officer for

$17,500.00. The document notes that the claim was sustained by an Internal Affairs Unit

investigation. I understand that the identity of this claimant is subject to a claw-back

2

request from the Park Police. While HRDC does not agree that it has any legal obligation

to destroy information released by the government, it has agreed not to distribute this

document until the court rules.

9.  Document No. 16 includes a settlement of excessive force by a USPP officer for

    $13,500.00.

10. Document No. 17 includes a settlement of unconstitutional detention by the USPP for

    $15,000.00.

11. In addition to the documents attached to as exhibits to the Tyler Declaration, ECF 23-3,

    HRDC received an email from in which USPP indicated it did agree to release the name

    of the claimant in Document 17, attached as Exhibit A to this declaration, and a final

    determination letter from the USPP, dated June 30, 2020, attached as Exhibit B to this

    declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 26, 2021.

_____

Paul Wright

Executive Director, Human Rights Defense Center

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**HUMAN RIGHTS DEFENSE CENTER**,

Plaintiff,

v.

**UNITED STATES PARK POLICE**,

Defendant.

Civil Action No. 19-1502 (TSC)

---

## MEMORANDUM OPINION

Plaintiff Human Rights Defense Center ("HRDC") sued the United States Park Police ("Park Police") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., seeking to compel disclosure of records responsive to requests submitted by HRDC to Park Police. Compl., ECF No. 1.  The parties have cross-moved for summary judgment.  *See* ECF Nos. 23, 25.  For the reasons set forth below, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 23, and DENY Plaintiff's Motion for Summary Judgment, ECF No. 25.

## I.      BACKGROUND

### A.  HRDC's FOIA Request

HRDC is an organization "dedicated to public education, prisoner education, advocacy, and outreach to support the rights of prisoners and to further basic human rights."  Compl. at ¶ 5.  HRDC publishes and distributes books, magazines, and law journals about related topics, including prisons, jails and other detention facilities, prisoners' rights, and court rulings.  *Id.* at ¶ 7.  Park Police is a law enforcement agency with jurisdiction in all federal parks.  *Id.* at ¶ 12.  Park Police officers have arrest authority in California, Maryland, New Jersey, New York, Virginia, and Washington, D.C.  *Id.* at ¶ 13.

On December 12, 2018, HRDC sent Park Police a FOIA request for records of litigation against Park Police. *Id.* at ¶ 14. Specifically, HRDC requested:

> "1. Records, regardless of physical form or characteristics, sufficient to show for all claims or lawsuits brought against the U.S. Park Police and/or any of its agents or employees in which payments totaling $1,000 or more were disbursed from January 1, 2010 to the present:
> - The name of all parties involved;
> - The case or claim number;
> - The jurisdiction in which the case or claim was brought (e.g., U.S. District Court for the District of Columbia, D.C. Superior Court, etc.);
> - The date of resolution;
> - The amount of money involved in the resolution and to whom it was paid.
>
> 2. For each case or claim detailed above:
> - The complaint or claim form and any amended versions;
> - The verdict form, final judgment, settlement agreement, consent decree, or other paper that resolved the case." *Id.* at ¶ 15.

Having received no response to the December 12, 2018 FOIA request, HRDC sent the same request to Park Police via the Department of the Interior's online portal. *Id.* at ¶ 17. On March 4, 2019, Charis Wilson, a National Park Service FOIA Officer, sent HRDC an email indicating that the March 1, 2019 FOIA request had been received and was routed for processing. *Id.* at ¶ 19. When HRDC filed its complaint on May 23, 2019, Park Police had not yet responded to the FOIA request. *Id.* at ¶ 21.

**B.  Negotiations**

On September 5, 2019, Park Police filed an answer, and the court ordered the parties to meet and confer. Answer, ECF No. 9; 9/5/2019 Minute Order. Between October 7, 2019 and September 28, 2020, the parties submitted several Joint Status Reports. ECF Nos. 11,12, 14–18. As a result of the parties' meet and confer discussions, HRDC narrowed the scope of its FOIA request as follows:

- (a) excluding all records of an automobile accident (personal or property injury) under $50,000;
- (b) excluding all records of Equal Employment Opportunity ("EEO") claims premised on worker's compensation or pay calculation benefits (but including EEO discrimination claims); and
- (c) excluding any category of claim where the relief sought or rendered is under $3,000.  *See* ECF No. 11 at ¶ 4.

