# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 24, 2024          Decided January 24, 2025

No. 23-5236

HUMAN RIGHTS DEFENSE CENTER,
APPELLANT

v.

UNITED STATES PARK POLICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01502)

———

*Jim Davy* argued the cause for appellant. With him on the briefs was *Deborah M. Golden*.

*Ryan P. Mulvey* was on the brief for *amicus curiae* Americans for Prosperity Foundation in support of appellant.

*Bruce D. Brown*, *Katie Townsend,* and *Adam A. Marshall* were on the brief for *amici curiae* Reporters Committee for Freedom of the Press, et al. in support of appellant.

*Keisha James* was on the brief for *amicus curiae* National Police Accountability Project in support of appellant.

2

*Maxwell A. Baldi*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Matthew M. Graves*, U.S. Attorney, and *Mark B. Stern*, Attorney.

Before: PILLARD and GARCIA, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: The Human Rights Defense Center, a non-profit news and advocacy organization focused on incarcerated people in the United States, filed a Freedom of Information Act request for information about legal actions against the United States Park Police. After the Park Police failed to respond to the request within the statutory period, Human Rights Defense Center brought this FOIA lawsuit. The Park Police eventually produced documents responsive to the FOIA request but withheld the names of officers involved in three tort settlements. It based those withholdings on FOIA Exemption 6, which protects from disclosure information that would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Center challenges that privacy assertion. The Park Police's document productions created a separate legal dispute by inadvertently disclosing information the agency had intended to withhold. In documents referencing cases by name, it failed to fully redact the names of one employment discrimination claimant and one tort claimant. The Park Police argued that the Human Rights Defense Center should be barred from using or disseminating the inadvertently disclosed information. The Center disagrees.

The district court ruled that the Park Police correctly withheld the officer names under Exemption 6. The court then

3

invoked its inherent authority to manage judicial proceedings as justification to issue a clawback order for the erroneously produced names. Those rulings were erroneous. By putting forth generic and conclusory justifications for its withholdings, the Park Police failed to satisfy its burden under Exemption 6 and the FOIA Improvement Act to show that release of the officer names would implicate a substantial privacy interest. And the district court's non-statutory remedy for the Park Police's inadvertent disclosures was not a valid exercise of inherent judicial authority because its primary purpose was to fill a perceived gap in the FOIA statute, not to protect the exercise of any core judicial authority. We therefore vacate the clawback order and remand for the release of the non-exempt officer names.

## I.

### A.

The Freedom of Information Act "commands that government agencies, 'upon any request for records . . . shall make the records promptly available to any person.'" *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quoting 5 U.S.C. § 552(a)(3)). Agencies may withhold from disclosure information that falls within one of the Act's nine enumerated exemptions. *See generally* 5 U.S.C. § 552(b). Those "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). This "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The burden is the same when the agency seeks to redact a portion of a document as when it seeks to withhold a document in its entirety. *Id.* Those principles serve

4

the overarching purpose of FOIA as a tool for citizens to know "what their Government is up to." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004) (quoting *U.S. DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Exemption 6 permits agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The "primary purpose" of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). The phrase "similar files" has been construed to include "detailed Government records on an individual which can be identified as applying to that individual." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146-47 (D.C. Cir. 2015) (quoting *Jud. Watch, Inc. v. DOJ*, 365 F.3d 1108, 1124 (D.C. Cir. 2004)). Exemption 6 may apply to entire files or may call for redaction of "bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152-53 (D.C. Cir. 2006) (internal quotation marks omitted).

Our review of the propriety of a withholding under Exemption 6 proceeds in two steps. At step one, we determine "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021) (quoting *Prison Legal News*, 787 F.3d at 1147). Specifically, "[t]he government bears the burden of showing that a substantial invasion of privacy will occur if the documents are released." *Prison Legal News*, 787 F.3d at 1147. "It may do so by affidavits if they contain reasonable specificity of detail rather

5

than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Id.* (internal quotation marks omitted).

If the government has shown that a privacy interest is substantial, we proceed at step two to "balance the individual's right of privacy against the public interest in disclosure." *Niskanen Ctr.*, 20 F.4th at 791 (quoting *Prison Legal News*, 787 F.3d at 1147). "[T]he balancing inquiry focuses not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Id.* (quoting *Schrecker v. U.S. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003)) (internal quotation marks omitted). "[U]nless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail." *Ray*, 502 U.S. at 177.