On September 13, 2019, Park Police released all records responsive to HRDC's modified request, except for EEO records.  9/28/2020 Joint Status Report, ECF No. 18 at ¶ 2.  Park Police asserted that it "completed its search and review of relevant EEO records and produced all non-exempt EEO records to HRDC by letter dated October 18, 2019."  *Id.*  In addition, it stated that it "inadvertently released two claimants' names" and asked HRDC to agree to destroy any copies referencing the claimants and not disseminate their names.  Def.'s Reply at 6, ECF No. 27; Decl. ¶ 29.

When the parties filed their most recent joint status report, they indicated that they had exhausted efforts to narrow the areas of disagreement through the meet and confer process and the remaining issues required briefing and court resolution.  9/28/2020 Joint Status Report ¶ 7.  By the time Park Police moved for summary judgment, the parties had narrowed the questions concerning withholdings and the issues for summary judgment briefing to the following: (a) the names of claimants withheld with respect to fourteen EEO complaints and three tort matters pursuant to Exemption 6, including the inadvertent disclosure of a claimant's name that Park Police contends should be subject to a claw back; and (b) the names of police officers withheld pursuant to Exemption 6 with respect to the three tort matters.  Def.'s Mot. for Summ. J. at 3.  After reviewing Park Police's motion, HRDC decided not to challenge the redactions on the EEO claims.  Pl.'s Cross Mot. for Summ. J. at 2.

Now the court must decide whether, under Exemption 6, the government may redact the identities of claimants and police officers in three tort claims: 1) an assault by a Park Police sergeant on a visitor to the Lincoln Memorial, which resulted in a $17,500 settlement; 2) a Park Police SWAT team's forcible entry into a residence, which resulted in a $13,500 settlement; and 3) the ejection of a member of the public from a D.C. Taxicab Commission meeting, which resulted in a $15,000 settlement. *Id.* The court must also decide whether to order HRDC to return the two inadvertently disclosed records. *Id.* at 8.

## II.   LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). FOIA cases are typically and appropriately resolved on motions for summary judgment. *See Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Agencies bear the burden of justifying the withholding of any records, as FOIA requires a "strong presumption in favor of disclosure." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The court therefore analyzes all underlying facts and inferences in the light most favorable to the FOIA requester, even where the requester has moved for summary judgment. *See Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999).

In a FOIA case, a district court reviewing a motion for summary judgment conducts a *de novo* review of the agency's assertion of any of FOIA's statutory exemptions to withhold requested information, 5 U.S.C. § 552(a)(4)(B), and the responding federal agency bears the

JA 065

burden of showing that the requested records fall within the exemption claimed.  *See Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021).

## B. FOIA

FOIA was enacted to allow public access to government documents.  *See Waterman v. IRS*, 61 F.4th 152, 156 (D.C. Cir. 2023).  Although the statute favors disclosure, it also exempts nine categories of records from the general presumption of mandatory disclosure for confidentiality and privacy reasons.  *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220-21 (1978); 5 U.S.C. § 552(b).

In cases regarding the applicability of certain FOIA exemptions, agencies may rely on supporting declarations that are reasonably detailed and non-conclusory.  *See*, *e.g.*, *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."  *ACLU*, 628 F.3d at 619.  But a motion for summary judgment should be granted in favor of the FOIA requester where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption."  *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

## III.    ANALYSIS

### A. **FOIA Exemption 6**

Exemption 6 permits an agency to withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion

of personal privacy." 5 U.S.C. § 552(b)(6).  The court must pursue two lines of inquiry to

determine whether Park Police has met its burden to show that the information HRDC seeks is

properly withheld under Exemption 6.  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224,

1228 (D.C. Cir. 2008).  First, it must decide whether the withheld information constitutes

personnel, medical, or "similar" files covered by Exemption 6.  *Id.*  If it does, the court must

determine whether disclosure "would constitute a clearly unwarranted invasion of personal

privacy."  *Id.*  Second, the court must "balance the private interest involved (namely, the

individual's right of privacy) against the public interest (namely, the basic purpose of [FOIA],

which is to open agency action to the light of public scrutiny)."  *Horowitz v. Peace Corps*, 428

F.3d 271, 278 (D.C. Cir. 2005).