Our review does not end with the Exemption 6 analysis. We must also assess whether the government has adhered to the requirements of the FOIA Improvement Act. Pub. L. No. 114-185, 130 Stat. 538 (2016). The Improvement Act imposes additional, crosscutting obligations on each agency considering withholding information under any FOIA exemption. As relevant here, it requires the agency to disclose even information covered by an exemption unless it "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law[.]" FOIA Improvement Act § 2, 130 Stat. at 539 (codified at 5 U.S.C. § 552(a)(8)(A)(i)). This imposes an "independent and meaningful burden on agencies" to identify the nature of the harm and show that it will likely result from disclosure of the particular information the agencies seek to withhold. *Reps. Comm. v. FBI*, 3 F.4th at 369 (internal quotation marks omitted).

6

**B.**

In December 2018 and March 2019, Human Rights Defense Center (HRDC or Center) submitted FOIA requests to the United States Park Police for records of all claims or lawsuits brought against the agency or its employees filed since January 1, 2010, that resulted in a payment of at least $1,000. Not having heard from the agency regarding release of the documents, HRDC filed this FOIA lawsuit in the district court on May 23, 2019. The Park Police filed its answer, and the district court ordered the parties to meet and confer to develop and propose an agreed-upon litigation schedule, including anticipated dates for release of the documents. HRDC agreed to narrow the scope of its FOIA request to exclude claims for less than $3,000, those relating to car accidents claiming damages under $50,000, and any equal employment opportunity (EEO) complaint not claiming discrimination. The Park Police then produced the responsive records, with some redactions, between September and October of 2019. The records related to administrative complaints filed against the Park Police and included settlement offer letters and vouchers for settlement payments.

Those records fell into two categories: EEO settlement case files and tort settlement case files. As relevant here, the Park Police withheld the names of four police officers claimed to have harmed or witnessed harm to members of the public: One claim alleged that a sergeant used excessive force against a person at the Lincoln Memorial, a second alleged that a detective injured the claimant while attempting to arrest another person, and a third alleged that a detective improperly arrested an attendee at a public meeting. Park Police Br. 4-5; Oral Arg. 48:30-48:54; *see* Joint Appendix (J.A.) 44-46. The Park Police states that these claims were all settled pre-litigation. Park Police Br. 5. The agency also withheld the

7

names of the EEO claimants but, because HRDC no longer seeks those names, the sole disputed redactions are the names of the three alleged tortfeasors and one witness. *See* Oral Arg. 48:30-48:54.

The Park Police meanwhile claims that it accidentally disclosed two more names—one of an EEO claimant and another of a tort claimant—due to errors in its redaction process.

On cross-motions for summary judgment, the parties disputed whether the Park Police was justified in withholding the officer names and whether HRDC was required to immediately return or destroy the copies of documents with inadvertently produced names and not otherwise disclose them. In support of its motion, the Park Police provided a declaration from its Freedom of Information Act Officer and a *Vaughn* index listing the documents withheld and explaining why each is subject to one or more FOIA exemptions.  J.A. 25-46; *see DiBacco v. U.S. Army*, 795 F.3d 178, 186 n.2 (D.C. Cir. 2015) (explaining purpose of *Vaughn* index).

On the applicability of Exemption 6, the district court acknowledged that the Park Police did not identify any particular harm from disclosure, but nonetheless held that the release of the names implicated a substantial privacy interest because the officers could be subject to undue public attention, harassment, retaliation, and embarrassment.  *See Hum. Rts. Def. Ctr. v. U.S. Park Police*, No. 19-cv-1502, 2023 WL 5561602, at *5 (D.D.C. Aug. 29, 2023).  The district court acknowledged that FOIA does not provide for the return or destruction of inadvertently produced documents but held that it could draw on inherent judicial authority to bar HRDC from disclosing, disseminating, or making use of the accidentally produced names. *See id.* at *6.  HRDC timely appealed.

8

We have jurisdiction under 28 U.S.C. § 1291. We "review *de novo* a district court's grant of summary judgment in favor of an agency which claims to have complied with FOIA." *Cabezas v. FBI*, 109 F.4th 596, 601 (D.C. Cir. 2024) (quoting *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995)) (formatting altered). The parties disagree on the standard governing our review of the district court's clawback order. The Park Police argues that our review should be for abuse of discretion because the order rested on the district court's inherent judicial authority. Park Police Br. 9 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). HRDC asserts that this issue is also subject to *de novo* review. *See* HRDC Br. 11. Because the issue on appeal concerns the legal parameters of the district court's inherent authority rather than the court's discretionary application of an acknowledged type of inherent authority, our review is *de novo*. *See McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019).