      Under Exemption 6, a privacy interest must be "substantial, as opposed to *de minimis*."

*Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554

F.3d 1046, 1050 (D.C. Cir. 2009) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d

873, 874 (D.C. Cir. 1989)).  The Supreme Court has clarified that Exemption 6 is "directed at

threats to privacy more palpable than mere possibilities," *Dep't of Air Force v. Rose*, 425 U.S.

352, 381 n.19 (1976), and the D.C. Circuit requires the responding agency to show a "substantial

probability that the disclosure will lead to the threatened invasion."  *People for the Am. Way*

*Found. v. Nat'l Park Serv.*, 502 F. Supp. 2d 284, 304 (D.D.C. 2007) (quoting *Nat'l Ass'n of*

*Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989)); s*ee also Stonehill v. IRS*, 534

F. Supp. 2d 1, 12 (D.D.C. 2008) (ordering release of an IRS agent's name because defendant

only provided generic and conclusory explanations as to why it should be withheld); *Hooker v.*

*U.S. HHS*, 887 F. Supp. 2d 40, 60–61 (D.D.C. 2012) ("By merely asserting in conclusory terms

that disclosure of [ ] information would constitute an invasion of privacy ... defendants have failed to articulate a substantial privacy interest").

Courts consider the context of the requested information in determining the level of privacy interest. *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991) (emphasizing that when courts weigh whether to disclose a list of names they should consider "the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue."). In *Ray*, the Supreme Court found a substantial privacy interest in the names of Haitian nationals who cooperated with a federal investigation of Haiti because disclosure could subject them to retaliatory action and "embarrassment in their social and community relationships." 502 U.S. at 176.

The "clearly unwarranted" language requires a "balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal citations and quotation marks omitted). "The only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know what their government is up to.'" *Id*. (quoting *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)).

Courts have generally found that government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities that outweighs the public interest because disclosure "could subject them to embarrassment or harassment in the conduct of their official duties and personal affairs." *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (finding that Exemption 6 protected FBI employees' names because disclosure

could subject them to harassment and plaintiff did not articulate any public interest that would be served by disclosure); *see also Judicial Watch, Inc. v. Food & Drug Admin*., 449 F.3d 141, 152–53 (D.C. Cir. 2006) (finding that Exemption 6 permitted the FDA to withhold the names of employees who approved an abortion drug, explaining disclosure might subject employees to abortion-related violence and would not reveal whether the drug had health risks);.  Likewise, courts have held that private citizens' privacy interest in protecting their identities outweighs the public's interest in disclosure.  *See Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 145 n.4 (D.D.C. 2007) (finding that any public interest in complaints to the FTC "is not fostered by disclosure of information about private citizens that is accumulated in [FTC] files but that reveals little or nothing about [the] [A]gency's own conduct."); *Kidd v. Dep't of Justice*, 362 F.Supp.2d 291, 297 (D.D.C. 2005) ("Providing personal identifying information commonly found in constituent letters [to Congresspersons] does not advance the purpose of FOIA and, as such, may be withheld from FOIA requests."); *Voinche v. FBI*, 940 F.Supp. 323, 329–30 (D.D.C. 1996) ("There is no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities of ... private citizens who wrote to government officials.").

Here, the threshold inquiry is satisfied because Park Police seeks to withhold the names of claimants and police officers involved in three settlements.  *See Judicial Watch, Inc.*, 449 F.3d 141 at 152 (finding that personnel, medical, or "similar" files covered by Exemption 6 can "include tiny bits of personal information, such as names and addresses").  It is also clear that both the claimants and officers possess a privacy interest in their identities.  *See Moore*, 601 F. Supp. 2d at 14; *Voinche*, 940 F.Supp. at 329-30.