**II.**

**A.**

The Park Police has not satisfied its burden to show that disclosure of the officer names would compromise a substantial privacy interest. Because the agency's showing fails at step one of the Exemption 6 analysis, we need not consider whether the public interest in disclosure outweighs the individual privacy interest.

The privacy assertions contained in the Park Police's *Vaughn* index and declarations are wholly conclusory, lacking even minimal substantiation of the officers' privacy interest or the potential harm from disclosing their names. Indeed, the agency acknowledges that "the government's declarations did not specifically analyze the nature of the privacy interest at issue" in the potential release of the individual officers' names.

9

Park Police Br. 15. Generalities are not enough; showing that a substantial invasion of privacy will occur if the officer names are released requires "reasonable specificity of detail rather than merely conclusory statements." *Prison Legal News*, 787 F.3d at 1147 (quoting *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)). After all, Exemption 6 "does not categorically exempt individuals' identities" but calls for case-by-case evaluation "because the privacy interest at stake may vary depending on the context in which it is asserted." *Jud. Watch, Inc. v. FDA*, 449 F.3d at 153 (quoting *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996)) (internal quotation marks omitted).

The Park Police's statements offer no specific details showing a privacy interest that is substantial rather than *de minimis*. They merely recite the elements of the analysis for whether Exemption 6 applies. In the *Vaughn* index, the agency gave the same reason for withholding each officer name:

> Releasing the rank of the officer involved sufficiently satisfies the public's interest in knowing more about [the] case. Releasing the name of the [officer] who is still employed by the USPP and is a relatively low-ranking law enforcement officer, only negatively impacts the officer's privacy interest and has a de minimus [sic] public benefit. Additionally, no court ever found that the allegations were true.

J.A. 45-46. In her declaration, the Park Police FOIA Officer stated that the agency redacted the information pursuant to Exemption 6 "because release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the complaints." J.A. 28. The FOIA Officer also stated that the agency determined that the officers "had a significant privacy interest in their identities and that their

10

privacy interests outweighed the release of the information, and that release of the information would not shed light on the activities of" the Park Police.   J.A. 30.   Those conclusory assertions fall short.

Unlike agencies' showings in cases in which we have sustained withholdings under Exemption 6, the Park Police fails to provide any concrete basis to conclude that release of these officers' names raises threats "more palpable than mere possibilities."   *Rose*, 425 U.S. at 380 n.19.   For example, in *Judicial Watch v. FDA*, we held that Exemption 6 justified withholding the names of FDA employees involved in the approval of an abortion drug because the FDA had submitted affidavits containing detailed evidence of threats of abortion-related violence.   449 F.3d at 153.   The FDA did not have to show that the threats were directed toward its staff specifically; it was enough to demonstrate a particularized danger to similarly situated people—employees of abortion clinics and facilities manufacturing the drug.   *Id.*   An agency's showing of harm, to go beyond the generic, must identify not just any potential effect on personal privacy, but an invasion that is "clearly unwarranted."   5 U.S.C. § 552(b)(6).

Because the Park Police does not satisfy the first step of its burden to show that Exemption 6 applies, we do not proceed to the balancing inquiry at step two.   We thus need not evaluate the Park Police's assertions of only *de minimis* public benefit from disclosure or its recitation that no court has found the allegations against the officers to be true.

Our holding under Exemption 6—that the Park Police failed to make a reasonably detailed showing that disclosure would compromise a substantial privacy interest—equally supports a determination of noncompliance with the FOIA Improvement Act.   In the context of other FOIA exemptions,

11

we have held that whether a record falls within an exemption
and whether nondisclosure of that record is permissible under
the Improvement Act's foreseeable harm standard are "distinct,
consecutive inquiries." *Leopold v. U.S. DOJ*, 94 F.4th 33, 37
(D.C. Cir. 2024) (Exemption 8); *see Reps. Comm. v. FBI*, 3
F.4th at 369 (Exemption 5).   Here, those formally distinct
inquiries substantively overlap.