Park Police argues that disclosing the names would constitute "an unwarranted invasion of personal privacy" for both claimants and officers because of the nature of the tort claims, all of which appear to involve officers using force on private citizens.  *See* Vaughn Index at 13–15, ECF No. 23-8.  They contend that disclosing the claimants' names could result in embarrassment, harassment, and undue public attention.  Def.'s Mot. for Summ. J. at 9.  While Park Police does not explain how these potential threats to privacy are "more palpable than mere possibilities," *Rose*, 425 U.S. at 381 n.19, the court acknowledges that there well may be some members of the public who seek to harm and/or harass those who bring claims against police officers.

Likewise, Park Police argues that disclosing the accused officers' names could also result in threats to their personal privacy but does not explain how these threats are "more palpable than mere possibilities."  *Id*.  Unlike in *Judicial Watch*, Park Police does not identify any harm or violence the officers will face as a result of disclosure.  449 F.3d at 152–53.  However, the court acknowledges that the allegations against the officers were never proven in a judicial proceeding, and that disclosing their names may lead the public to infer that the officers engaged in wrongdoing, which could result in retaliation, embarrassment, harassment, and undue public attention.  Consequently, in applying the balancing test, the court will assume that disclosure of both the claimants' and officers' names would be an invasion of personal privacy.

HRDC argues that the public has an interest in knowing which claimants were hurt by police officers and received compensation in settlements.  *See* Pl.'s Cross Mot. for Summ. J. at 4, ECF 25.  Park Police counters that the alleged public interest is *de minimis* because "the settlements are relatively small, no allegations have been proven, and all other information related to the claims has been provided."  Def.'s Reply at 6.  The court finds that the claimants'

privacy interest in protecting their identities outweighs the alleged public interest because
disclosing the names would reveal little or nothing about Park Police's conduct and would not
assist the public in better understanding the workings of the agency.  *See Carter, Fullerton &
Hayes LLC*, 520 F. Supp. at 145 n.4; *Voinche*, 940 F.Supp. at 329–30.

HRDC further argues that the public has a strong interest in knowing exactly which
officials were involved in allegedly wrongful conduct, such as excessive force.  *See* Pl.'s Cross
Mot. for Summ. J. at 7.  Park Police responds that because the accused officers are "relatively
low-ranking law enforcement officer[s]," disclosure would negatively impact the officers'
privacy interests and have only a *de minimis* public benefit, especially because the allegations
against them were not proven.  Vaughn Index at 13–15.  Park Police also noted that the officers
were still employed at the Park Service when it submitted the Vaughn index in 2021.  *Id.*

The D.C. Circuit has held that identifying employees who repeatedly engage in tortious
or discriminatory conduct will shed light on an agency's performance of its statutory duties,
further the public interest in ensuring that disciplinary measures imposed are adequate, hold bad
actors accountable, and help root out misuse of public funds.  *Prison Legal News*, 787 F.3d at
1151 (internal citations and quotations omitted) (finding that an agency did not provide sufficient
explanations for applying Exemption 6, declining to engage in balancing test, and remanding
case to the district court).  HRDC argues that identifying the police officers involved in these tort
claims will reveal whether the officers are repeat offenders, how much taxpayer money has been
used to resolve the claims against them, and whether they continue to be employed by Park
Police.  *See* Pl.'s Cross Mot. at 7.  They point out that several police officers in other cities who
had use of force complaint histories later killed private citizens while on duty.  *Id.* (citing Derek
Chauvin, Garrett Rolfe, and Jason Van Dyke, who were all charged with fatally shooting black

citizens).  Yet the tort incidents at issue here, which did not result in fatalities, are not comparable to the police-involved murders HRDC cites.  In addition, most of the information HRDC believes will be revealed by disclosing the officers' names has already been disclosed.  For example, Park Police disclosed the amount of each settlement, the relative low rank of the officers, and that the officers are still employed with the agency.  Vaughn Index at 13–15.  This information on its own, without the officers' names, fulfills the basic purpose of FOIA, which is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB*, 437 U.S. at 242.  Thus, the court concludes that the officers' privacy interest in protecting their identities outweighs the public's interest in disclosure, which would reveal little more about Park Police's conduct than what has already been disclosed and would not assist the public in better understanding the workings of the agency.  *See Carter, Fullerton & Hayes LLC*, 520 F. Supp. at 145 n.4; *Voinche*, 940 F.Supp. at 329–30.