   The analysis required by the Improvement Act's
foreseeable-harm rule is much the same as the analysis we
already conducted in holding that the Park Police failed to
make the reasonably detailed showing that disclosure would
compromise a substantial privacy interest required by
Exemption 6.   Whether under Exemption 6, or alternatively
under the Improvement Act, "speculative or abstract fears,"
like those the Park Police alludes to in its *Vaughn* index and
declaration, do not establish a foreseeable harm sufficient to
justify withholding the officer names at issue.   *Id*. (quoting S.
Rep. No. 114-4, at 2 (2015)).   The Improvement Act's other
component—the requirement that agencies take reasonable
steps to release any segregable, non-exempt information, *see* 5
U.S.C. § 552(a)(8)(A)(ii)—is not at issue here.

   HRDC argues that a ruling that the Park Police failed to
justify withholding the officers' names warrants reversing the
summary judgment order and holding that it is entitled to the
information.   For its part, the Park Police asserts that remand to
develop the record, not reversal, would be the appropriate
response to an inadequate showing of foreseeable harm.   The
Park Police bases its request on "an interim development in
applicable legal doctrine."   Park Police Br. 16.   When it
prepared the affidavits and *Vaughn* index in support of
summary judgment, the Park Police notes, we had not yet
decided *Reporters Committee v. FBI*—a case the Park Police
characterizes as having "definitively construed for the first time

12

the FOIA Improvement Act's requirement that in withholding information an agency must explain how disclosure would harm an interest protected by a FOIA exemption." Park Police Br. 15.

There was no change in the law bearing on this case. It should have been "apparent from the statutory text alone" that the Improvement Act requires a "particularized inquiry into what sort of foreseeable harm would result from the material's release." *Reps. Comm. v. FBI*, 3 F.4th at 369 n.2. The FOIA Improvement Act's foreseeable harm requirement is a countermeasure against excessive withholding. It compels an agency to release requested materials unless it can "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id.* at 369 (alternation in original) (internal quotation marks omitted). What is more, any new light that decision may have cast on the Improvement Act is immaterial given the Park Police's failure to meet its initial burden under Exemption 6.

Because the Park Police did not meet its threshold burden under Exemption 6 and, by the same token, did not demonstrate that foreseeable harm would ensue from release of the withheld names, the Park Police was not entitled to summary judgment. We cannot credit the Park Police's assertion of a change in applicable law, and it made no other argument for an opportunity to supplement its showing of foreseeable harm. We accordingly reverse and remand for the district court to enter an order directing the Park Police to remove the redactions from the officer names in the documents at issue and release them to HRDC.

13

## B.

We next review the district court's clawback order. The Center contends the court lacked authority to order it not to disclose, disseminate, or make use of the names of two settlement claimants that the Park Police failed to redact. As the district court correctly noted, FOIA does not provide for the compelled return or destruction of inadvertently produced information. *See generally* 5 U.S.C. § 552. The court instead invoked "implied" or inherent judicial power to create a mechanism for doing so. *HRDC*, 2023 WL 5561602, at *6.

The district court's order was not an exercise of Article III courts' well-established authority to manage judicial proceedings. The Supreme Court has explained that federal courts are empowered, "by their very creation," to "impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers*, 501 U.S. at 43 (citing *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821)). Those powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).

In considering whether a court order is a valid application of inherent judicial authority, we have cautioned that "[a] judicial claim to an 'inherent power' is not to be indulged lightly, lest it excuse overreaching '[t]he judicial Power' actually granted to federal courts by Article III of the Constitution of the United States, and the customs and usages

14

that inform the meaning of that phrase." *Cobell v. Norton*, 334 F.3d 1128, 1141 (D.C. Cir. 2003) (second alteration in original) (quoting U.S. Const. art. III, § 2, cl. 1).  The court's invocation of an inherent power must therefore "either be documented by historical practice" or "supported by an irrefutable showing that the exercise of an undoubted authority would otherwise be set to naught." *Id.*

The Park Police does not contend that there is any documented historical practice of permitting the government to claw back information it accidentally disclosed in a FOIA production.  The agency instead argues that the clawback order was necessary to buttress the district court's "undoubted authority" over FOIA litigation.  *Id.*  Because the settlement materials were produced during the court-ordered meet-and-confer process, the agency argues, the court could bring its full "corrective authority" to bear to rectify the government's redaction errors.  Park Police Br. 18-19.  And because the court had ruled that the Park Police was justified in withholding the claimants' names under Exemption 6, the agency maintains that the order appropriately required the Center to assist it in doing so fully and effectively.