**B.  Claw Back**

Park Police claims it inadvertently disclosed the names of two claimants and seeks to claw back the names, demanding that HRDC return and not disseminate documents containing the names.  *See* Def.'s Reply at 6.  FOIA does not provide for the compelled return or destruction of inadvertently produced documents.  *See generally* 5 U.S.C. § 552.  "Nevertheless, federal courts have long 'understood that certain implied powers must necessarily result to our Courts of justice from the very nature of their institution,' which 'are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Wilson v. Fed. Commc'ns Comm'n*, No. 21-CV-895-RMM, 2022 WL 4245485, at *5 (D.D.C. Sept. 15, 2022) (quoting *Chambers v. NASCO, Inc.*,

Page **11** of **12**

JA 072

501 U.S. 32, 43 (1991)).  Courts have used that implied power to bar dissemination of information inadvertently disclosed in FOIA proceedings, especially if the information is covered by an exemption.  *See, e.g.*, *Wilson*, 2022 WL 4245485 at *16 (ordering plaintiff not to disclose, disseminate, or make use of the inadvertent disclosure pending further briefing and resolution of the propriety of agency's withholding); *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 953 F. Supp. 400, 404 (D.D.C. 1996) (ordering plaintiff not to disseminate inadvertently disclosed information to "balance the scale").  A federal court's implied power remains "limited by the necessity giving rise to its exercise," however, and its use must be "a reasonable response to the problems and needs that provoke it."  *Degen v. United States*, 517 U.S. 820, 823–24, 829 (1996).

As discussed previously, the claimants' names are covered by Exemption 6, and there is no discernible public interest in having the names of private citizens disclosed.  Accordingly, the court will use its implied powers, as set forth in *Wilson*, to order HRDC not to disclose, disseminate, or make use of the claimants' names.

## IV.   CONCLUSION

For these reasons, the court concludes Park Police may withhold the claimants' names and the accused officers' names under Exemption 6.  The court will grant Defendant's Motion for Summary Judgment, ECF No. 23, and deny Plaintiff's Motion for Summary Judgment, ECF No. 25.

Date: August 29, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **HUMAN RIGHTS DEFENSE CENTER**, |
| Plaintiff, |
| v. |
| **UNITED STATES PARK POLICE**, |
| Defendant. |

Civil Action No. 19-1502 (TSC)

## <u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion, ECF No. 31,

Defendant's Motion for Summary Judgment, ECF No. 23, is hereby GRANTED and Plaintiff's

Cross Motion for Summary Judgment, ECF No. 25, is hereby DENIED.

Date: August 29, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

JA 074

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HUMAN RIGHTS DEFENSE CENTER
_____
                Plaintiff

            vs.                          Civil Action No. 19-1502-TSC

UNITED STATES PARK POLICE
_____
                Defendant

## NOTICE OF APPEAL

Notice is hereby given this  16th  day of  October  , 20 23   , that

the Human Rights Defense Center

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from

the judgment of this Court entered on the  29th  day of  August  , 20 23

in  favor of  the United States Park Police

against said  Human Rights Defense Center.


                                        /s/ Deborah M. Golden
                                   _____
                                       Attorney or Pro Se Litigant


(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil action must be filed within 30 days after the date of entry of judgment or 60 days if the United States or officer or agency is a party)


**CLERK**       Please mail copies of the above Notice of Appeal to the following at the addresses indicated:

THOMAS W. DUFFEY
Assistant United States Attorney
Civil Division
601 D Street, NW
Washington, D.C. 20530
(202) 252-2510
Thomas.duffey@usdoj.gov

JA 075