The Park Police's justifications find no support in our precedent on courts' use of inherent authority.  The district court's order was not necessary to enable the exercise of one of its "undoubted authorit[ies]," which we have held are limited to those "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Cobell*, 334 F.3d at 1141 (quoting *Chambers*, 501 U.S. at 43).  Judicial powers that we have recognized as necessary to the courts' exercise of their Article III authority include, for example, authority to admit members to the bar, discipline bar members, punish contempt of court, vacate judgments based on fraud on

15

the court, and punish bad-faith or vexatious conduct.  *See Chambers*, 501 U.S. at 43-45.

The district court's clawback order is of a different species.  The court concluded that, because "the claimants' names are covered by Exemption 6, and there is no discernable public interest in having the names of private citizens disclosed," it was justified in issuing the clawback order. *HRDC*, 2023 WL 5561602, at *6.  The primary function of the order, then, was not to support a core judicial authority, but to fill a perceived hole in the FOIA statute by enabling the government to put the proverbial cat back in the bag.

On appeal, the Park Police seeks to frame the gap-filling clawback order as a means of effectuating the court's judicial authority under FOIA.  The Park Police contends that, once the Center filed suit in federal court to enforce its entitlement to disclosure under FOIA, the court could use its inherent authority to redress the agency's mistaken disclosures.  That argument cannot be squared with the terms of FOIA and the structure of its disclosure process.  Congress designed FOIA to function largely without court compulsion.  The statute requires agencies to respond to most FOIA requests within 20 business days.  *See* 5 U.S.C. § 552(a)(6).  And if the agency during that administrative stage fails to make intended redactions, neither FOIA nor any inherent judicial authority enables it to seek a court order to limit the effects of its error. Nothing suggests the agency acquires an otherwise absent clawback remedy just because a FOIA requester resorts to litigation to enforce an unfulfilled FOIA entitlement.  *See id.* § 552(a)(4)(B).

The Park Police draws an analogy to Federal Rule of Civil Procedure 26(b)(5)(B), which requires that a party promptly "return, sequester, or destroy" information inadvertently

16

produced in discovery despite a valid claim of privilege or protection. The civil discovery rules thereby explicitly address the risk that, in reviewing and disclosing large volumes of information, mistakes may be made. The Park Police acknowledges that Rule 26(b)(5)(B) is inapplicable here yet contends that "[a] court may address the same problems inherent in responding to FOIA requests" through a clawback order. Park Police Br. 21.

But the comparison hurts more than it helps. A provision akin to Rule 26(b)(5)(B) could have been but was not included in FOIA. That alone defeats any persuasive effect of the Park Police's analogy. Congress presumably acted deliberately in omitting general clawback authority from FOIA. Unlike litigation, which is an adversarial process to determine the parties' rights and obligations, FOIA is a primarily administrative regime designed to advance governmental transparency. Importantly, the information at issue here is not subject to any independent legal prohibition on disclosure such as applies to classified documents, and we express no opinion on how any such prohibition could affect the analysis. *See, e.g.*, *ACLU v. Dep't of Defense*, No. 09-cv-8071, 2012 WL 13075284, at *5 (S.D.N.Y. Mar. 20, 2012) (noting in support of return of inadvertently disclosed classified material that "classified information remains classified notwithstanding 'any unauthorized disclosure of identical or similar information'") (quoting Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009)).

We acknowledge that the Tenth Circuit recently upheld a district court order instructing a FOIA complainant to return or destroy inadvertently disclosed documents. *See Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 930-31 (10th Cir. 2022). The Tenth Circuit, however, did not consider

17

the important limitations on courts' inherent authority that guide our decision today.

Finally, HRDC and its *amici curiae* also claim that the First Amendment prevents the district court from barring the use or dissemination of FOIA-exempt material a FOIA requester lawfully obtained due to the government's mistake. We do not reach that issue because our non-constitutional analysis is dispositive. *See, e.g.*, *In re Fashina*, 486 F.3d 1300, 1302-03 (D.C. Cir. 2007).

\*\*\*

For these reasons, we reverse the district court's entry of summary judgment in favor of the Park Police, vacate the clawback order, and remand for further proceedings consistent with this opinion.

*So ordered.*